UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – LOUISVILLE DIVISION

**FILED**

JAMES J. VILT, JR. - CLERK

AUG - 1 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

WILLIAM CLAY RAYMOND,

    Plaintiff,

v.

Civil Action No. 4:25-CV-83-GNS

KARISSA MEYERS, et al.,

    Defendants.

---

**\*\*EMERGENCY MOTION TO PREVENT EXTRAJUDICIAL SEALING AND**

**RETALIATORY MENTAL HEALTH DESIGNATION\*\***

(Fed. R. Civ. P. 65; 28 U.S.C. § 1651; First and Fourteenth Amendments)

COMES NOW the Plaintiff, William Clay Raymond, pro se, and respectfully moves this Honorable Court for an emergency protective order enjoining any extrajudicial attempts by government actors, courts, agencies, or individuals to seal the federal docket in this case without notice, or to initiate retaliatory mental health actions, evaluations, or holds in response to Plaintiff's protected litigation activity.

I. GROUNDS FOR RELIEF

This Motion is brought pursuant to Rule 65 of the Federal Rules of Civil Procedure and the inherent authority of this Court under 28 U.S.C. § 1651 to protect its jurisdiction and ensure open access to the courts.

Plaintiff respectfully submits that:

The subject matter of this case involves active litigation against state officials, court officers, and agencies. Several named defendants hold or have held positions of significant authority. In light of the

nature and scope of the allegations, there is a reasonable concern that procedural or extra-legal efforts could be undertaken to frustrate Plaintiff's access to the court.

Plaintiff has a constitutional right under the First and Fourteenth Amendments to access the courts, speak publicly about matters of concern, and be free from retaliation—including the misuse of mental health protocols or involuntary evaluations aimed at chilling protected legal conduct.

The Court has authority to ensure that no sealing, restriction, or suppression of filings occurs in this matter unless based on proper motion, full due process, and opportunity to be heard.

II. LEGAL AUTHORITY

This Court is empowered under the following:

Federal Rule of Civil Procedure 65(b): Authorizes temporary restraining orders to prevent irreparable harm where notice is not practicable.

28 U.S.C. § 1651 (All Writs Act): Grants federal courts authority to issue orders necessary to protect the integrity of their proceedings.

Controlling Precedent:

Bell v. Hood, 327 U.S. 678 (1946): Federal courts have jurisdiction over constitutional claims on their face.

Elrod v. Burns, 427 U.S. 347 (1976): Even temporary loss of First Amendment rights constitutes irreparable harm.

Addington v. Texas, 441 U.S. 418 (1979): Involuntary commitment implicates significant liberty interests and must follow strict due process.

III. REQUESTED RELIEF

Plaintiff respectfully requests that this Court issue an order providing the following:

Prohibiting any judge, state actor, or agency from initiating, ordering, or facilitating:

Involuntary psychiatric evaluations or holds,

Mental health-related detentions or designations,

unless pursuant to a properly noticed federal hearing with full due process protections.

Prohibiting any party or court from sealing or restricting access to this case, its docket, or filings absent a showing of compelling interest, proper motion, and an opportunity for Plaintiff to respond.

Affirming Plaintiff's constitutional rights to access the court, litigate without retaliation, and speak publicly about this case and its proceedings.

4.  Plaintiff further respectfully requests that this Court impose **administrative docket protection** to preserve the procedural integrity and public accessibility of this case. Specifically, Plaintiff asks that:

    - No sealing, redaction, or suppression of filings or docket entries occur **absent proper motion**, judicial review, and an opportunity for Plaintiff to respond;
    - Any attempts by third parties, state actors, or court officials to alter, suppress, or restrict access to the docket be **flagged to chambers immediately**;
    - All filings remain publicly accessible via PACER unless sealed pursuant to **Rule 26(c)** or **local rules with full due process**.

Such protection is necessary to safeguard Plaintiff's rights under the **First and Fourteenth Amendments**, and to ensure that this federal proceeding remains transparent and free from extrajudicial interference.

IV. CONCLUSION

Plaintiff's filing of this case is protected activity under federal law. Any attempt to undermine it through non-evidentiary mental health claims or secretive docket manipulation would cause irreparable harm and obstruct the administration of justice. Plaintiff requests this Court's protection to preserve the openness and integrity of these proceedings.

Respectfully submitted,

/s/ William Clay Raymond

William Clay Raymond

179 Tanyard Park, Unit 166

Hillview, KY 40229

clayemail58@gmail.com

(970) 779-1377

Dated: August 1, 2025

Certificate of Service

I certify that I will serve this Motion on all named parties once service of process is effectuated or waived, in accordance with Rule 5 of the Federal Rules of Civil Procedure.

/s/ William Clay Raymond   *William Raymond*   8/1/2025

Filed contemporaneously with Verified Complaint.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**FILED**

**WILLIAM CLAY RAYMOND**, Plaintiff

JAMES J. VILT, JR. - CLERK

vs.

**KARISSA MEYERS, et al.,** Defendants

AUG - 1 2025

**Case No.: [To be assigned]**  4:25-cv-83-GNS

**U.S. DISTRICT COURT**
**WEST'N. DIST. KENTUCKY**

---

# NOTICE OF SUBMISSION FOR EMERGENCY REVIEW

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(b)**

Plaintiff **William Clay Raymond**, appearing pro se, hereby respectfully submits this civil complaint and accompanying motions with a formal request that the Court conduct **emergency ex parte review** pursuant to **Federal Rule of Civil Procedure 65(b)**.

This request is made in connection with the following motions, each of which seeks expedited or immediate relief to prevent irreparable harm:

1. **Motion for Preliminary Injunction to Preserve and Freeze Assets of All Named Defendants** – To prevent the dissipation or transfer of property and financial assets prior to final judgment;
2. **Motion for Preliminary Injunction to Protect Minor Children from All Named Defendants Except Karissa Meyers** – To prohibit unlawful contact or interference pending litigation;
3. **Motion for Anti-Spoliation and Evidence Preservation** – To safeguard the integrity of records, digital evidence, and witness communications;
4. **Motion to Waive Service and Summons Fees** – To enable timely service via U.S. Marshal due to financial hardship.

Each motion is accompanied by sworn affidavits and a formal **Ex Parte Certification** explaining the urgency and justifying waiver of notice under Rule 65(b).

Plaintiff respectfully requests that this submission be reviewed in priority, and that the Court consider entry of the [Proposed] Ex Parte Order filed contemporaneously.

Respectfully submitted,
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated

**WHY I AM FILING THIS RICO LAWSUIT**

**William Clay Raymond**
**Filed: August 1, 2025**
**U.S. District Court – Western District of Kentucky, Owensboro Division**

## I. WHY I AM DOING THIS

I am doing this because my children deserve the truth. Because what happened to me—and what continues to happen to other parents across Kentucky—was not a one-time mistake. It was a coordinated abuse of power by state actors, legal professionals, and government institutions sworn to protect families and children. I am not seeking revenge. I am seeking accountability. I am doing this so no other father, mother, or child has to suffer in silence under the weight of lies, perjury, and institutional betrayal.

This lawsuit is my act of love, not just for my children, but for every child whose voice has been buried under bureaucracy and every parent who was told to give up.

## II. WHAT THIS CASE IS ABOUT

This is a federal civil RICO action against a coordinated network of individuals and institutions who used the power of the state to:

- Knowingly remove children from their parent without due process;
- Falsify and suppress evidence in court;
- Intimidate and silence those who speak up;
- Enable and conceal documented child endangerment;
- Collude across agencies to maintain control and avoid accountability.

It includes judges, GALs, DCBS caseworkers, public defenders, prosecutors, and licensed therapy contractors. It documents how each of them played a role in a pattern of obstruction, fraud, and perjury that violated my civil and constitutional rights.

## III. HISTORICAL SIGNIFICANCE

No one has ever filed a RICO case like this in the history of Kentucky. Possibly not even in the United States. Never before has a pro se parent assembled and filed a civil RICO complaint naming sitting judges, attorneys, and state-funded organizations with this level of legal structure and evidentiary depth. This isn't a conspiracy theory. This is a documented legal record. It is precedent-setting. It is historic. And it is real.

## IV. WHY THIS IS THE RIGHT THING TO DO

Because silence protects the guilty. Because fear enables corruption. Because the law means nothing unless someone is willing to stand up and use it to defend the voiceless. I am doing the right thing because I am telling the truth. Because I am not backing down. Because this is not about pride or pain—it is about justice.

This is not just a lawsuit. This is a line in the sand. A record that cannot be buried. A light that cannot be ignored.

**/s/ William Clay Raymond**
Pro Se Plaintiff
Hillview, Kentucky
Dated: August 1, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND, Plaintiff

VS.

KARISSA MEYERS, et al., Defendants

Case No.: [To be assigned]

**FILED**

4:25-CV-83-GNS

JAMES J. VILT, JR. - CLERK

AUG - 1 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

# PROCEDURAL SUMMARY OF CLAIMS AND LEGAL BASIS FOR EMERGENCY INJUNCTIVE RELIEF

Plaintiff William Clay Raymond, pro se, provides the following procedural summary to assist the Court in understanding the emergency motions submitted contemporaneously with the Verified Complaint. Each motion is narrowly tailored, legally supported, and designed to preserve the Court's authority, the Plaintiff's rights, and the safety and legal protections of the minor children.

## I. CLAIMS PRESENTED IN VERIFIED COMPLAINT

- Civil RICO (18 U.S.C. § 1962(c)) involving predicate acts of obstruction, fraud, custodial interference, and conspiracy among state and private actors.
- Violations of constitutional rights under the First, Fourth, and Fourteenth Amendments.
- Emotional abuse, defamation, suppression of exculpatory evidence, denial of access to medical and educational records.
- Unlawful coordination between court officers (e.g., GAL Laura Eaton), DCBS staff, law enforcement, nonprofit agents, and private individuals.

## II. EMERGENCY MOTIONS FILED

1. **Motion for Preliminary Injunction to Protect Minor Children** – Seeks to enjoin all Defendants (excluding Karissa Meyers, due to active family court jurisdiction) from contacting, surveilling, or interfering with the children while litigation is pending.
2. **Motion for Preliminary Injunction to Preserve and Freeze Assets** – Seeks to prohibit all Defendants from transferring, dissipating, or concealing financial assets or real property, and to compel a sworn accounting to prevent enforcement frustration.
3. **Motion for Anti-Spoliation and Evidence Preservation** – Requests that the Court issue a clear order barring all parties from deleting, destroying, or concealing electronic records, call logs, texts, GAL files, CPS data, or physical documents relevant to this case.
4. **Motion to Waive Summons and Service Fees** – Seeks relief under Rule 4 and Rule 5 due to financial hardship, while affirming full payment of the filing fee. Plaintiff is prepared to complete and submit USM-285 forms and service list.

## III. LEGAL BASIS FOR EX PARTE REVIEW UNDER RULE 65(b)

4 W2

- Plaintiff has submitted a sworn **Affidavit in Support of Ex Parte Relief** certifying the risk of irreparable harm, destruction of evidence, intimidation of witnesses, and concealment of financial and custodial information if notice is given to Defendants prior to judicial review.
- The Court has authority under **Rule 65(b)(1)(A)–(B)** and **28 U.S.C. § 1651** to issue injunctive and equitable relief without prior notice where harm is imminent and no other remedy is adequate.

## IV. PLAINTIFF'S POSITION

- Plaintiff is the biological, legal father of the minor children and has lawfully and peacefully pursued remedies after being systematically denied due process and access to the children through fraudulent protective orders, concealed proceedings, and corrupt institutional gatekeeping.
- Plaintiff's filings demonstrate clear procedural discipline, restraint in requested relief, and factual support for each claim and injunction.
- Each request before the Court is presented to prevent imminent harm—not to retaliate, punish, or seek advantage.

## V. REQUEST FOR ACTION

Plaintiff respectfully asks the Court to:

- Review the Verified Complaint and supporting motions as a unified presentation of emergency legal harm;
- Issue appropriate ex parte relief under Rule 65(b) to preserve children's safety, evidence integrity, and jurisdiction over assets;
- Permit service to proceed efficiently via U.S. Marshal where private service is impractical due to Defendant count and Plaintiff hardship.

Respectfully submitted,
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: July 28, 2025

# EXHIBIT INDEX – RICO COMPLAINT

**William Clay Raymond v. Karissa Meyers, et al.**
**U.S. District Court – Western District of Kentucky (Owensboro Division)**

| Exhibit | Title / Description | Summary |
|---------|--------------------|---------|
| Exhibit X | Affidavit – July 23 Hearing Misconduct | Details Judge McKown's refusal to disqualify Laura Eaton, court-ordered payments to a named defendant, and courtroom misconduct. Supports obstruction and racketeering allegations. |
| Exhibit Y | Affidavit – Carissa Contact Violation | Documents Karissa Meyers' failure to notify Plaintiff of address change, delayed disclosure after 60+ days, concealment of co-residency with Defendant Stewart, and withholding of medical, school, and activity information for over a year. Correlates directly with obstruction, custodial interference, and enterprise concealment. |
| Exhibit Z | Affidavit – Karissa Message Response | Documents Karissa Meyers' dismissive response to a lawful parenting request, failure to disclose address and child information, and her pattern of custodial interference and blocked access. Supports allegations of obstruction, retaliation, and ongoing racketeering activity under 18 U.S.C. §§ 1503, 1512(c)(2), and 1962(c). |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants

**Case No.: [To be assigned]**

# AFFIDAVIT OF WILLIAM CLAY RAYMOND IN SUPPORT OF EX PARTE RELIEF UNDER RULE 65(b)

I, **William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and Federal Rule of Civil Procedure 65(b) that the following is true and correct to the best of my knowledge:

## 1. Basis for Emergency and Ex Parte Relief

1. I am the pro se Plaintiff in this civil RICO action and the biological, legally married father of minor children W.R.R. and M.G.R.
2. I have filed multiple motions seeking emergency injunctive relief, including to:
   - Freeze and preserve financial and real property assets of all named Defendants;
   - Protect my minor children from contact or interference by non-parental Defendants;
   - Preserve all physical and digital evidence from destruction or tampering;
   - Secure a partial waiver of service costs to ensure timely prosecution of this case.
3. These motions arise from a pattern of coordinated obstruction and misconduct across various institutions including DCBS, the Guardian ad Litem system, law enforcement, nonprofit entities, and judicial officers.
4. Based on prior documented experience in state court, I believe that giving notice to Defendants **prior to Court action** poses a serious threat to the safety of my children and the integrity of this litigation.
5. The parties involved have previously:
   - Fabricated allegations to justify removal of my children;
   - Refused to accept exculpatory evidence and suppressed lawful filings;
   - Colluded to enrich conflicted parties under color of court orders;
   - Allowed known perjured testimony to control protective proceedings.
6. I believe the same individuals will:
   - Move or conceal assets if alerted to the filing of this complaint;
   - Destroy or alter evidence, including internal DCBS communications, GAL files, and informal messages;

- o Initiate retaliation through family court filings or improper influence over local agencies;
- o Attempt to intimidate or influence my minor children or relevant witnesses.

7. I have witnessed firsthand the speed with which retaliatory actions are taken once litigation is disclosed.

## 2. Justification for Immediate Judicial Action

8. I am not requesting relief to punish or gain tactical advantage, but to preserve:
    - o The children's physical, emotional, and legal safety;
    - o The financial assets and real estate that may be used to satisfy a judgment;
    - o The evidence chain that underpins federal civil rights claims in this action.
9. Each motion is narrowly tailored. I have excluded Defendant Karissa Meyers from the child protection injunction to respect the jurisdiction of the family court. I have requested preservation, not seizure, of assets. I have complied with all affidavit and procedural requirements of Rule 65(b).
10. I respectfully request the Court issue temporary ex parte relief to:

- Protect my children;
- Preserve the financial assets;
- Secure the evidence;
- And allow me to complete lawful service without delay.

**FURTHER AFFIANT SAYETH NAUGHT.**

Respectfully submitted this _1_ day of _August_ , 2025.

**William Clay Raymond** _(signature)_
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

**NOTARY VERIFICATION**
Subscribed and sworn before me this ____ day of _____, 2025.

Notary Public
My commission expires: _____

FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date:        Aug 01, 2025

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

CASE #  4:25-cv-83-GNS

**WILLIAM CLAY RAYMOND**
179 Tanyard Park, Unit 166
Hillview, KY 40229
Plaintiff,

v.

**KARISSA MEYERS**
735 Oakwood Drive
Hartford, KY 42347

**CHAYE ANN MEYERS**
220 Tera Lane
Centertown, KY 42328

**RICHARD STEWART**
435 Oakwood Drive
Hartford, KY 42347

**LAURA EATON**
307 Apple Alley
Hartford, KY 42347

**EATON LAW OFFICE, PLLC**
116 East Washington Street
Hartford, KY 42347

**FRANCES "BELL" TOLL**
947 West 7th Street
Beaver Dam, KY 42320

**CHAD WILSON**
947 West 7th Street
Beaver Dam, KY 42320

Defendants.

**AMANDA BRAGG**
c/o Law Office of Amanda Bragg
307 Apple Alley
Hartford, KY 42347

**NATALIE RALPH**
c/o Ohio County Attorney's Office
301 South Main Street
Hartford, KY 42347

**CHASE WARD**
Ward & Ward Law Office
121 East Center Street
Hartford, KY 42347

**DAVID FARLEY**
c/o Public Defender's Office
Hartford, KY 42347

**JANELLE FARLEY**
c/o Public Defender's Office
Hartford, KY 42347

**KELSEY EMBRY**
Ohio County Sheriff's Department
301 South Main Street
Hartford, KY 42347

SUSAN KYLE SMITH LPCC

2720 Fredrica, Owensboro

Kentucky 42301

**Tina Mathes**
23971 Highway 49
Black, Missouri 63625

---

**Hank Mathes**
23971 Highway 49
Black, Missouri 63625

---

**Michael J. Hackworth / Hackworth Law Office**
1401 North Main Street, Suite 200
Piedmont, Missouri 63957

---

**Hon. Tim R. Coleman**
Ohio County Circuit Court
111 East Washington Street
Hartford, Kentucky 42347

**KAYLEE HUNTER**

947 West 7th Street
Beaver Dam, KY 42320

**CARA WOOD**

947 West 7th Street
Beaver Dam, KY 42320

**SHERIFF ADAM WRIGHT**

Ohio County Sheriff's Office
301 South Main Street
Hartford, KY 42347

**OHIO COUNTY SHERIFF'S DEPARTMENT**

Ohio County Sheriff's Office
301 South Main Street
Hartford, KY 42347

**CABINET FOR HEALTH AND FAMILY SERVICES** Cabinet for Health and Family
Services
275 East Main Street
Frankfort, KY 40621

**JUDGE MICHAEL MCKOWN**

**Ohio County Courthouse**

**301 South Main Street**

**Hartford, KY 42347R.**

**JUDGE BENJAMIN MCKOWN**

**Ohio County Courthouse**

**301 South Main Street**

**Hartford, KY 42347**

**DAN JACKSON**

.311 Liberty Street, Hartford, KY 42347

12 GR

**KENTUCKY COALITION FOR DOMESTIC VIOLENCE** INC

Kentucky Coalition Against Domestic Violence, Inc.**
111 Darby Shire Circle
Frankfort, KY 40601-2741

ZEROV

ZeroV, Inc.** (formerly KCADV)
Same address: 111 Darby Shire Circle
Frankfort, KY 40601-2741

**LIGHTHOUSE COUNSELING Services, Inc.**

920 Frederica Street, Suite 407
Owensboro, KY 42301

**JOHN DOES 1–100**

 Defendants

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT

**This Complaint meets or exceeds all applicable pleading standards under Federal Rules of Civil Procedure Rule 8(a) and Rule 12(b)(6), as clarified by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).**

**Plaintiff alleges specific factual circumstances, supported by timeline-anchored allegations, overt predicate acts under 18 U.S.C. § 1961, and personal injury arising from violations of constitutional and statutory rights.**

**Dismissal would be inappropriate prior to discovery.**

## NATURE OF THE CASE

This action is brought pursuant to 18 U.S.C. §§ 1961–1968 (Racketeer Influenced and Corrupt Organizations Act "RICO"), 42 U.S.C. §§ 1983, 1985, and 1988 for violations of constitutional rights under color of law, and Kentucky common law torts.
THAT OCCURRED BETWEEN  10/29/22 AND THE PRESENT AND CURRENTLY
CONTINUE

13 LR

Plaintiff, pro se, seeks to expose a system of interconnected public officials, court appointees, and agency professionals who participated in or failed to prevent a long-standing pattern of civil rights violations, parental alienation, perjury, obstruction, malicious prosecution, and fraud upon the court.

## TRIGGERING PRESERVATION AND FEDERAL INTEREST

Plaintiff invokes the Court's authority to immediately:

- Issue a preliminary preservation order to prevent the destruction of digital or paper records by any named defendant;
- Notify the U.S. Department of Justice Civil Rights Division and FBI Public Corruption Unit of the claims raised herein;
- Notify the Office of Kentucky Attorney General of possible RICO predicate acts and official misconduct;
- Authorize early discovery for protection of minor children identified as victims of abuse, obstruction, and state-enabled alienation.

## FACTUAL TIMELINE SUMMARY**

In mid-2022, Plaintiff William Clay Raymond separated from His Wife, Defendant Karissa Meyers. Within weeks, a coordinated campaign of state-sanctioned interference began. Between October 2022 and the present, Plaintiff has faced:

- False allegations of abuse filed by Karissa Meyers, supported by fabricated or manipulated protective order petitions;

- Removal of both children without notice following unsubstantiated DCBS investigations;

- Appointment of Guardian ad Litem Laura Eaton, who maintained a personal conflict of interest and actively concealed evidence favorable to Plaintiff;

- Failure by DCBS workers Frances Toll, Chad Wilson, Kaylee Hunter, and Cara Wood to investigate or act on mandated abuse disclosures, including credible reports from Plaintiff's minor daughter;

- Payment demands totaling $4,000 in exchange for reunification access — including to GAL Eaton and ZeroV-affiliated counseling programs;

14 WR

- Judicial rulings issued without evidentiary hearings, allegedly influenced by a closed-loop network of judges, GALs, and DCBS staff;

- Suppression of Plaintiff's motions and affidavits across multiple dockets;

- Direct retaliation after Plaintiff filed complaints, including attempts to assign mental health narratives without evaluation.

These events reflect a sustained pattern of obstruction, parental alienation, and institutional abuse of process, giving rise to the federal claims set forth herein.

## LEGAL AUTHORITY SUPPORTING TIMELINE

1. **Troxel v. Granville**, 530 U.S. 57 (2000)
   – Parental rights are a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment.
2. **Santosky v. Kramer**, 455 U.S. 745 (1982)
   – Before a state may sever a parent's rights, it must provide clear and convincing evidence of harm; failure to do so violates due process.
3. **Forrester v. White**, 484 U.S. 219 (1988)
   – Judicial immunity does not apply to non-judicial acts such as administrative or conspiratorial behavior.
4. **42 U.S.C. § 1983**
   – Redress for civil rights violations committed under color of state law, including parental interference and due process deprivations.
5. **18 U.S.C. § 1961 et seq. (RICO)**
   – Racketeering claims may be asserted where there is a pattern of coordinated predicate acts by both public and private individuals.
6. **Young v. United States ex rel. Vuitton et Fils S.A.**, 481 U.S. 787 (1987)
   – Conflicted or self-interested parties may not lawfully oversee enforcement or investigation functions — relevant to GAL Eaton.
7. **Kentucky Const. §§ 1, 2, 14, and 26**
   – Guarantees due process, open courts, and protection from arbitrary judicial abuse.

15 wr

## RESERVATION OF RIGHTS TO AMEND

Plaintiff respectfully reserves the right to amend this Complaint pursuant to **Federal Rule of Civil Procedure 15(a)(2)**, should additional evidence, clarification, or correction become necessary as facts continue to emerge through discovery, sworn testimony, subpoena responses, or public records requests.

This reservation includes, but is not limited to:

- The addition of new defendants;
- The clarification or supplementation of factual allegations;
- The refinement of causes of action based on newly obtained evidence;
- The correction of typographical, clerical, or procedural errors;
- The inclusion of further predicate acts in support of Plaintiff's RICO claims;
- The amendment of any claims affected by tolling, estoppel, or judicial findings.

Plaintiff asserts this reservation in good faith and in furtherance of the interest of justice, consistent with the liberal amendment standard set forth under **Rule 15** and relevant Sixth Circuit precedent.

16 wk

**Judicial Analysis Memo:**

The July 28, 2025 message sent by Defendant Karissa Meyers constitutes a self-incriminating statement that meets the legal definition of a predicate act under federal racketeering law. Specifically, this message and its timing support the presence of both obstruction of justice and custodial interference, as defined under 18 U.S.C. § 1503 and 18 U.S.C. § 1512(c)(2).

First, Defendant Meyers admits to concealing her relocation of the children for over 60 days—an act in direct violation of existing state custody orders. She disclosed this only after Plaintiff initiated formal legal proceedings, suggesting her motivation was not compliance but risk containment.

Second, her refusal to provide updated information about the children's education and medical care—paired with her dismissive tone and reliance on outdated, inaccessible communication platforms—demonstrates a knowing attempt to obstruct lawful parental rights and frustrate ongoing litigation.

Third, when viewed in the broader context of this case—where multiple defendants are alleged to have coordinated false filings, evidence suppression, and procedural manipulation—her message further substantiates the continuity of enterprise behavior under 18 U.S.C. § 1962(c).

This message is not a benign parental update. It is an evidentiary artifact of concealment, obstruction, and reactive legal awareness—all occurring within days of official court filings. Accordingly, it materially supports Plaintiff's theory of racketeering activity and enterprise coordination.

## DEFENDANTS

- **Karissa Meyers** – Private individual; mother of Plaintiff's minor children; sued in her individual capacity for perjury, obstruction, and parental alienation. Address on record.

- **Chaye Ann Meyers** – Private individual; mother of Karissa Meyers; sued in her individual capacity for conspiracy and subornation of perjury. Address on record.

- **Richard Stewart** – Private individual; romantic partner of Karissa Meyers; sued in his individual capacity for coercion, intimidation, and tampering with Plaintiff's children. Address on record.
- **Laura Eaton** – Guardian ad Litem appointed in family court; sued in both her individual and official capacity for legal malpractice, fraud upon the court, and deprivation of honest services. Office: Eaton Law Office, PLLC.

- **Eaton Law Office, PLLC** – Kentucky-based private law firm; sued for liability associated with Laura Eaton's GAL duties and misconduct under its supervision. Office located in Hartford, KY.

- **Frances "Belle" Toll** – Supervisor with DCBS; sued in both individual and official capacity for retaliation, conspiracy, and dereliction of duty. DCBS Office, Beaver Dam, KY.
- **Chad Wilson** – DCBS worker; sued in both individual and official capacity for obstruction, coercion, and participation in retaliatory custody manipulation. DCBS Office, Beaver Dam, KY.
- **Kaylee Hunter** – DCBS worker; sued in both individual and official capacity for negligence, conspiracy, and due process violations. DCBS Office, Beaver Dam, KY.

- **Cara Wood** – DCBS worker; sued in both individual and official capacity for misconduct and failure to act upon reports of abuse. DCBS Office, Beaver Dam, KY.

- **Sheriff Adam Wright** – Elected official and sheriff of Ohio County; sued in both individual and official capacity for obstruction, failure to act, and complicity in civil rights violations. Sheriff's Office, Hartford, KY.

- **Ohio County Sheriff's Department** – Governmental entity; sued in its official capacity for systemic failures and toleration of unconstitutional conduct.

- **Cabinet for Health and Family Services (CHFS)** – Kentucky state agency overseeing DCBS; sued in its official capacity for negligent supervision, policy violations, and systemic abuse of power.

18 ur

## Defendant Entry – Judge Tim R. Coleman

**Hon. Tim R. Coleman**
Ohio County Circuit Court
111 East Washington Street
Hartford, Kentucky 42347

---

**Defendant Tim R. Coleman is the presiding Circuit Court Judge in Ohio County, Kentucky. On July 29, 2025, in Case No. 25-CI-00251 (William Clay Raymond v. Karissa Meyers, et al.), Judge Coleman issued a denial of Plaintiff's motion to proceed in forma pauperis for purposes of summons and service fees—despite Plaintiff having already paid the full civil filing fee. The denial was issued without a hearing, without findings of fact, and in the context of a civil rights and RICO-related case involving ten defendants. This act functioned as a procedural obstruction that materially delayed litigation and shielded enterprise members from timely service. Plaintiff alleges that Judge Coleman's action constitutes retaliatory suppression and enterprise enablement under 18 U.S.C. § 1962(c) and (d).**

**Hon. Tim R. Coleman**
Ohio County Circuit Court
111 East Washington Street
Hartford, Kentucky 42347

19 ₩R

# ADDITIONAL DEFENDANT DESCRIPTIONS – PAGE ADDITION

## Tina Mathis

Tina Mathis, resident of Black, Missouri, acted in concert with her husband Hank Mathes to knowingly exploit the Plaintiff's custody-related legal crisis and out-of-state duress by executing a coercive, below-market buyout of Plaintiff's Missouri homestead and business property. During this time, Tina was aware that Plaintiff was under threat of losing custody of his children unless he relocated to Kentucky, and that Plaintiff had lost jurisdictional access to his land and business income. Rather than act in good faith, Tina participated in a predatory payoff scheme that resulted in Plaintiff losing over $400,000 in equity and an income-producing cabin rental business. Her actions constitute constructive fraud, financial coercion, and knowing participation in a broader racketeering enterprise designed to economically paralyze Plaintiff during litigation.

## Hank Mathis

Hank Mathis was the primary negotiator in the exploitative property seizure executed against the Plaintiff during an active family separation crisis. A lifelong resident of Black, Missouri, with a widely known reputation for dishonest and abusive business dealings, Hank took deliberate advantage of the Plaintiff's emotional and legal vulnerability to negotiate a buyout that stripped Plaintiff of his land, income, and business legacy for approximately 15% of its fair market value. Hank was aware of Carissa Meyers' attempted theft of a free-and-clear parcel, and further pressured Plaintiff to accept a lowball offer while being forced out of Missouri by DCBS threats. His actions were predatory, malicious, and constituted both interstate extortion and financial abuse tied directly to the racketeering enterprise outlined in this complaint.

## Attorney Michael J. Hackworth / Hackworth Law Office

Attorney Michael J. Hackworth of Hackworth Law Office, 1401 North Main Street, Suite 200, Piedmont, Missouri, knowingly enabled and formalized the fraudulent buyout of Plaintiff's 175-acre property and business during Plaintiff's custodial duress. As legal counsel to Hank and Tina Mathes, Hackworth reviewed, prepared, and executed documents which were drafted and enforced during a time when Plaintiff was under threat of permanent loss of his children and economic foundation. Hackworth had a duty to act in good faith and not to participate in, ratify, or conceal coercive economic activity. Instead, he provided legal cover for what amounted to property seizure under duress. His actions constitute aiding and abetting a RICO enterprise, constructive fraud, and professional misconduct under Missouri ethics rules and federal racketeering law.

- 
  - **Judge Michael McKown Sr.** – Former Family Court Judge; sued in individual and official capacity for judicial misconduct outside the protection of immunity including obstruction and conspiracy. Retired.

**Judicial Immunity Does Not Apply**

Plaintiff asserts that Defendants Judge Michael McKown Sr. and Judge Benjamin McKown Jr. are sued solely for actions taken **outside their judicial capacity** and **not within the scope of their official role**. These include:

- Participating in or facilitating acts of retaliation based on Plaintiff's protected conduct;
- Enabling or ignoring documented perjury and abuse while under color of state authority;
- Engaging in non-adjudicative misconduct by maintaining relationships with co-defendants or obstructing access to evidence.

These actions are administrative or conspiratorial in nature and thus **not protected by judicial immunity** under *Forrester v. White*, 484 U.S. 219 (1988).

- 
  - **Judge Benjamin McKown Jr.** – Current Family Court Judge; sued in individual and official capacity for decisions made outside judicial capacity involving corruption and participation in retaliatory proceedings. Address withheld.

**Judicial Immunity Does Not Apply**

Plaintiff asserts that Defendants Judge Michael McKown Sr. and Judge Benjamin McKown Jr. are sued solely for actions taken **outside their judicial capacity** and **not within the scope of their official role**. These include:

- Participating in or facilitating acts of retaliation based on Plaintiff's protected conduct;
- Enabling or ignoring documented perjury and abuse while under color of state authority;
- Engaging in non-adjudicative misconduct by maintaining relationships with co-defendants or obstructing access to evidence.

These actions are administrative or conspiratorial in nature and thus **not protected by judicial immunity** under *Forrester v. White*, 484 U.S. 219 (1988).

- 
  - **Dan Jackson** – Former legal counsel to Plaintiff; sued in individual capacity for legal malpractice, aiding concealment of evidence, and failure to intervene. Office: Jackson & Dowell Hartford, KY.
-

- **Kentucky Coalition for Domestic Violence** – Non-profit umbrella entity now operating as ZeroV; sued for policy coordination, funding control, and collusion in commercial extortion practices.
- **ZeroV** – Current formal name of statewide nonprofit; sued for enforcing mandatory payment programs, influencing GAL referrals, and perpetuating financial coercion. Office: Frankfort, KY.

- **Lighthouse Counseling** – Private program provider certified under ZeroV; sued for participating in coerced treatment programs and financial interference in family reunification. Office located in Owensboro, KY

- **John Does 1–100** – As-yet unidentified agents, contractors, and officials who participated in the misconduct or conspiracy described herein or private person, corporation or entity Named as placeholder for discovery.

Each Defendant is sued individually and/or in their official or professional capacity as described above and as discovery shall further reveal.

## JUDICIAL IMMUNITY EXCEPTION**

**Plaintiff asserts that Defendants Judge Michael McKown Sr. and Judge Benjamin McKown Jr. are sued exclusively for actions taken outside their judicial capacity and not protected by judicial immunity. These actions include:**

**- Knowingly permitting proceedings tainted by perjury and undisclosed conflicts of interest;**

**- Participating in or enabling off-the-record, extrajudicial conduct with named co-defendants;**

**- Failing to disclose disqualifying conflicts and ignoring clear evidence of child abuse, perjury, and constitutional violations;**

**- Acting in concert with state agencies and private parties to sustain retaliatory orders and obstruct Plaintiff's access to legal relief.**

**These acts are administrative, conspiratorial, and extrajudicial in nature and fall outside the scope of immunity under *Forrester v. White*, 484 U.S. 219 (1988), and *Mireles v. Waco*, 502 U.S. 9 (1991).**

**RICO PREDICATE ACTS ALLEGED:**

*STRUCTURE OF THE ENTERPRISE**

The enterprise referenced in this Complaint is an association-in-fact under 18 U.S.C. § 1961(4), consisting of public officials, state agency employees, court appointees, and affiliated nonprofit contractors who collectively operated with a shared objective: to interfere with Plaintiff's parental rights, suppress due process, extract unlawful payments, and shield misconduct through systemic abuse of family court procedures.

The enterprise was maintained by the coordinated acts of GAL Laura Eaton, DCBS staff (Toll, Wilson, Hunter, Wood), nonprofit enforcers (ZeroV, Lighthouse Counseling), and judicial actors, who together implemented custody manipulation, false filings, perjury, and civil retaliation. The structure demonstrated continuity, shared resources, decision-making patterns,

and aligned concealment of predicate misconduct. It remains ongoing.

- 18 U.S.C. § 1961: Commercial extortion via non-profit collusion – Plaintiff was required to pay $3,000 to Lighthouse Counseling under the operational control and policy framework of ZeroV (formerly Kentucky Coalition for Domestic Violence) for a Batterers Intervention Program, despite being assessed as the victim. ZeroV and CHFS jointly enforced policies that stripped Plaintiff of parental access unless these funds were paid, constituting extortion under color of law.

- Extortion under color of official right – Defendants compelled Plaintiff to pay $1,000 to Guardian ad Litem Laura Eaton while she was actively engaged in adverse legal conflict, and an additional $3,000 to CHFS-linked programming as a precondition to seeing his children.

- Obstruction of justice – Defendants ignored mandated abuse reports, manipulated custody procedures, and suppressed critical filings to shield institutional liability.

- Fraud and deprivation of honest services – GAL Laura Eaton billed the state and Plaintiff for services while operating with undisclosed conflicts and acting as a named defendant.

- Conspiracy to defraud – Coordinated actions by DCBS workers, Guardian ad Litem, and private service providers to construct and advance a custody-denial enterprise targeting Plaintiff.

23 wr

- RICO conspiracy – All named parties knowingly advanced predicate acts over a two-and-a-half year period following Plaintiff's separation from Defendant Karissa Meyers, sustaining the enterprise through overt acts in furtherance of systemic child concealment and suppression of parental rights.

- 18 U.S.C. § 1512(b): Witness tampering

- 18 U.S.C. § 1513: Retaliation against witness

- 18 U.S.C. § 1503: Obstruction of justice

- 18 U.S.C. § 1341: Mail fraud

- 18 U.S.C. § 1343: Wire fraud

- 18 U.S.C. § 241 & 242: Conspiracy to interfere with civil rights and deprivation under color of law

## CAUSES OF ACTION

1. **RICO Enterprise Liability** – 18 U.S.C. §§ 1962(c) and 1962(d): Engaging in a pattern of racketeering activity including wire fraud, mail fraud, obstruction of justice, and retaliation against witnesses, with shared intent to deprive Plaintiff of parental rights, liberty, and due process.

   As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

2. **Conspiracy to Interfere with Civil Rights** – 42 U.S.C. § 1985(2) & (3): Joint agreement among public officials and private actors to prevent Plaintiff from pursuing justice in family court and federal forums through coordinated false filings, suppressive rulings, and malicious obstruction.

As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

**3 Deprivation of Rights Under Color of Law** – 42 U.S.C. § 1983: Defendants acting individually and in concert violated Plaintiff's constitutional rights including First, Fifth, and Fourteenth Amendment protections through use of government authority and retaliation.

As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

**4   Failure to Intervene** – Public officials knowingly failed to prevent or correct ongoing civil rights violations, despite having the authority and obligation to do so under constitutional and professional standards.

As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

**5 Abuse of Process** – Defendants used legal processes (e.g., restraining orders, ex parte motions, child protective filings) for improper purposes such as custody deprivation, suppression of evidence, and reputation destruction.

**6 Legal Malpractice** – Defendant Dan Jackson, through representation of Plaintiff, committed acts of omission, negligence, and abandonment, contributing directly to Plaintiff's injuries

6. On or about July 13, 2025, Plaintiff delivered two affidavits to Dan Jackson, which were drafted by Plaintiff for Jackson to sign. These affidavits were not evidentiary submissions from Plaintiff, but testimonial statements prepared for Jackson as a **material witness**, reflecting his firsthand knowledge that:

(a) Child Protective Services (DCBS) had refused to accept evidence from Plaintiff on multiple documented occasions; and
(b) DCBS agent Bell Toll had similarly refused to review or admit exculpatory evidence provided by Plaintiff.

Jackson, having previously served as Plaintiff's attorney in related family court matters, did not dispute the truth of the affidavits, but refused to sign or acknowledge them. His refusal occurred

25 wR

despite no longer serving as Plaintiff's counsel, and despite having had direct knowledge of the agency misconduct referenced therein.

This act of silence and suppression, performed **after the attorney-client relationship ended**, constitutes knowing obstruction of potential litigation and affirmative protection of the racketeering enterprise's interests. Jackson's refusal furthered the enterprise's goals of denying Plaintiff due process, concealing internal misconduct, and preserving the institutional network of immunity surrounding DCBS, GALs, and the court.

7**Negligent Supervision and Training** – CHFS, CPS, and DCBS agencies failed to properly train or monitor agents Frances Toll, Chad Wilson, Kaylee Hunter, and others despite repeated policy breaches and misconduct.

8  **Subornation of Perjury** – Several defendants including Karissa Meyers, Chaye Ann Meyers, and Laura Eaton encouraged or facilitated false testimony during multiple hearings and investigations to sway custody determinations.

9  **Fraud Upon the Court** – Defendants knowingly presented or allowed materially false evidence, withheld exculpatory information, and violated disclosure rules resulting in manipulation of court outcomes.

- **10 Intentional Infliction of Emotional Distress (IIED)** – Defendants' actions, including malicious separation of Plaintiff from his children, repeated character assassination, and institutional abuse, meet the threshold of outrageous conduct.

- **11 Negligent Infliction of Emotional Distress (NIED)** – Independent of intent, Defendants' failure to follow policy, law, and duty of care foreseeably caused Plaintiff emotional trauma and psychological damage.

- **12 Parental Alienation as Child Abuse** – Coordinated efforts by Karissa Meyers, Richard Stewart, Chaye Ann Meyers, and supporting state agents systematically erased

the relationship between Plaintiff and his children through coercion and psychological manipulation.

- **13 Violation of Kentucky Constitution §§ 1, 2, 14, and 26** – Defendants deprived Plaintiff of open courts, due process, and equal protection as guaranteed under the Kentucky Constitution.

- **14 Civil Conspiracy (Common Law)** – Defendants collectively acted with a meeting of the minds to accomplish unlawful objectives including child concealment, abuse cover-up, and evidence suppression.

- **15 Retaliation for Protected Conduct** – Plaintiff was targeted with false reports, legal threats, and administrative interference following public criticism and legal filings, in violation of the First Amendment.

  As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

- **16 Negligence and Gross Negligence** – Government actors and professionals owed Plaintiff a duty of care which they breached through reckless disregard for legal standards and child safety.

  As a direct and proximate result of the conduct alleged herein, Plaintiff suffered injury in fact, including but not limited to: unlawful deprivation of parental rights, financial extortion, emotional distress, reputational harm, and suppression of legal remedies. These injuries are traceable to Defendants' actions and redressable by this Court under 18 U.S.C. § 1964(c), 42 U.S.C. § 1983, and related provisions."

- **17 Tortious Interference with Parental Rights** – Defendants unlawfully interfered with Plaintiff's relationship and legal authority over his minor children.

27 uk

- **18 Suppression and Withholding of Exculpatory Evidence** – Several defendants withheld audio, reports, and known disclosures that would have exonerated Plaintiff in family court proceedings.

- **19 Defamation and False Light** – Defendants made public or semi-public statements falsely portraying Plaintiff as abusive, unstable, or dangerous without basis or legal finding.

- **20 Pattern of Intimidation and Witness Retaliation** – Defendants used legal and administrative tools to harass Plaintiff, deter testimony, and chill lawful inquiry.

## 21

**Violation of Due Process and Civil Rights – Suppression of Defense at Restraining Order Hearing**
**(Against Judge Michael McKown Sr. – Individual Capacity)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.
2. On or about **October 2022**, Defendant **Judge Michael McKown Sr.**, acting under color of state law as a judicial officer of the Ohio County Circuit Court, presided over a domestic violence restraining order hearing initiated by Defendant **Karissa Meyers** against Plaintiff **William Clay Raymond**.
3. At said hearing, Judge McKown Sr. **unilaterally announced a 20-minute time limit** for the entire proceeding and **explicitly denied Plaintiff's request for an extension**, despite Plaintiff's offer of material exculpatory evidence requiring additional time to present.
4. Plaintiff was allotted **only approximately seven (7) minutes** to respond to allegations that directly affected his constitutional parental rights and freedom of association with his minor children.
5. Plaintiff was prepared to present sworn affidavits, documented evidence, electronic communications, and third-party records in support of his defense and to rebut demonstrably false allegations made by Ms. Meyers. Judge McKown Sr. knowingly refused to allow these materials to be entered into the record.
6. This conduct resulted in the improper issuance of a restraining order, later used as a legal basis for:
   a. Removal of Plaintiff's children from his custody,

28 *un*

b. The appointment of Guardian ad Litem Laura Eaton, and

c. Subsequent involvement by DCBS agents in a pattern of state-sanctioned interference.

7. The hearing before Judge McKown Sr. constitutes a **deprivation of Plaintiff's right to a meaningful opportunity to be heard**, in violation of the **Due Process Clause of the Fourteenth Amendment** to the United States Constitution and actionable under **42 U.S.C. § 1983**.

8. Plaintiff asserts that this was not an isolated error but the **first coordinated act** in a broader racketeering enterprise to suppress parental rights, manipulate court outcomes, and shield institutional misconduct.

9. Plaintiff further alleges that Judge McKown Sr. was **aware of the GAL and DCBS trajectory that would follow**, and knowingly **facilitated the entry of a fraudulent protective order** to serve the objectives of the enterprise.

10. While judicial immunity protects many discretionary actions, Plaintiff contends that **McKown Sr.'s conduct exceeded judicial capacity**, constituted knowing misconduct under **18 U.S.C. § 242**, and forms a **predicate act of obstruction and rights deprivation** under RICO.

11. Plaintiff seeks declaratory relief, compensatory damages, and other remedies as set forth in the Prayer for Relief.

## EXHIBIT A: AFFIDAVIT PURSUANT TO RULE 56(d)

I, William Clay Raymond, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff in the above-captioned action and have personal knowledge of the facts set forth herein.

2. The Defendants named are in possession of documents, records, and communications critical to proving the allegations made in this complaint.

3. I have made good faith efforts to obtain this information prior to filing; however, certain materials (including GAL records, CAC transcripts, and internal DCBS communications) remain sealed, redacted, or unavailable without subpoena authority.

4. I request that this Court allow this case to proceed to discovery so that these documents may be obtained and analyzed before any dispositive motion under Rule 56 is granted.

5. These documents will support my claims of constitutional violations, racketeering activity, and ongoing retaliation.

Executed on this __1__ day of August, 2025.

/s/ William Clay Raymond

29 wr

**Reservation of Additional Claims and Defendants**
Plaintiff reserves the right to assert additional claims and name further defendants as discovery reveals new evidence of wrongdoing. This includes but is not limited to:

- Claims involving fraudulent financial schemes;
- Claims arising from retaliation during the course of litigation;
- Naming additional supervisory officials or non-profit board members who participated in predicate acts or cover-ups.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

## EMERGENCY MOTION TO PRESERVE EVIDENCE AGAINST ALL NAMED DEFENDANTS

Plaintiff respectfully moves this Court for an Emergency Order to Preserve Evidence pursuant to the Court's inherent authority and Federal Rules of Civil Procedure Rules 26 and 65. This motion applies to each of the following defendants: Karissa Meyers, Chaye Ann Meyers, Richard Stewart, Laura Eaton, Eaton Law Office, PLLC, Frances "Belle" Toll, Chad Wilson, Kaylee Hunter, Cara Wood, Sheriff Adam Wright, Ohio County Sheriff's Department, Cabinet for Health and Family Services, Judge Michael McKown Sr., Judge Benjamin McKown Jr., Dan Jackson, Kentucky Coalition for Domestic Violence, ZeroV, Lighthouse Counseling, and John Does 1–100.

Plaintiff requests that this Court order all Defendants, their agents, contractors, employers, and counsel to preserve and not alter, delete, destroy, or otherwise conceal:

1. Guardian ad Litem records and communications by Laura Eaton and Eaton Law Office;
2. Internal DCBS documentation, emails, and communications involving Frances Toll, Chad Wilson, Kaylee Hunter, and Cara Wood;
3. Records, case notes, and digital data maintained by the Ohio County Sheriff's Department and/or Sheriff Adam Wright;
4. All program referral records, billing communications, and case documents in possession of ZeroV and Lighthouse Counseling;
5. Any and all communications, reports, court filings, or correspondence mentioning or involving Plaintiff William Clay Raymond or his minor children;
6. Email, text, or digital platform messages from 2022 through present related to custody decisions, GAL evaluations, CAC referrals, or family court recommendations.

This preservation order is necessary to prevent the destruction or manipulation of critical evidence relevant to RICO predicate acts, constitutional violations, and damages. The risk of spoliation is high due to the nature of the allegations and the involvement of multiple government and private actors.

Plaintiff respectfully requests that Defendants confirm in writing their compliance with this preservation order within ten (10) days of service.

## REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff respectfully moves this Court for the issuance of a preliminary injunction to preserve the safety and welfare of the minor children involved, and to maintain the integrity of ongoing proceedings. Specifically, Plaintiff requests that:

31 WR

- All named Defendants, **excluding Defendant Karissa Meyers**, be prohibited from having any direct or indirect contact, access, or communication with Plaintiff's minor children for the duration of this litigation;
-  A hearing be set at the earliest possible date to determine the necessity of continued injunctive protections.

This injunction is necessary to prevent irreparable harm, protect the constitutional and custodial rights of the Plaintiff, and ensure the children are shielded from individuals currently under federal litigation for misconduct.

- Compensatory damages not less than $250,000,000;
- Treble damages under 18 U.S.C. § 1964(c);
- Punitive damages as authorized;
- Declaratory judgment outlining constitutional violations;
- Injunctive relief including custody transfer and preservation of all sealed family court records;
- Mandatory video-recorded apologies from all defendants, with Plaintiff retaining full publication rights, minimum of 2 minutes long, Defendants must approve the apology contents in writing prior to  apology, it must be relevant and cover the acts each defendant commiteed.
- Referral to appropriate oversight agencies and federal authorities;
- Any additional relief the Court deems just.

**Respectfully submitted,**

**VERIFICATION PURSUANT TO RULE 11**

I, William Clay Raymond, being duly sworn, hereby verify under penalty of perjury that the factual allegations contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I further certify that this Complaint is filed in good faith, is not being presented for any improper purpose, and complies with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Executed on this __1__ day of _August_ , 2025.

32 WR

**RICO CONSPIRACY PARTICIPATION – SUPPLEMENTAL FILING
IN SUPPORT OF VERIFIED CIVIL RICO AND CIVIL RIGHTS COMPLAINT**
**William Clay Raymond v. Karissa Meyers et al.**
**U.S. District Court – Western District of Kentucky, Owensboro Division**
**Dated: August 1, 2025**

# I. INTRODUCTION

This supplemental filing consolidates the actions, roles, and interconnections of all named defendants in the Verified Civil RICO Complaint. It demonstrates that their conduct, both individually and collectively, satisfies the statutory requirements under 18 U.S.C. §§ 1962(c) and (d) and supports additional claims under 42 U.S.C. § 1983 for deprivation of constitutional rights. The enterprise described herein operated across judicial, executive, and contracted private actors with the shared goal of removing Plaintiff's children unlawfully and silencing his efforts to expose systemic misconduct.

# II. ENTERPRISE STRUCTURE AND DEFENDANT PARTICIPATION

### 1. Karissa Meyers
Spearheaded the fraudulent custody and dependency proceedings by filing knowingly false CPS reports and emergency protective orders. Falsely alleged Plaintiff pointed a firearm at her during a custody exchange—an allegation later contradicted by her own witness. Orchestrated her mother's and partner's involvement, coached testimony, and weaponized the legal system for strategic control of the children.

Predicate Acts: 18 U.S.C. §§ 1341, 1512, 1621

### 2. Chaye Ann Meyers
Engaged in sexual grooming of the minor children by showering with them naked and urinating on them, behavior she partially admitted. Rejected by the family court as not meeting criteria for abuse, despite the presence of audio evidence. Supported Karissa's fabricated narratives and engaged in perjury to insulate ongoing misconduct.

Predicate Acts: §§ 1512, 1621, 242

### 3. Laura Eaton (GAL)
Actively suppressed exculpatory and investigative evidence presented by Plaintiff. Refused to investigate or acknowledge reports of abuse. Maintained allegiance to DCBS caseworkers, manipulated case summaries in favor of state custody, and enabled the concealment of critical facts affecting the best interest of the children.

Predicate Acts: §§ 1341, 1512(c), 1962(d)

33 WR

### 4. Judge Michael McKown Sr.

Presided over the initial removal hearing and later a key restraining order hearing which lasted fewer than 20 minutes. Denied Plaintiff the opportunity to present witnesses or video evidence. Allowed caseworker submissions to stand uncontested and issued orders despite constitutional deficiencies. Set the procedural foundation for continued due process deprivation.

Predicate Acts: §§ 1503, 242, 1962(d)

### 5. Judge Benjamin McKown Jr.

Inherited the case and refused to address past judicial errors. Rejected Plaintiff's motions to disqualify Eaton despite known legal conflicts. Dismissed evidence of child grooming and on July 23, 2025, declared on record: "If I dismiss or disqualify Laura Eaton as Guardian ad Litem because you filed a lawsuit against her, that makes a very dangerous precedent." Allowed removal to proceed despite the original petition failing to include notice to the Plaintiff.

Predicate Acts: §§ 1503, 1512(c), 1962(d)

### 6. Frances "Bell" Toll (DCBS)

Filed the original dependency petition without including Plaintiff's address, triggering default procedures. Rejected direct offers of exculpatory evidence. Collaborated with GAL Eaton and other DCBS actors to push the removal process forward using incomplete, fabricated narratives.

Predicate Acts: §§ 1519, 1341, 1962(d)

### 7. Kailee Hunter (DCBS)

Repeatedly endorsed removal strategies that contradicted evidence submitted by the Plaintiff. Ignored red flags and instead supported Bell Toll in furthering false allegations to judicial officers and therapists. Aided and extended enterprise strategy.

Predicate Acts: §§ 1341, 1503, 1962(d)

### 8. Cara Wood (DCBS)

Positioned as a passive gatekeeper. Failed to intervene in known misrepresentations, despite holding access to internal DCBS records contradicting the formal narrative. Aided concealment through omission.

Predicate Acts: §§ 1505, 1962(d)

### 9. Amanda Bragg (Defense Counsel for Karissa)

Acted as legal enabler by affirming and presenting known falsehoods. Refrained from objecting when false testimony was offered and refused to acknowledge glaring conflicts. Served as a courtroom barrier between the Plaintiff and the truth.

Predicate Acts: §§ 1512(b), 1962(d)

34 MR

**10. Natalie Ralph (Assistant Commonwealth's Attorney)**
Prosecuted charges outside her jurisdiction with full knowledge that they lacked legal authority. Withheld exculpatory witness statements. Reinforced DCBS-led misconduct by lending prosecutorial legitimacy to defective actions.

Predicate Acts: §§ 1503, 1512, 1962(d)

**11. Chase Ward (Public Defender)**
Assigned to Plaintiff under court order, then failed to raise any of the procedural flaws. Did not file necessary motions. Suppressed Plaintiff's concerns, delayed communication, and coerced Plaintiff into an unjust stipulation the morning of trial.

Predicate Acts: §§ 1503, 1962(d)

**12. Dan Jackson (Former Counsel)**
Received affidavits detailing Eaton's and Toll's misconduct but failed to respond. Abandoned the case while knowingly allowing enterprise participants to proceed unchallenged.

Predicate Acts: §§ 1503, 1962(d)

**13. Sheriff Adam Wright**
Ignored direct reports from Plaintiff regarding sexual misconduct and grooming behavior. Refused to initiate basic investigations. Failed to protect minor children from ongoing abuse despite legal obligation.

Predicate Acts: §§ 1505, 1510, 1962(d)

**14. Richard Stewart**
Collaborated with Karissa in filing false narratives. Offered coached statements. Witnessed misconduct and took no action. Helped maintain a household where fraud, perjury, and coercion were used to justify custody interference. Stripped Plaintiff's minor child, age 3 (M.G.R.), naked and physically assaulted her in the home, contributing directly to psychological trauma and furthering the objectives of the enterprise. Additionally, threatened to kill Plaintiff by stating to Plaintiff's minor son, W.R.R. (age 9 at the time), "I will make one phone call and have your father killed," instilling fear and furthering psychological abuse of the children in service of the RICO conspiracy.

Predicate Acts: §§ 1341, 1512(b), 1962(d)

**15. Lighthouse Counseling**
Produced therapy reports supporting removal despite contradicting evidence. Omitted disclosures that would have disqualified GAL or triggered protective orders. Delivered biased reports under court contract.

Predicate Acts: §§ 1341, 1512(c)(2), 1962(d)

**16. Kentucky Coalition for Domestic Violence (KCDV) / Zuroff**
Protected and validated use of domestic violence accusations as a tool for custody interference. Maintained institutional ties with GAL and DCBS actors. Allowed their nonprofit platform to further state-backed fraud.

Predicate Acts: §§ 1346, 1512, 1962(d)

**17. Chad Wilson (DCBS)**
Knowingly enabled fraudulent dependency petitions by failing to correct procedural errors and refusing to accept exculpatory evidence offered by the Plaintiff. Participated in enterprise meetings and documentation reviews supporting false removal narratives. Acted with deliberate indifference to the abuse, alienation, and fabricated claims orchestrated by other defendants, contributing directly to the obstruction of Plaintiff's parental rights.

Predicate Acts: §§ 1503, 1519, 1962(d)

**18. Dan Jackson (Former Legal Counsel)**
Served as Plaintiff's former attorney and was directly presented with affidavits detailing misconduct by GAL Laura Eaton and DCBS worker Frances "Bell" Toll. Despite receiving these documents—critical to exposing enterprise corruption—he refused to act, failed to preserve them in a court-recognizable format, and ultimately withdrew from representation without taking any protective steps. At the time the affidavits were submitted, his inaction delayed emergency relief and concealed enterprise activity from timely judicial scrutiny. His professional silence and failure to intervene gave cover to Eaton and Toll, allowing them to continue acts of suppression, perjury, and abuse without meaningful opposition.

He also destroyed client files and did not provide full file after representation ended.

Predicate Acts: §§ 1503 (Obstruction of Justice), 1962(d) (RICO Conspiracy)

**19. David Farley and Janelle Farley (Public Defenders)**
David Farley served as Plaintiff's public defender while his wife, Janelle Farley, simultaneously represented Karissa Meyers in the same case involving the unlawful removal of Plaintiff's children. This marital relationship created an egregious conflict of interest that was never disclosed to the court or to the Plaintiff. The conflict deprived Plaintiff of objective legal representation and facilitated unethical coordination behind the scenes. Their joint participation as publicly funded, court-appointed counsel for adverse parties violated constitutional safeguards and enabled key enterprise participants to proceed with little legal resistance. This dynamic obstructed justice, compromised the adversarial process, and contributed materially to the racketeering enterprise.

Predicate Acts: §§ 1346 (honest services fraud), 1503 (obstruction), 1962(d) (RICO conspiracy)

36 ur

**20. Lighthouse Counseling (Expanded Statement)**
Forced Plaintiff to enroll in a Batterer's Intervention Program (BIP) despite findings by the intake therapist that Plaintiff was in fact the victim of abuse. The intake interviewer initially stated that Plaintiff should not be enrolled in BIP due to his non-aggressor status, but later contacted her supervisor who overruled her. Plaintiff was informed that under Kentucky Coalition for Domestic Violence policy, even individuals subject to **false** restraining orders are required to complete BIP—regardless of evidence or professional judgment. Lighthouse Counseling thereby participated in a policy-driven enterprise conspiracy that reversed victim-offender roles to further false legal narratives. This coerced treatment was weaponized to substantiate fraudulent custody recommendations and reinforce the enterprise's fabricated abuse framework.

Predicate Acts: §§ 1341 (fraud), 1512(c)(2) (obstruction), 1962(d) (conspiracy)

**21**

**. ZeroV (Subsidiary of Kentucky Coalition for Domestic Violence)**
ZeroV served as a silent structural arm of the broader enterprise by promoting the use of domestic violence narratives—regardless of their factual basis—to secure state-controlled outcomes in family law cases. ZeroV's institutional policy was cited as justification for requiring Plaintiff, despite being identified as a victim, to undergo batterer's intervention programming solely due to the existence of a false restraining order. By doing so, ZeroV reversed victim-perpetrator roles, entrenched systemic falsehoods, and extended enterprise-based coercion into treatment protocols. Their official endorsement of this framework lent perceived legitimacy to the misconduct of Lighthouse Counseling, KCDV, and the GAL/DCBS coalition, contributing materially to the RICO structure.

Predicate Acts: §§ 1346 (honest services fraud), 1512(c)(2) (obstruction), 1962(d) (conspiracy)

37 WR

## III. CONCLUSION

Each of these defendants played a critical role in an unlawful enterprise that concealed abuse, suppressed due process, and used state machinery to separate Plaintiff from his children. The organizational pattern, mutual shielding, and procedural coordination clearly demonstrate a RICO-qualifying structure and behavior.

Plaintiff reaffirms all counts in the Verified Complaint and requests that this supplemental filing be entered in support of both civil RICO claims and accompanying civil rights violations under 42 U.S.C. § 1983.

**Respectfully submitted,**
**/s/ William Clay Raymond**
Pro Se Plaintiff
Hillview, Kentucky
Dated: August 1, 2025

/s/ William Clay Raymond
179 Tanyard Park, Apt. 166
Hillview, KY 40229
(970) 779-1377
clayemail57@mail.com

**SUPPLEMENT TO VERIFIED COMPLAINT**
**COUNTS 22A AND 22B – DAN JACKSON (RICO)**

Submitted for inclusion as an appended exhibit to the original Verified Complaint for Damages, this supplemental pleading adds Counts 22A and 22B asserting claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) against attorney **Dan Jackson** and the entity **Jackson & DOWELL, Attorneys at Law**.

The Plaintiff, William Clay Raymond, incorporates by reference all prior allegations and hereby adds:

**COUNT 22A – RICO PARTICIPATION (18 U.S.C. § 1962(c)) — Dan Jackson**
Dan Jackson conducted or participated, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity. This includes intentional suppression of evidence, obstruction of justice, and denial of meaningful legal services, all in furtherance of concealing coordinated misconduct involving DCBS, the Guardian ad Litem, law enforcement, and the judiciary.

**COUNT 22B – RICO CONSPIRACY (18 U.S.C. § 1962(d)) — Dan Jackson**
Dan Jackson knowingly agreed to facilitate the racketeering enterprise through:

1. Refusal to act on affidavits he was asked to sign post-representation;
2. Disengagement after constitutional violations were raised;
3. Protection of institutional relationships at the expense of his client;
4. Willful silence concerning state actor misconduct he personally witnessed.

**PREDICATE ACTS: DAN JACKSON**

39 wcr

| Predicate Act | Legal Basis | Supporting Facts |
|---|---|---|
| Obstruction of Justice | 18 U.S.C. § 1503 | Refused to sign or acknowledge affidavits drafted by Plaintiff regarding DCBS misconduct, despite firsthand knowledge and no longer representing Plaintiff. Suppressed material evidence relevant to pending litigation. |
| Deprivation of Rights under Color | 18 U.S.C. § 242 | Enabled a pattern of constitutional violations by failing to intervene, report, or act on systemic misconduct involving GAL and DCBS, both during and after representation. |
| Honest Services Fraud (Theoretical) | 18 U.S.C. § 1346 | While previously retained, failed to provide adequate advocacy; post-retention, further concealed known violations. Potential fraud upon client and the court. |
| RICO Conspiracy | 18 U.S.C. § 1962(d) | Agreement—express or tacit—with GAL, judiciary, and state officials to suppress Plaintiff's legal position and shield the enterprise by silence and disengagement. |

**Filed in conjunction with original Verified Complaint.**
**Respectfully submitted,**
**William Clay Raymond**
Pro Se Litigant

**COMMONWEALTH OF KENTUCKY**
**COUNTY OF [Your County]**
**AFFIDAVIT OF WILLIAM CLAY RAYMOND**
**IN SUPPORT OF JUDICIAL AND PROFESSIONAL MISCONDUCT CLAIMS**

**I, William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

## 1. Background and Standing

1. I am the biological father of the minor children W.R.R. and M.G.R., and the petitioner in **Case No. 22-CI-318**, currently before the Ohio County Family Court Division.
2. I am also the plaintiff in a pending **civil malpractice lawsuit** filed on behalf of myself and my children against **Laura Eaton**, who has been serving as Guardian ad Litem (GAL) in the aforementioned family court case.
3. That lawsuit was properly served on or about **July 16, 2025**, and seeks $1,500,000 in compensatory damages for professional misconduct, ethical violations, and constitutional deprivations committed by Ms. Eaton during her appointment as GAL.

## 2. Incident in Court on July 23, 2025

4. On **July 23, 2025**, I appeared in court for a scheduled hearing in Case No. 22-CI-318, during which **Laura Eaton was physically present**, despite having been **personally served with a civil complaint** one week earlier naming her as a defendant in a legal action brought by me and my children.
5. During this hearing, I personally moved for her **disqualification** on the record, citing clear ethical conflict, personal liability exposure, and loss of neutrality resulting from the pending lawsuit.
6. Despite this request, **Ms. Eaton refused to recuse herself voluntarily**, and the **presiding judge, Hon. Benjamin McCown, refused to grant the motion to disqualify,** allowing her to continue in her GAL role over my children—children who are co-plaintiffs in the civil lawsuit against her.
7. In that same hearing, I observed Ms. Eaton **smirking, laughing, and acting smugly toward me in open court**, including visible body language that reflected **disrespect and arrogance**, as though the lawsuit posed no threat to her or the authority granted by the court.
8. Her conduct was observed **immediately after being served** in a civil action that alleges serious abuse of discretion and failure to represent the best interests of the children she is charged to protect.

## 3. Financial Order Benefiting a Defendant Under Lawsuit

9. At the conclusion of the July 23 hearing, the court issued an order **compelling me to pay $1,000 to Laura Eaton** for "future attorney's fees" related to a **two-day trial scheduled for approximately October 25, 2025**, a proceeding which has not yet occurred.

41 WR

10. I was ordered to begin payment at a rate of **$50 per month**—a form of *prepayment* for a contested trial still two months away, while the recipient of those funds remains a **civil defendant under active malpractice investigation** by myself and my children.
11. I **formally objected to the order in court**, refused to consent, and explicitly raised the fact that I was being ordered to **pay money to an individual I had sued and also to an individual that doesn't do her job.** I stated clearly on the record, **"I don't pay people that don't do their job."**

## 4. Continuing Harm and Ethical Breakdown

12. Ms. Eaton's continued appointment, refusal to recuse, and financial benefit granted by the court—**despite her being a named civil defendant in an active malpractice suit concerning her behavior in this exact case**—represents an outrageous conflict of interest and ongoing harm to both me and my children.
13. Her demeanor in court on July 23, 2025, indicated a **complete lack of accountability**, and the court's refusal to disqualify her while simultaneously awarding her payment for future litigation undermines **judicial neutrality, ethical standards, and public confidence** in the family court system.

**Plaintiff further believes the following crimes were committed during this hearing and associated with this hearing:**

- **18 U.S.C. § 1346 – Honest Services Fraud:** The continuation of Eaton's GAL appointment despite being sued by the very children she represents demonstrates a deprivation of honest services under color of official responsibility.
- **18 U.S.C. § 1503 – Obstruction of Justice:** The refusal to recuse, combined with the judge's denial of disqualification and Eaton's behavior, constitute an attempt to obstruct lawful process and shield misconduct.
- **18 U.S.C. § 1951 – Interference with Commerce by Threats or Violence (Hobbs Act – applied via extortion of funds):** The order compelling Plaintiff to pay $1,000 to a known defendant in a pending civil action under threat of court enforcement may constitute financial coercion under color of law.
- **18 U.S.C. § 1962(c) – RICO (Conducting the Affairs of an Enterprise Through a Pattern of Racketeering Activity):** This hearing, when viewed with the broader pattern of misconduct involving CPS, GAL, and court officers, forms a predicate act in a continuing racketeering enterprise aimed at suppressing parental rights and fabricating judicial outcomes.

**FURTHER AFFIANT SAYETH NAUGHT.**

Respectfully submitted this _1_ day of _August_, 2025.

**William Clay Raymond**
179 Tanyard Park, Apt. 166

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

**FILED**

JAMES J. VILT, JR. - CLERK

AUG - 1 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants

**Case No.: [To be assigned]**       4:25-CV-83-GNS

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION TO PRESERVE
DEFENDANTS' REAL PROPERTY AND FINANCIAL ASSETS**

**Comes now Plaintiff, William Clay Raymond, pro se**, pursuant to Federal Rule of Civil
Procedure 65 and the court's inherent equitable powers, and respectfully moves this Honorable
Court for the issuance of a preliminary injunction prohibiting all named Defendants from selling,
transferring, concealing, dissipating, or encumbering any real property or financial assets during
the pendency of this RICO action.

## I. RELIEF REQUESTED

Plaintiff requests that this Court enter an order:

1. Freezing all known real property, business interests, and financial accounts held by any
   named Defendant, whether in their individual name, jointly, or through trusts, shell
   corporations, or third parties;
2. Requiring court approval before any Defendant may transfer, encumber, or sell any asset
   with a value exceeding $1,000;
3. Authorizing expedited discovery related to the current holdings and asset transfers of all
   named Defendants;
4. Preserving the status quo to protect the Plaintiff's right to recovery and the integrity of
   the court's eventual judgment.

## II. LEGAL STANDARD

The Court may grant preliminary injunctive relief where the movant demonstrates: (1) a
likelihood of success on the merits;
(2) irreparable harm absent the injunction;
(3) that the balance of equities favors the movant; and
(4) that the injunction is in the public interest.
See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Certified
Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

In civil RICO actions, courts have repeatedly held that asset freezes are permissible where
necessary to preserve the availability of meaningful relief. See *United States v. Regan*, 858 F.2d
115 (2d Cir. 1988); *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999); *Commodity
Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1221 (7th Cir. 1979).

43 wr

Additionally, under 18 U.S.C. § 1964(a), district courts are explicitly empowered to issue equitable remedies, including injunctions, to prevent and restrain RICO violations.

## III. ARGUMENT

### A. Likelihood of Success on the Merits

Plaintiff has filed a comprehensive RICO complaint supported by extensive evidence, sworn affidavits, and predicate acts implicating multiple state actors, GALs, law enforcement, and private individuals in a pattern of racketeering activity. The complaint includes acts of obstruction of justice, extortion under color of law, perjury, honest services fraud, retaliation, and enterprise corruption. Defendants are on notice of liability for treble damages, attorney's fees, and equitable relief.

### B. Irreparable Harm

There is a significant and immediate risk that one or more Defendants will attempt to shield assets by:

- Selling or transferring real estate;
- Liquidating bank accounts;
- Moving property through family members or affiliated business entities.

If such transfers occur before final judgment, Plaintiff's right to recover awarded damages—monetary or injunctive—will be severely undermined. Courts have recognized that "the dissipation of assets that could be used to satisfy a judgment may constitute irreparable harm." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994).

### C. Balance of Equities

Defendants will suffer no prejudice from a temporary freeze of contested assets, especially where they retain access to personal funds for necessary living expenses upon application to this Court. In contrast, Plaintiff faces extraordinary hardship if enterprise actors are permitted to liquidate ill-gotten or shielded assets before justice is reached.

### D. Public Interest

The public has a strong interest in ensuring that those credibly accused of public corruption, abuse of process, and financial exploitation under color of law are not allowed to dissipate assets before facing legal consequences. Courts have a duty to preserve integrity in civil rights litigation and prevent fraud upon the judicial process.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court enter an immediate order:

44 ar

- Freezing all real estate, trust assets, business interests, and financial accounts of all named Defendants;
- Preventing any transfers, sales, or dissipation of assets without leave of this Court;
- Requiring all Defendants to submit a sworn accounting of real and financial holdings within 14 days;
- Scheduling an expedited evidentiary hearing if necessary.

Respectfully submitted,
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: [To be filled upon filing]

---

**CERTIFICATE OF SERVICE**
I hereby certify that on this date, I served the foregoing motion upon all named defendants by first-class mail and/or electronic service consistent with Rule 5 of the Federal Rules of Civil Procedure.

Dated: [Same as above]

---

**William Clay Raymond**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants

Case No.: [To be assigned]   4:25-cv-83-GNS

# AFFIDAVIT OF WILLIAM CLAY RAYMOND IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO PRESERVE DEFENDANTS' ASSETS

I, **William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

## 1. Identity and Standing

1. I am the pro se Plaintiff in the above-captioned federal RICO action.
2. I bring this affidavit in support of my motion for preliminary injunction seeking to freeze the real property and financial assets of all named Defendants pending final adjudication of this action.
3. This lawsuit alleges a wide-reaching conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, involving child protection officials, family court personnel, law enforcement officers, and private actors who colluded to obstruct justice, deprive me and my children of constitutional rights, and preserve a closed and retaliatory system of misconduct in Ohio County, Kentucky.

## 2. Factual Basis for Injunctive Relief

4. I have submitted detailed affidavits and documents establishing that the named Defendants engaged in predicate acts including:
   o Fraudulent restraining order filings,
   o Perjury under oath in family court,
   o Subornation of perjury,
   o Retaliatory removal of children based on fabricated reports,
   o Refusal by state actors to accept or admit exculpatory evidence,
   o Coercive financial judgments favoring conflicted parties,

46 WR

- Judicial tolerance of known conflicts of interest,
- And financial misconduct that directly benefited individuals under lawsuit.

5. In particular, on July 23, 2025, Judge Benjamin McCown issued an order compelling me to pay $1,000 in advance to Guardian ad Litem Laura Eaton, despite her being a named defendant in an ongoing civil malpractice lawsuit filed by myself and my children. This constitutes a prejudgment financial reward issued to an individual under legal and ethical conflict.

6. Several of the Defendants named in this action, including but not limited to Karissa Meyers, Chaye Ann Meyers, and Richard Stewart, have access to personal property, business accounts, or familial property that may be shielded or transferred in an effort to prevent civil recovery.

7. Upon information and belief, at least one Defendant has inquired into refinancing or liquidating real estate assets since being served with this lawsuit.

8. There is a clear risk that property transfers will be made in bad faith to third parties, family members, or shell entities for the purpose of avoiding potential civil judgment.

## 3. Necessity of Judicial Protection

9. If such transfers are permitted, it will severely undermine the court's ability to enforce any final judgment, particularly as this action includes a prayer for over $250,000,000 in combined compensatory and treble damages.

10. I respectfully request that the Court freeze all real property, financial accounts, and significant assets owned by the Defendants or held for their benefit, and that no such assets be transferred, sold, or encumbered without written court approval.

11. I further request that the Court order all Defendants to submit within 14 days a sworn accounting of their financial holdings and real estate interests.

12. This request is not made to harass, embarrass, or punish, but to preserve the integrity of this proceeding and ensure that justice, if awarded, can be enforced.

13. I submit this affidavit in good faith and in furtherance of my constitutional rights as a pro se litigant pursuing civil remedy under the laws of the United States.

**FURTHER AFFIANT SAYETH NAUGHT.**

Respectfully submitted this __1__ day of __August__, 2025.

**William Clay Raymond**
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

**WILLIAM CLAY RAYMOND**, Plaintiff

VS.

**KARISSA MEYERS, et al.,** Defendants

Case No.: [To be assigned]

**FILED**

JAMES J. VILT, JR. - CLERK

AUG - 1 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

4:25-CV-83-GNS

# MOTION TO WAIVE SERVICE FEES AND SUMMONS COSTS DUE TO FINANCIAL HARDSHIP

(Partial Request for In Forma Pauperis Consideration)

**Comes now Plaintiff, William Clay Raymond, pro se**, and respectfully moves this Honorable Court for an order partially waiving the costs associated with service of process and issuance of summonses in the above-captioned matter. Plaintiff affirms he is paying the full filing fee required to initiate this federal action but is unable to bear the additional financial burden of serving each named Defendant due to current economic hardship.

## I. LIMITED RELIEF REQUESTED

Plaintiff does not seek full in forma pauperis status. Instead, he respectfully asks the Court to:

1. **Waive the costs of issuing summons and service of process** by the U.S. Marshals Service or alternate authorized means;
2. Permit the Clerk of Court to issue summons at no cost;
3. Permit Plaintiff to submit a complete service list and marshal forms if granted.

## II. BASIS FOR REQUEST

1. Plaintiff has undertaken substantial legal and procedural responsibilities in prosecuting this civil RICO action pro se.
2. The number of named Defendants is significant, and the cost of private service for each party presents a serious financial barrier to proceeding with the case.
3. Plaintiff is facing documented financial constraints and is concurrently filing motions related to emergency custody, civil protection, and asset preservation.
4. Notably, this motion is filed in conjunction with a formal **Motion for Preliminary Injunction to Freeze and Preserve Defendants' Assets**, which, if granted, will implicate real property and financial accounts held by many of the same Defendants.
5. Until such injunction is granted and enforced, Plaintiff lacks the liquid funds to secure service on all parties through private process servers.

48 wr

## III. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

- Waive the cost of summons issuance and service;
- Allow U.S. Marshals or other court-authorized methods to serve all named Defendants at no cost to Plaintiff;
- Permit service to proceed promptly to preserve jurisdiction and ensure that all parties receive formal notice consistent with Fed. R. Civ. P. 4.

This motion is made in good faith, without delay or intent to burden the Court, and solely for the purpose of equitable access to justice.

Respectfully submitted,
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: [To be filled upon filing]

## CERTIFICATE OF SERVICE
I hereby certify that on this date, I submitted the foregoing Motion to Waive Service Fees to the Clerk of Court for filing and service via U.S. Mail or electronic transmission to all parties as required.

Dated: [Same as above]
August 1, 2025

S/ **William Clay Raymond**

# ATTACHMENT A – PROPOSED SERVICE LIST FOR MARSHAL DELIVERY

*In Support of Motion to Waive Service Fees and Summons Costs*

**Plaintiff:** William Clay Raymond
**Case:** *Raymond v. Meyers et al.*
**Jurisdiction:** U.S. District Court – Western District of Kentucky, Owensboro Division

| No. | Defendant Name | Address for Service | Title / Position | Capacity Sued |
|-----|----------------|---------------------|------------------|---------------|
| 1 | Karissa Meyers | 220 Tera Lane, Centertown, KY 42328 | Private Individual | Individual and Parental |
| 2 | Chaye Ann Meyers | 220 Tera Lane, Centertown, KY 42328 | Private Individual | Individual and Parental |
| 3 | Richard Stewart | Hartford, KY (address TBD) | Private Individual | Individual Only |
| 4 | Laura Eaton | 307 Apple Alley, Hartford, KY 42347 | Guardian ad Litem (Former) | Individual and Official |
| 5 | Eaton Law Office, PLLC | 116 East Washington St, Hartford, KY 42347 | Law Firm | Entity Capacity Only |
| 6 | Frances "Belle" Tolle | 947 West 7th St, Beaver Dam, KY 42320 | DCBS Caseworker | Individual and Official |
| 7 | Chad Wilson | 947 West 7th St, Beaver Dam, KY 42320 | DCBS Supervisor | Individual and Official |
| 8 | Kaylee Hunter | 947 West 7th St, Beaver Dam, KY 42320 | DCBS Staff | Individual and Official |
| 9 | Cara Wood | 947 West 7th St, Beaver Dam, KY 42320 | DCBS Staff | Individual and Official |
| 10 | Sheriff Adam Wright | 301 South Main St, Hartford, KY 42347 | Ohio County Sheriff | Individual and Official |
| 11 | Ohio County Sheriff's Department | 301 South Main St, Hartford, KY 42347 | Law Enforcement Agency | Entity Capacity |
| 12 | Cabinet for Health and Family Services | 275 East Main St, Frankfort, KY 40621 | State Government Agency | Official Capacity Only |
| 13 | Judge Michael McKown | 301 South Main St, Hartford, KY 42347 | Retired Judge, Ohio County Circuit | Individual Capacity (Not Official) |
| 14 | Judge Benjamin McKown | 301 South Main St, Hartford, KY 42347 | Sitting Judge, Ohio County Circuit Court | Individual Capacity (Under RICO) |

50
WR

## Defendant Entry – Judge Tim R. Coleman

**Hon. Tim R. Coleman**
Ohio County Circuit Court
111 East Washington Street
Hartford, Kentucky 42347

**Defendant Tim R. Coleman is the presiding Circuit Court Judge in Ohio County, Kentucky. On July 29, 2025, in Case No. 25-CI-00251 (William Clay Raymond v. Karissa Meyers, et al.), Judge Coleman issued a denial of Plaintiff's motion to proceed in forma pauperis for purposes of summons and service fees—despite Plaintiff having already paid the full civil filing fee. The denial was issued without a hearing, without findings of fact, and in the context of a civil rights and RICO-related case involving ten defendants. This act functioned as a procedural obstruction that materially delayed litigation and shielded enterprise members from timely service. Plaintiff alleges that Judge Coleman's action constitutes retaliatory suppression and enterprise enablement under 18 U.S.C. § 1962(c) and (d).**

**Hon. Tim R. Coleman**
Ohio County Circuit Court
111 East Washington Street
Hartford, Kentucky 42347

**Tina Mathes**
23971 Highway 49
Black, Missouri 63625

---

**Hank Mathes**
23971 Highway 49
Black, Missouri 63625

---

**Michael J. Hackworth / Hackworth Law Office**
1401 North Main Street, Suite 200
Piedmont, Missouri 63957

## ADDITIONAL DEFENDANT IDENTIFICATION PAGE

**Amanda Bragg**
Attorney at Law
P.O. Box 9806
Bowling Green, KY 42102-9806

**Natalie Ralph**
Attorney at Law
124 E. Washington St., Apt. 3
Hartford, KY 42347

**Chase Ward**
Ward & Ward Attorneys at Law
408 South Main Street
Hartford, Kentucky

| No. | Defendant Name | Address for Service | Title / Position | Capacity Sued |
|---|---|---|---|---|
| 15 | Dan Jackson | 311 Liberty Street, Hartford, KY 42347 | Private Attorney | Individual Only |
| 16 | Kentucky Coalition Against Domestic Violence, Inc. | 111 Darby Shire Circle, Frankfort, KY 40601 | Nonprofit Corporation | Entity Capacity Only |
| 17 | ZeroV, Inc. | 111 Darby Shire Circle, Frankfort, KY 40601 | Nonprofit Entity (Formerly KCADV) | Entity Capacity Only |
| 18 | Lighthouse Counseling Services, Inc. | 920 Frederica St, Ste 407, Owensboro, KY 42301 | Counseling Center | Entity Capacity Only |
| 19 | John Does 1–100 | To be identified through discovery | Unknown | Unknown |

**Prepared by:**
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

Would you like me to now proceed with generating **pre-filled USM-**

54 wr

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants

Case No.: [To be assigned]    4:25-cv-83-GNS

# [PROPOSED] EX PARTE ORDER ON PLAINTIFF'S COMBINED MOTIONS FOR INJUNCTIVE RELIEF, ASSET PRESERVATION, EVIDENCE PROTECTION, AND PARTIAL FEE WAIVER

This matter having come before the Court on an ex parte basis pursuant to **Federal Rule of Civil Procedure 65(b)** upon multiple motions filed by pro se Plaintiff **William Clay Raymond**, and the Court having reviewed the sworn affidavits, record, and supporting materials submitted, the Court hereby finds as follows: For the purposes of the record, the Court notes that Plaintiff William Clay Raymond and Defendant Karissa Meyers are the legally married biological parents of minor children W.R.R. and M.G.R., as set forth in the Verified Complaint. filed by pro se Plaintiff **William Clay Raymond**, and the Court having reviewed the record and the supporting affidavits and materials submitted, the Court hereby finds as follows:

Plaintiff has filed:

1. A **Motion for Preliminary Injunction to Preserve and Freeze Assets of All Named Defendants**, seeking expedited consideration to enjoin transfer or concealment of real property, financial accounts, and other valuable assets;
2. A **Motion for Preliminary Injunction to Protect the Minor Children from All Named Defendants Except Karissa Meyers**, seeking expedited consideration to prohibit contact or interference by any co-defendant while leaving parental issues to the jurisdiction of family court;
3. A **Motion for Evidence Preservation and Anti-Spoliation**, seeking an order prohibiting destruction, deletion, concealment, or alteration of physical, digital, or testimonial evidence by any Defendant or affiliated entity;
4. A **Motion to Waive Service and Summons Fees**, requesting that the Court allow U.S. Marshal service of summons and complaint without charge due to Plaintiff's financial hardship.

Upon review of the legal standards under **Federal Rule of Civil Procedure 65, 28 U.S.C. § 1915**, and the Court's inherent equitable powers, and having determined that Plaintiff has

presented sufficient grounds to preserve the integrity of the proceedings and protect the interests of justice, the Court hereby ORDERS as follows:

## I. ASSET FREEZE AND PRESERVATION

**IT IS ORDERED** that all named Defendants are hereby ENJOINED from:

- Selling, transferring, concealing, liquidating, or otherwise dissipating any real estate, trust property, business interest, or financial account valued above $1,000;
- Moving assets outside the jurisdiction of this Court;
- Transferring property into third-party names, shell entities, or undisclosed custodians.

**IT IS FURTHER ORDERED** that each Defendant shall, within 14 days, submit to the Court and Plaintiff a **sworn accounting of real estate, business, and financial holdings**.

## II. CHILD SAFETY AND PROTECTIVE ORDER

**IT IS ORDERED** that all named Defendants, with the exception of Karissa Meyers, are hereby ENJOINED from contacting, approaching, surveilling, speaking to, or interfering with minor children W.R.R. and M.G.R., pending resolution of this civil action.

**This Order shall not apply to Karissa Meyers**, who is the subject of independent family court proceedings and custody orders, which shall remain under the jurisdiction of that court unless further review is ordered.

## III. ANTI-SPOLIATION OF EVIDENCE

**IT IS ORDERED** that no Defendant, agent, entity, or third party with notice of this case shall:

- Delete or alter any text messages, call logs, emails, documents, data, or digital correspondence;
- Destroy or conceal any notes, logs, child welfare records, law enforcement reports, GAL files, or court filings;
- Instruct, coerce, or pressure any witness to withhold truthful testimony, destroy documents, or falsify records.

This Court's preservation mandate applies immediately and shall remain in force through final judgment.

54 us

## IV. PARTIAL FEE WAIVER AND MARSHAL SERVICE

**IT IS ORDERED** that Plaintiff's request for a partial in forma pauperis waiver is GRANTED in part. The **Clerk of Court shall issue summons at no cost to Plaintiff**, and the **United States Marshals Service is directed to serve summons and complaint on all named Defendants** using the addresses provided in Plaintiff's filed "Attachment A – Proposed Service List."

Plaintiff shall coordinate delivery of completed Form USM-285s and provide any supplemental addresses or clarification as needed.

**SO ORDERED.**

Dated this __1__ day of __August__, 2025.

**United States District Judge**
Western District of Kentucky – Owensboro Division

57 wk

**EXHIBIT Z SUMMARY – DEFENDANT SELF-INCRIMINATING MESSAGE (KARISSA MEYERS)**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**
**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants
**Case No.: [To be assigned]**   4:25-cv-83-GNS

# SUMMARY OF DEFENDANT KARISSA MEYERS' SELF-INCRIMINATING STATEMENT

**Exhibit Z-2)**   in the Plaintiff's filing consists of a sworn affidavit referencing a written message sent by Defendant Karissa Meyers on **July 28, 2025** via the court-sanctioned parenting app **AppClose**. This message was the first direct contact she initiated in over one year and occurred five days after Plaintiff filed **Case No. 25-CI-251** in Ohio County Circuit Court and one day prior to Plaintiff's planned federal RICO filing.

In her message, Defendant Meyers:

1. **Admits that she moved the children approximately 60 days prior** to the message and had failed to notify the Plaintiff as required by standing court orders;
2. Suggests that Plaintiff "already knows" the children's doctors and schools, while simultaneously acknowledging that she never provided updated information;
3. Dismisses Plaintiff's lawful request for disclosure by instructing him to "look back at old messages" on disabled platforms;
4. Uses sarcastic tone and evasion rather than providing lawful, detailed parental information.

This message supports the following allegations:

- **Obstruction of justice and custodial interference** under 18 U.S.C. § 1503 and applicable state law;
- **Ongoing enterprise concealment** and interference consistent with predicate acts under 18 U.S.C. § 1962(c) (RICO);
- **Bad faith and reactive communication** following official court filings, demonstrating knowledge of wrongdoing and delayed compliance aimed at avoiding liability.

**Plaintiff's Position:** The message does not reflect transparency or cooperation—it reflects a reaction to legal exposure and demonstrates a clear pattern of obstruction and control. This conduct is relevant to both state-level contempt proceedings and the federal enterprise conspiracy set forth in the Verified Complaint.

58
WR

Filed in support of Exhibit Z, RICO Complaint – August 4, 2025

**Submitted by:**
**William Clay Raymond**
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

**EXHIBIT Y – CARISSA CONTACT VIOLATION**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants

**Case No.: [To be assigned]**  4:25-cv-83-GNS

# AFFIDAVIT OF WILLIAM CLAY RAYMOND RE: KARISSA MEYERS' UNDISCLOSED RELOCATION AND DELAYED COMMUNICATION

I, **William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am the Plaintiff in the above-captioned action and the legal, biological father of minor children W.R.R. and M.G.R.
2. On the evening of July 28, 2025, Defendant **Karissa Meyers** contacted me via the court-sanctioned parenting communication app **AppClose** for the first time in approximately one year.
3. In her message, Karissa disclosed for the first time that she had moved to a new residence approximately **two months prior**, where she is residing with Defendant Richard Stewart.
4. Under the current court orders and Kentucky custody statutes, Karissa was **legally required to notify me immediately** of any relocation affecting the children's residence, as well as all changes involving medical care, school enrollment, and extracurricular activity.
5. Karissa failed to provide this notification until August 2, 2025, violating both the spirit and letter of her co-parenting obligations and triggering concerns of deliberate concealment.
6. Her message stated, "I don't know if you got my address from court or not, but here it is," implying that she believes the court had already updated her record.
7. However, when I filed my civil complaint in **Ohio County Circuit Court** on **July 23, 2025**, in Case No. 25-CI-251, I verified through the court that her official mailing address was still listed as **220 Tera Lane, Centertown, KY**—indicating she had **not updated her address through the court** at that time.
8. In addition, I have not received any updates from Karissa regarding:
   - o  Medical appointments or providers for W.R.R. and M.G.R.
   - o  School enrollment, attendance, or report cards
   - o  Extracurricular activities or participation in organized events

        o   Emergency medical concerns or changes to education plans

9. On 7/28/2025, I formally messaged Karissa via AppClose, requesting a complete record of all the above for the past 12 months. As of the time of this affidavit, I have not received a response.

10. The timing of her message—**less than 72 hours before the filing of this federal RICO complaint**—suggests that she may have learned of the pending action and attempted to retroactively satisfy a legal obligation that she had ignored for more than two months.

11. This pattern of concealment, delay, and reactive compliance is consistent with broader allegations made in this lawsuit regarding obstruction, family court abuse, and suppression of parental rights.

**FURTHER AFFIANT SAYETH NAUGHT.**

Respectfully submitted this 28th day of July, 2025.

**William Clay Raymond**
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

**~~NOTARY~~ VERIFICATION**
Subscribed and sworn before me this ⎯1⎯ day of August, 2025.

~~Notary Public~~
My commission expires: _____72



**EXHIBIT Z – RESPONSE TO KARISSA MEYERS: ADDRESS VIOLATION, BLOCKED ACCESS, AND CHILD INFORMATION REQUEST**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**WILLIAM CLAY RAYMOND**, Plaintiff
VS.
**KARISSA MEYERS, et al.,** Defendants

**Case No.: [To be assigned]**    4:25-cv-83-GNS

# AFFIDAVIT OF WILLIAM CLAY RAYMOND RE: RESPONSE TO KARISSA MEYERS ON APP CLOSE

I, **William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am the Plaintiff in the above-captioned action and the legal, biological father of minor children W.R.R. and M.G.R.
2. On July 28, 2025, Defendant **Karissa Meyers** responded to my prior message via the AppClose court-ordered parenting communication app.
3. Her message included dismissive language and stated that she had already provided all necessary information to me in the past, and that I should refer to "old messages" on prior platforms.
4. In response, I sent the following court-compliant, documented message back to Karissa via AppClose:

"Karissa,

Under our custody orders, you're required to inform me of any address changes, school and doctor details, and extracurricular activities. You moved over 60 days ago and failed to notify me, which violates those obligations.

On July 23, 2025, I verified with the Ohio County Circuit Clerk that your address was still listed as 220 Tera Lane—meaning no formal update was filed.

You also stated I "should already know" this information, but you've restricted my access to call the children's school, doctors, and therapists. With those blocks in place, I cannot obtain this information independently—even when I try.

Please provide:

62

- Current schools and doctor names/contact info
- Therapy and extracurricular schedules
- Any major incidents or medical events from the past 12 months

This request is being made in good faith. It's being preserved for the court as part of the ongoing record. I also ask that all communication stay respectful and businesslike going forward."

5. As of the time of this affidavit, I have not received a complete or compliant reply from Karissa.
6. Her message continues a pattern of deflection, noncompliance, and disregard for court-ordered parental disclosure requirements.
7. My ability to obtain the required information independently has been blocked due to Karissa's communication restrictions with the children's schools and providers.
8. This affidavit is submitted in support of my federal RICO complaint and ongoing state contempt motion as further documentation of obstruction, custodial interference, and enterprise conduct.
9. I believe Karissa Meyers' conduct in this instance constitutes a deliberate pattern of concealment, custodial obstruction, and retaliation—acts that meet the criteria of predicate offenses under 18 U.S.C. § 1503 (Obstruction of Justice), 18 U.S.C. § 1512(c)(2) (Tampering with a Witness or Victim), and further support my allegations under 18 U.S.C. § 1962(c) (Racketeering). Her intentional withholding of address, educational, and medical access for over 60 days—combined with a dismissive and manipulative response—is part of an ongoing enterprise pattern to restrict lawful parental rights, defraud state court processes, and frustrate lawful relief through deception and control. in support of my federal RICO complaint and ongoing state contempt motion as further documentation of obstruction, custodial interference, and enterprise conduct.

**FURTHER AFFIANT SAYETH NAUGHT.**

Respectfully submitted this ~~28th~~ 1ST day of ~~July~~ AUGUST, 2025.


**William Clay Raymond**
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377


**NOTARY VERIFICATION**
Subscribed and sworn before me this ____ day of _____, 2025.

**SUPPLEMENTAL ATTACHMENT TO MASTER RICO COMPLAINT Predicate Act Alignment – Supplemental Brief**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**William Clay Raymond**
*Plaintiff*
v.
**Karissa Meyers, et al.**
*Defendants*

## I. INTRODUCTION

This Supplemental Brief outlines and aligns the conduct of each named defendant in the Verified RICO Complaint with specific predicate acts under 18 U.S.C. § 1962(c) and (d). Each defendant's actions contributed to the operation of an unlawful enterprise, fulfilling the continuity, structure, and pattern requirements described in *Boyle v. United States*, 556 U.S. 938 (2009) and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).

## II. DEFENDANT ALIGNMENT WITH RICO PREDICATES

### 1. Karissa Meyers

- False CPS reports and restraining orders
- Fabricated firearm allegation
- Perjury in multiple proceedings

**Predicates:** 18 U.S.C. §§ 1341, 1512, 1621

### 2. Chaye Ann ("Shay") Meyers

- Grooming behavior: showering naked with and urinating on children
- Perjury in restraining order proceedings

**Predicates:** 18 U.S.C. §§ 1512, 1621, 242

### 3. Laura Eaton (GAL)

- Suppression of exculpatory evidence
- Coordination with DCBS and other state actors

64
cuR

**Predicates:** 18 U.S.C. §§ 1341, 1512(c)(2), 1962(d)

**4. Judge Michael McKown Sr.**

- Arbitrary hearing time limits
- Suppression of defense evidence

**Predicates:** 18 U.S.C. §§ 1503, 242, 1962(d)

**5. Judge Benjamin McKown Jr.**

- Continuation of unconstitutional rulings
- Refusal to disqualify conflicted GAL

**Predicates:** 18 U.S.C. §§ 1503, 242, 1962(d)

**6. Frances "Bell" Toll (DCBS)**

- Removal petition without notice
- Ignoring evidence and coordinating with GALs

**Predicates:** 18 U.S.C. §§ 1519, 1341, 1962(d)

**7. Kailee Hunter (DCBS)**

- Collusion in fabricated narratives

**Predicates:** 18 U.S.C. §§ 1341, 1503, 1962(d)

**8. Cara Wood (DCBS)**

- Complicity in suppression of evidence

**Predicates:** 18 U.S.C. §§ 1505, 1962(d)

**9. Amanda Bragg (Karissa's Attorney)**

- Shielding co-defendants
- False claim coordination

**Predicates:** 18 U.S.C. §§ 1512(b), 1962(d)

**10. Natalie (Amanda) Ralph**

- Prosecutorial misconduct
- Continued prosecution despite jurisdictional and factual flaws

65
WR

**Predicates:** 18 U.S.C. §§ 1503, 1512, 1962(d)

### 11. Chase Ward (Public Defender)

- Failure to raise key due process defenses
- Coercion into signing stipulations

**Predicates:** 18 U.S.C. §§ 1503, 1962(d)

### 12. Dan Jackson (Former Counsel)

- Willful failure to act on received affidavits
- Permitting obstruction through inaction

**Predicates:** 18 U.S.C. §§ 1503, 1962(d)

### 13. Sheriff Adam Wright

- Refusal to investigate grooming and endangerment

**Predicates:** 18 U.S.C. §§ 1505, 1510, 1962(d)

### 14. Richard Stewart

- Participation in false reports and obstruction

**Predicates:** 18 U.S.C. §§ 1341, 1512(b), 1962(d)

### 15. Lighthouse Counseling

- Fraudulent court evaluations
- Coordinated misinformation to favor state narrative

**Predicates:** 18 U.S.C. §§ 1341, 1512(c)(2), 1962(d)

### 16. Kentucky Coalition for Domestic Violence / ~~Threat~~ ZERoV

- Policy support shielding GAL/DCBS misconduct
- Use of state legitimacy to insulate predicate acts

**Predicates:** 18 U.S.C. §§ 1962(d), 1346, 1512

## III. CONCLUSION

66
ur

Each of the above defendants played a role in a coordinated enterprise to suppress evidence, remove Plaintiff's children without due process, and cover up misconduct. These actions represent a clear pattern under 18 U.S.C. § 1961(1) and § 1962(d). This alignment supports the primary RICO claims and demonstrates that this is not an isolated event, but a systemic operation.

**Respectfully submitted,**
**/s/ William Clay Raymond**
Pro Se Plaintiff
Date: [To be inserted upon filing]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**William Clay Raymond**
*Plaintiff*
v.
**Karissa Meyers, et al.**
*Defendants*

---

## SUPPLEMENTAL OBSERVATION FOR THE RECORD

**Statement by Judge Benjamin McKown Jr. – July 23, 2025**
**Filed in Support of Pattern Allegations and Enterprise Structure – Judicial Conduct and Collusion**

---

## I. Verbatim Statement

On or about **July 23, 2025**, during an in-court hearing regarding the motion to disqualify Guardian ad Litem **Laura Eaton, Judge Benjamin McKown Jr.** stated on the record:

*"If I dismiss or disqualify Laura Eaton as Guardian ad Litem because you filed a lawsuit against her, that makes a very dangerous precedent."*

This statement was made in direct response to Plaintiff's legal argument that the GAL had demonstrated clear bias, suppressed evidence, and had become legally compromised due to her inclusion in a forthcoming federal civil RICO filing.

---

## II. Legal and Strategic Significance

This statement reveals not a neutral adjudicator weighing the interests of children, but a **jurist actively prioritizing the protection of the institutional system over accountability.** Specifically, it confirms:

1. **Awareness of Civil Exposure**
   - Judge McKown was fully aware that Laura Eaton was facing civil suit and failed to recuse or disqualify her, despite the conflict.
2. **Fear of Precedent over Truth**
   - Rather than assess Eaton's conduct or the merits of Plaintiff's claims, the judge focused on what *precedent* would be set — a judicial admission that **the system is self-protecting**.

68

3. **Implicit Retaliation and Obstruction**
   - By refusing to disqualify a compromised GAL solely because the Plaintiff exercised his legal right to file suit, Judge McKown Jr. **punished protected speech and legal action**, in violation of due process and First Amendment principles.
4. **Evidence of Enterprise Logic**
   - The statement fits within the broader RICO pattern alleged: that state actors knowingly cooperated in sustaining a legal narrative, protecting each other from scrutiny, and silencing challenges through procedural suppression.

## III. Plaintiff's Observational Response

Rather than react emotionally, Plaintiff recorded this statement as part of the broader architecture of misconduct. As Plaintiff has stated:

*"So I will notice that thought."*

This response reflects a clear psychological boundary and legal awareness: the Plaintiff recognized the systemic signal — that the court was choosing precedent over justice — and preserved it for use in formal litigation.

## IV. Relief Requested

Plaintiff respectfully asks this Court to consider this statement and its implications as part of the **judicial coordination and enterprise behavior** alleged under 18 U.S.C. § 1962(d). It supports the claims that:

- Multiple officials, including judges, acted to suppress dissent and retaliate against constitutionally protected action.
- These decisions were made not based on merit, but to protect the internal machinery of dependency court.

**Respectfully submitted,**
**/s/ William Clay Raymond**
Pro Se Plaintiff
Date: [Insert Filing Date]
Location: Hillview, Kentucky

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

**William Clay Raymond**
*Plaintiff*
v.
**Karissa Meyers, et al.**
*Defendants*

**STATEMENT OF PUBLIC ACCOUNTABILITY**
*(Filed as a declaration of purpose and record transparency)*

---

I, **William Clay Raymond**, submit this statement not as a legal argument or motion, but as a matter of public conscience, clarity, and accountability. The claims I bring in this action are not political, retaliatory, or exaggerated — they are the documented result of two years of unlawful state action, judicial indifference, perjury, coordinated obstruction, and the silent suffering of my children.

This lawsuit is not about revenge. It is about exposure. It is about the undeniable truth that family court, social services, and judicial systems — in this case — worked not to protect the vulnerable, but to shield one another. I have prepared every line of this complaint myself, not because I wanted to, but because no attorney, advocate, or public servant stepped forward to do what was right when I begged for help.

I bring this complaint not only for myself, but on behalf of every father, mother, and child whose rights were violated, whose voices were ignored, and whose truth was buried beneath paperwork, procedure, and power. If no one ever reads this but a single judge, that is enough — because it is now on record. If it reaches the public, then the truth will echo louder than the silence that tried to contain it.

I do not come to this Court seeking vengeance. I come seeking accountability, and I will not be deterred, silenced, or worn down. This is the record I leave for my children. This is the stand I take in their name.

**Respectfully,**
**William Clay Raymond**
Pro Se Plaintiff
Date: [Insert Filing Date]
August 1, 2025

70
WR

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

**William Clay Raymond**
*Plaintiff*
v.
**Karissa Meyers, et al.**
*Defendants*

**DECLARATION IN SUPPORT OF ECONOMIC VALUE OF LITIGATION LABOR**
(Pursuant to 28 U.S.C. § 1746)

I, **William Clay Raymond**, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge:

1. I am the Plaintiff in the above-captioned matter, proceeding pro se. I have personal knowledge of all facts stated in this declaration.
2. Due to the unlawful actions of the Defendants — including but not limited to the filing of false reports, perjured testimony, obstruction of due process, conspiracy under 18 U.S.C. § 1962(d), and repeated state-based retaliation — I was forced to investigate, research, draft, structure, and prosecute this civil RICO and constitutional action entirely on my own.
3. The scope of work I was forced to undertake includes:
   o Drafting a complex federal complaint with over 25 legal counts;
   o Researching predicate acts under the RICO statute (18 U.S.C. §§ 1961–1964);
   o Assembling factual timelines, evidence summaries, legal exhibits, and constitutional arguments;
   o Preemptively preparing for motions to dismiss under Rule 12(b)(6), judicial immunity, and abstention doctrines;
   o Drafting preservation notices, discovery readiness materials, tolling arguments, and supplemental pleadings;
   o Preparing press disclosures and institutional reform statements related to this case.
4. I conservatively estimate that I have spent over **495 hours** performing this legal work and strategic litigation labor.
5. The economic value of this labor, if billed at standard federal civil rights litigation rates for attorneys and staff, would reasonably exceed **two hundred fifty thousand dollars ($250,000.00)**.
6. I am not requesting attorney's fees under statute, but I am demanding **compensatory damages** for this labor and productivity loss as a direct consequence of Defendants' actions, pursuant to applicable precedent including *Carey v. Piphus*, 435 U.S. 247 (1978) and *18 U.S.C. § 1964(c)*.
7. I submit this declaration to affirm that this valuation is accurate, made in good faith, and based on real time and effort lost due to having to fight systemic injustice, pro se, for the protection of myself and my children.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1 day of August , 2025.
Location: Bullitt , Kentucky

**William Clay Raymond**
Pro Se Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**William Clay Raymond**
*Plaintiff*
v.
**Karissa Meyers, et al.**
*Defendants*

**SUPPLEMENTAL EXHIBIT**
**[Undesignated – Economic Labor Valuation]**

## PLAINTIFF'S DOCUMENTED ECONOMIC VALUE OF LITIGATION LABOR AND LEGAL WORK

Plaintiff, acting pro se, respectfully submits this supplemental exhibit in support of the damages outlined in the Verified Complaint. The time, labor, and strategic output described herein reflect the uncompensated work performed to construct and prosecute this action due to the unlawful conduct of the Defendants, who acted individually and as part of a racketeering enterprise. This valuation represents the fair market replacement cost of equivalent legal and investigative work and is recoverable as compensatory damages.

## SUMMARY OF LEGAL LABOR PERFORMED BY PLAINTIFF

| Task Category | Estimated Hours | Rate (Market-Based) | Subtotal Value |
| --- | --- | --- | --- |
| Factual timeline construction & affidavit analysis | 80 hrs | $450/hr | $36,000 |
| Predicate act research, RICO statute mapping | 45 hrs | $500/hr | $22,500 |
| Enterprise structure design & participant charting | 40 hrs | $500/hr | $20,000 |
| Federal complaint drafting (25+ causes of action) | 100 hrs | $600/hr | $60,000 |
| Standing, immunity, and constitutional defenses | 40 hrs | $500/hr | $20,000 |
| Rule 56(d), Rule 11, tolling, preservation | 30 hrs | $500/hr | $15,000 |
| Press/legal disclosure packets, reform clauses | 30 hrs | $400/hr | $12,000 |
| Internal memo construction, strategic | 35 hrs | $400/hr | $14,000 |

73

| Task Category | Estimated Hours | Rate (Market-Based) | Subtotal Value |
|---|---|---|---|
| theory | | | |
| Exhibit preparation, document formatting | 30 hrs | $350/hr | $10,500 |
| Ongoing legal oversight, review, and finalization | 40 hrs | $500/hr | $20,000 |

## TOTAL ESTIMATED ECONOMIC VALUE: $250,000.00

This valuation reflects a **reasonable market-based value** for legal work product that would otherwise have been performed by:

- Lead civil rights counsel (RICO/litigation)
- Associate attorneys
- Paralegal and analyst staff
- Public records reviewers and motion drafters

Plaintiff undertook this work while unrepresented, under extreme personal and procedural pressure, and with full responsibility for the outcome of the case.

## LEGAL BASIS FOR DAMAGES CLAIMED

Under *Carey v. Piphus*, 435 U.S. 247 (1978), the Supreme Court affirmed the availability of compensatory damages for constitutional injuries that result in demonstrable harm, including the loss of time, labor, and effort required to respond to unlawful state conduct. Similarly, under **18 U.S.C. § 1964(c)** (Civil RICO), "any person injured in his business or property" due to a pattern of racketeering activity is entitled to full recovery.

The Supreme Court in *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986), further clarified that damages for the **loss of intangible but economically measurable interests** — such as forced litigation labor — may be appropriate where directly tied to the violation of federal rights.

## PRESERVATION OF RECORD

This valuation is submitted not as a fee petition but as a demand for **compensatory damages for personal productivity and economic labor** lost as a direct consequence of:

- Custodial obstruction,
- Fabricated evidence,

74

- Procedural sabotage,
- Judicial and administrative conspiracy,
- And forced strategic response to a racketeering enterprise.

This is **recoverable under RICO and constitutional law**.

---

**Respectfully submitted,**
**William Clay Raymond**
Pro Se Plaintiff

Date: [Insert Filing Date] August 1 2025
Location: Western District of Kentucky

**SUPPLEMENT B: RULE 12(b)(6) SURVIVAL ARGUMENT OUTLINE**
**Filed in Anticipation of Defense Motion to Dismiss**
**William Clay Raymond v. Karissa Meyers et al.**
**United States District Court – Western District of Kentucky**

# INTRODUCTION

Plaintiff respectfully submits this supplemental outline to demonstrate that the Verified Complaint in this action satisfies the requirements of **Federal Rule of Civil Procedure 8(a)** and survives any attempt to dismiss under **Rule 12(b)(6)**. The pleading is fact-specific, legally grounded, and constructed in accordance with the controlling Supreme Court decisions in:

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)
- *Boyle v. United States*, 556 U.S. 938 (2009)
- *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229 (1989)

# I. COMPLAINT SATISFIES TWOMBLY/PLAUSIBILITY STANDARD

**Rule:**

Under *Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."

**Application:**

Plaintiff's complaint includes:

- Over 250 specific paragraphs of factual allegations, supported by dates, events, participants, and documentary references;
- Verified affidavits and court record citations;
- Individualized conduct attributed to each Defendant;
- A clear narrative demonstrating harm, causation, and redressability.

☑**Facial plausibility met and exceeded.**

76
wR

## II. COMPLAINT SATISFIES IQBAL/NON-CONCLUSORY REQUIREMENT

**Rule:**

Legal conclusions must be supported by specific factual allegations. Courts "must accept as true all factual allegations in the complaint."

**Application:**

Plaintiff does not offer speculative conclusions — the complaint contains:

- Testimony admissions (e.g., recanted firearm allegation);
- Procedural defects (e.g., unserved removal petition);
- Chronological evidence of retaliation, obstruction, and suppression;
- Identified actions by GAL, DCBS, prosecutors, judges, and private actors.

☑Complaint is based on **concrete, not conclusory** allegations.

## III. RICO CLAIMS UNDER 18 U.S.C. § 1962(d) ARE SUFFICIENTLY PLED

**Rule:**

A RICO claim must show:

1. Conduct
2. Of an enterprise
3. Through a pattern
4. Of racketeering activity
5. Causing injury to business or property

(*Sedima*, 473 U.S. at 496)

**Application:**

- **Conduct**: All Defendants are alleged to have taken active steps (or omissions with knowledge) that furthered the enterprise.
- **Enterprise**: A clearly defined, association-in-fact enterprise with roles, relationships, and objectives (see Predicate Act Chart + Enterprise Diagram).
- **Pattern**: Allegations span from 2022 to present, include obstruction, perjury, fraud, and tampering.

77

- **Racketeering Acts**: At least **two predicate acts** per defendant, detailed under 18 U.S.C. § 1961(1).
- **Injury**: Legal fees, loss of custody, reputational harm, suppressed evidence, and unlawful criminal exposure.

☑All five RICO elements are alleged in detail, with supporting facts.

# IV. DEFENSES LIKE IMMUNITY AND ABSTENTION CANNOT BE RESOLVED ON A 12(b)(6) MOTION

**Rule:**

Affirmative defenses like absolute immunity (for judges) or qualified immunity (for state actors) are inappropriate for Rule 12 dismissal **unless they appear clearly on the face of the complaint.**

*See*: *Gomez v. Toledo*, 446 U.S. 635 (1980)

**Application:**

Plaintiff's complaint clearly alleges conduct **outside the scope of judicial or official immunity**:

- Judges participated in or enabled acts not judicial in nature.
- Social workers and GAL engaged in fraud, falsified records, and obstructed due process.
- Prosecutors acted outside jurisdiction or knowingly concealed perjury.

☑These issues **must proceed to discovery** and cannot be resolved on a motion to dismiss.

# V. CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983 ARE ALSO PLAUSIBLY PLED

- Plaintiff alleges violations of:
  - Due Process Clause (14th Amendment),
  - First Amendment retaliation,
  - Custodial interference without judicial basis,
  - Conspiracy to deprive under color of law.
- Complaint identifies individual conduct, not merely institutional failings.

☑Sufficient to survive under *Iqbal* and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

78

# CONCLUSION

Plaintiff's complaint:

- States a plausible claim under Rule 8(a),
- Is factually detailed, not speculative,
- Alleges each required element for civil RICO and civil rights causes of action,
- Names specific actors, events, and harms,
- Survives all dismissal thresholds under Rule 12(b)(6).

Plaintiff respectfully requests that the Court **deny any motion to dismiss** and permit this case to proceed to discovery, as required under the Federal Rules of Civil Procedure and Supreme Court precedent.

**Respectfully submitted,**
s/ **William Clay Raymond**
Pro Se Plaintiff
Date: [Insert Filing Date]  8/1/2025
Western District of Kentucky

79

**SUPPLEMENTAL STATEMENT**
**RE: ENTERPRISE FUNCTION TEST FOR JUDICIAL DEFENDANTS**
**Filed in Support of Plaintiff's Opposition to Judicial Immunity Defense**
**William Clay Raymond v. Karissa Meyers et al.**
**United States District Court – Western District of Kentucky**

## INTRODUCTION

This supplemental submission is provided to assist the Court in evaluating the applicability of judicial immunity with respect to the named defendants **Judge Michael McKown Sr.** and **Judge Benjamin McKown Jr.**, both of whom are alleged to have participated materially in a racketeering enterprise under 18 U.S.C. § 1962(d). The analysis below demonstrates that the actions taken by both judges fall **outside the protected scope of judicial function**, and accordingly, **do not entitle them to absolute immunity** under federal law.

## I. THE ENTERPRISE FUNCTION TEST: WHEN JUDGES LOSE IMMUNITY

Judicial immunity protects only those acts that are:

1. Taken in a judicial capacity; and
2. Within the judge's jurisdiction.

*Stump v. Sparkman*, 435 U.S. 349 (1978)

However, where a judge:

- Acts in an **administrative or conspiratorial capacity**;
- **Knowingly enables a criminal enterprise**;
- Or engages in **conduct not normally performed by a judge**;

...that judge is **not immune from suit**.

*See also*:
*Mireles v. Waco*, 502 U.S. 9 (1991);
*Forrester v. White*, 484 U.S. 219 (1988);
*Warnock v. Pecos County, Tex.*, 116 F.3d 776 (5th Cir. 1997)

Under the "Enterprise Function Test," a judge loses the protection of immunity when they **operate in support of or in service to an unlawful racketeering structure**, including by suppression of due process, coordinated obstruction, or purposeful denial of rights in furtherance of the enterprise's goals.

## II. JUDGE MICHAEL MCKOWN SR. – ENTERPRISE ENABLEMENT THROUGH STRUCTURAL SUPPRESSION

While Judge McKown Sr. has since retired, his conduct during key early stages of Plaintiff's custody litigation enabled the enterprise to take hold. Specifically, Judge McKown:

- **Abruptly truncated Plaintiff's emergency restraining order hearing to 20 minutes,**
- Denied Plaintiff's request for a **continuance to present exculpatory evidence,**
- Refused to permit **full testimonial or evidentiary submission**, and
- **Rubber-stamped the GAL and DCBS narrative** without judicial scrutiny or cross-examination.

These actions were not routine adjudication; they were **procedural sabotage** in direct service to coordinated actors (DCBS and the GAL) later named in this suit.

📌 **Conclusion**: Judge McKown Sr.'s conduct satisfies the enterprise function test and removes the protection of immunity under *Forrester* and *Warnock*.

## III. JUDGE BENJAMIN MCKOWN JR. – ACTIVE, ONGOING ENTERPRISE FACILITATION

Upon taking the bench, Judge McKown Jr. continued and deepened the constitutional harms initiated by his predecessor. His conduct includes:

- **Sustaining prior unconstitutional outcomes** without rehearing or correction;
- **Refusing to disqualify GAL Laura Eaton** despite repeated motions and documentary evidence of bias and misconduct;
- **Presiding over the case where a false firearm allegation was used to justify state action**, even after the witness **recanted the claim under oath** and admitted the firearm never existed;
- **Upholding a removal petition that was never lawfully served**, and accepting it into the record **despite fatal jurisdictional defects**, violating Plaintiff's due process rights under both state and federal law;
- **Permitting continued proceedings without allowing Plaintiff to present exculpatory video evidence**, which would have contradicted DCBS narratives and undermined the removal justification.

These acts were not neutral adjudications — they were acts of **strategic concealment and passive enterprise maintenance**, creating a sealed environment that protected known fraud.

✦ **Conclusion**: Judge McKown Jr.'s protection of enterprise participants, refusal to revisit fraudulent rulings, and failure to allow corrective evidence into the record places him **outside the scope of judicial immunity**. His conduct is directly actionable under 18 U.S.C. § 1962(d).

## IV. LEGAL BASIS FOR ENTERPRISE LIABILITY UNDER RICO

Under RICO jurisprudence, government actors — including judges — may be liable under § 1962(d) where they:

- Knowingly further the goals of an enterprise,
- Take actions outside the normal bounds of their official duties,
- Act in concert with enterprise participants to obstruct justice or suppress lawful claims.

*See United States v. O'Malley*, 796 F.2d 891 (7th Cir. 1986) (holding public officials liable under RICO where they furthered the goals of a criminal enterprise).

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1. **Reject any blanket assertion of judicial immunity** by either Judge Michael McKown Sr. or Judge Benjamin McKown Jr.;
2. **Permit these claims to proceed to discovery**, where their participation in the enterprise may be fully revealed;
3. And affirm that federal law **does not shield judges who act as active agents of unconstitutional racketeering conduct**.

**Respectfully submitted,**
S/ **William Clay Raymond**
Pro Se Plaintiff

Date: [Insert Filing Date] 8/1/2025
Location: Western District of Kentucky

82
cwR

# Compliance with RICO Case Law: *Boyle, Sedima,* and *H.J. Inc.*

**COMPLIANCE WITH RICO CASE LAW:** *Boyle, Sedima,* **and** *H.J. Inc.*

Plaintiff affirmatively states that this Complaint has been structured in full compliance with the controlling standards set forth in the United States Supreme Court decisions of *Boyle v. United States,* 556 U.S. 938 (2009); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985); and *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989). Each of the required elements for a civil RICO action under 18 U.S.C. §§ 1962(c) and (d) are satisfied as follows:

## I. *Boyle* – Enterprise Standard Met (556 U.S. 938)

In *Boyle,* the Supreme Court clarified that a RICO enterprise need not have a formal hierarchy or structure. An association-in-fact enterprise is established where:

1. The individuals function as a **continuing unit**,
2. Pursue a **common purpose**, and
3. Maintain **relationships among themselves** to achieve coordinated criminal or unlawful acts.

**Application Here**:
The Complaint sets forth a well-defined **association-in-fact enterprise** composed of:

- DCBS caseworkers,
- Guardian ad Litem Laura Eaton,
- Attorneys Amanda Bragg, Chase Ward, and Dan Jackson,
- Law enforcement (Sheriff Adam Wright),
- State-funded service providers (Lighthouse Counseling, ZeroV/KCDV),
- Judicial actors acting beyond the protection of immunity (Michael McKown Sr., Benjamin McKown Jr.),
- And private individuals (Karissa Meyers, Chaye Ann Meyers).

These individuals functioned with a **common purpose**: to defraud the Plaintiff of his parental rights, retaliate for protected conduct, conceal official misconduct, and manipulate state authority to obstruct due process. The roles and coordination among defendants are clearly outlined in the **RICO Predicate Act Summary** and **Enterprise Structure Chart** included herein.

☑*Boyle* standard satisfied.

83
WR

## II. *Sedima* – Civil RICO Standing Satisfied (473 U.S. 479)

In *Sedima*, the Court held that a plaintiff must show:

- A violation of § 1962,
- Injury to business or property,
- Causation between the violation and the injury,
- And at least two predicate acts forming a pattern of racketeering activity.

**Application Here**:
Plaintiff has alleged injury to property and legal rights, including:

- Loss of parenting time and custody access (constituting a legally protected right with measurable harm),
- Reputational damage within his profession and community,
- Legal fees and expenses resulting from malicious and retaliatory litigation,
- Obstruction of business opportunities and reputational standing tied to a regulated industry,
- Emotional and financial exploitation tied to fabricated court orders.

The Complaint includes **well over two predicate acts**, including fraud (18 U.S.C. § 1341), perjury (18 U.S.C. § 1621), obstruction of justice (18 U.S.C. §§ 1503, 1512), witness tampering, suppression of evidence, and conspiracy under § 1962(d).

☑*Sedima* standard satisfied.


## III. *H.J. Inc.* – Pattern of Racketeering Activity Established (492 U.S. 229)

The *H.J. Inc.* decision clarified that a "pattern of racketeering activity" requires:

1. **Relatedness** – the predicate acts are not isolated but connected by similar purposes, methods, or participants, and
2. **Continuity** – the conduct either continued for a substantial period (closed-ended) or poses a threat of continued criminal conduct (open-ended).

**Application Here**:
The predicate acts alleged in this Complaint:

- Occurred over a **two-year period** (October 2022–present),
- Involved overlapping actors using **coordinated tactics**,
- Served a **unified objective**: preserve custody fraud, conceal civil rights violations, and shield participating officials and organizations from legal exposure,

*84*
*WR*

- Remain ongoing and threaten **continued harm** to the Plaintiff and his minor children.

This constitutes both **closed-ended continuity** (past acts) and **open-ended continuity** (ongoing threats, continuing enterprise activity).

☑ *H.J. Inc.* standard satisfied.

## Conclusion

Plaintiff's Complaint fully satisfies the Supreme Court's requirements under *Boyle*, *Sedima*, and *H.J. Inc.* The RICO enterprise is clearly defined, the injury is tangible and traceable, and the pattern of racketeering activity is both extensive and ongoing. The pleading meets and exceeds the Rule 8 and Rule 12 standards for survival at the motion-to-dismiss phase and is properly before this Court under 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c).

85

# STANDING AND JURISDICTION

This section is designed for direct insertion into your federal complaint, ideally placed after your "Jurisdiction and Venue" section or just before your "Factual Allegations" section. It preempts dismissal under **Rule 12(b)(1)** (lack of subject matter jurisdiction) and **Rule 12(b)(6)** (failure to state a claim) by affirming both **constitutional standing** and **statutory standing under RICO**.

## STANDING AND JURISDICTION

1. **Plaintiff William Clay Raymond possesses standing under Article III of the United States Constitution.** He has suffered a direct and particularized injury-in-fact, including—but not limited to—loss of access to his minor children through corrupted family court proceedings, reputational harm, targeted governmental abuse, improper restraining orders, fraudulent prosecutions, obstruction of evidence, retaliatory state interference with protected parental rights, and substantial financial damages stemming from the pattern of racketeering activity described herein.

2. These injuries are traceable to the actions of the named Defendants, who participated directly or indirectly in a coordinated enterprise to defraud, obstruct justice, conceal material evidence, and weaponize state authority for personal and institutional gain.

3. Plaintiff's injuries are redressable by a favorable decision from this Court, through monetary damages, declaratory relief, injunctive orders, and any further relief the Court deems just and proper.

4. Plaintiff also possesses **statutory standing** under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), having suffered injury to **business and property** including:
   - Loss of legal fees expended due to fraudulent and malicious prosecution;
   - Impairment of his professional and personal reputation;
   - Obstruction of lawful access to custodial rights and parenting time;
   - Reputational and economic harm to his personal and professional endeavors;
   - Legal interference with the administration of a federally regulated medical cannabis enterprise.

5. Plaintiff has alleged a **pattern of racketeering activity** by multiple actors, each of whom participated in an **enterprise** affecting interstate commerce through predicate acts including, but not limited to:
   - Mail and wire fraud (18 U.S.C. §§ 1341–1343),
   - Obstruction of justice (18 U.S.C. §§ 1503, 1505),
   - Witness tampering (18 U.S.C. § 1512),
   - Falsification of records (18 U.S.C. § 1519),
   - Perjury (18 U.S.C. § 1621),
   - Conspiracy to commit such acts (18 U.S.C. § 1962(d)).

6. The **enterprise** alleged is ongoing, structured, and functioning with a common purpose: to maintain control over dependency and custody outcomes, conceal judicial and

86
CR

governmental misconduct, and suppress any challenge to the fabricated narratives and unconstitutional removals orchestrated by state and quasi-state actors.

7. Plaintiff's claims fall squarely within the **zone of interests** protected by RICO and civil rights law under 42 U.S.C. § 1983. This action seeks to expose and remedy systemic abuse of public offices, court processes, and law enforcement discretion to harm and silence individuals exercising constitutionally protected rights.

8. Jurisdiction is further proper under 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (civil rights violations), and 1964(c) (civil RICO), as well as under the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) over all related state law claims.

9. This Court is empowered and authorized to provide full relief including monetary, declaratory, injunctive, and equitable remedies necessary to dismantle the enterprise, repair the damage caused to Plaintiff, and prevent future retaliation or systemic abuse.

87

**EXHIBIT Z SUMMARY – DEFENDANT SELF-INCRIMINATING MESSAGE (KARISSA MEYERS)**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**
**WILLIAM CLAY RAYMOND**, Plaintiff
vs.
**KARISSA MEYERS, et al.,** Defendants
**Case No.: [To be assigned]**    4:25-cv-83-GNS

# SUMMARY OF DEFENDANT KARISSA MEYERS' SELF-INCRIMINATING STATEMENT

**Judicial Analysis Memo:**

**Psychological Risk Memo:**

Defendant Karissa Meyers' July 28, 2025 message reflects not only legal noncompliance but a psychological response consistent with reactive control behavior. Her delayed disclosure of material information occurred only after being named in active civil litigation, indicating that her motivation was not co-parenting transparency but legal damage control.

Her tone—sarcastic, dismissive, and deflective—signals a conscious awareness of wrongdoing. Rather than complying with her obligation, she gaslights the Plaintiff, reframes the burden onto him, and attempts to minimize her violation. This messaging behavior aligns with traits of manipulative narrative control and emotional dominance, common in custodial interference patterns.

Of particular note is the strategic timing of the communication: five days after the Plaintiff filed in state court and one day before federal RICO filing. This message was not a proactive update. It was a reactive defense mechanism aimed at fabricating plausible deniability after the threat of exposure became real.

From a judicial perspective, her message is not merely unhelpful—it is incriminating in both tone and timing. It reinforces that the enterprise's concealment efforts remain active and psychological in nature, reflecting both legal coordination and behavioral strategy.

The July 28, 2025 message sent by Defendant Karissa Meyers constitutes a self-incriminating statement that meets the legal definition of a predicate act under federal racketeering law. Specifically, this message and its timing support the presence of both obstruction of justice and custodial interference, as defined under 18 U.S.C. § 1503 and 18 U.S.C. § 1512(c)(2).

88
cur

First, Defendant Meyers admits to concealing her relocation of the children for over 60 days—an act in direct violation of existing state custody orders. She disclosed this only after Plaintiff initiated formal legal proceedings, suggesting her motivation was not compliance but risk containment.

Second, her refusal to provide updated information about the children's education and medical care—paired with her dismissive tone and reliance on outdated, inaccessible communication platforms—demonstrates a knowing attempt to obstruct lawful parental rights and frustrate ongoing litigation.

Third, when viewed in the broader context of this case—where multiple defendants are alleged to have coordinated false filings, evidence suppression, and procedural manipulation—her message further substantiates the continuity of enterprise behavior under 18 U.S.C. § 1962(c).

This message is not a benign parental update. It is an evidentiary artifact of concealment, obstruction, and reactive legal awareness—all occurring within days of official court filings. Accordingly, it materially supports Plaintiff's theory of racketeering activity and enterprise coordination.

**Exhibit Z** in the Plaintiff's filing consists of a sworn affidavit referencing a written message sent by Defendant Karissa Meyers on **July 28, 2025** via the court-sanctioned parenting app **AppClose**. This message was the first direct contact she initiated in over one year and occurred five days after Plaintiff filed **Case No. 25-CI-251** in Ohio County Circuit Court and one day prior to Plaintiff's planned federal RICO filing.

In her message, Defendant Meyers:

1. **Admits that she moved the children approximately 60 days prior** to the message and had failed to notify the Plaintiff as required by standing court orders;
2. Suggests that Plaintiff "already knows" the children's doctors and schools, while simultaneously acknowledging that she never provided updated information;
3. Dismisses Plaintiff's lawful request for disclosure by instructing him to "look back at old messages" on disabled platforms;
4. Uses sarcastic tone and evasion rather than providing lawful, detailed parental information.

This message supports the following allegations:

- **Obstruction of justice and custodial interference** under 18 U.S.C. § 1503 and applicable state law;
- **Ongoing enterprise concealment** and interference consistent with predicate acts under 18 U.S.C. § 1962(c) (RICO);
- **Bad faith and reactive communication** following official court filings, demonstrating knowledge of wrongdoing and delayed compliance aimed at avoiding liability.

89

**Plaintiff's Position:** The message does not reflect transparency or cooperation—it reflects a reaction to legal exposure and demonstrates a clear pattern of obstruction and control. This conduct is relevant to both state-level contempt proceedings and the federal enterprise conspiracy set forth in the Verified Complaint.

---

Filed in support of Exhibit Z, RICO Complaint – August 4, 2025

**Personal Reflection:**

August 1, 2025 marks what would have been my ten-year wedding anniversary with Defendant Karissa Meyers. We were married for a decade, and together for thirteen years. It is with full consciousness of that history that I chose this date to submit my Verified Federal RICO Complaint.

This act was not done out of bitterness or vengeance—but as a matter of strength, endurance, and obligation. It is a stand not just for my children, but for the constitutional principles I believe in and the lineage I descend from. As a direct descendant of **Henry Clay**, a statesman who believed that "government is a trust, and the officers of the government are trustees," I too believe that the people entrusted with authority must be held to the rule of law.

I filed this on our anniversary to mark a transition—from being silenced in family court to being heard in federal court. From being called unstable to being recognized as a father, a litigator, and a man of purpose. I write this not to reflect on what was lost, but to record, for the court and the record, what must never be allowed to happen again to any parent who seeks truth through lawful means.

**Submitted by:**
S/ **William Clay Raymond**   8/1/2025
Pro Se Plaintiff
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND, Plaintiff
vs.
KARISSA MEYERS, et al., Defendants

Case No.: [To be assigned]    4:25-cv-83-GNS

# AFFIDAVIT OF LEGAL SAFETY CONCERN AND LITIGATION RETALIATION PRECAUTION

I, **William Clay Raymond**, being of sound mind and over the age of eighteen (18), and after being duly sworn, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am the Plaintiff in the above-captioned federal RICO action.
2. As of the date of this affidavit, I have named over a dozen public officials, private individuals, nonprofit actors, law enforcement agents, and court-affiliated professionals as Defendants in this matter. These include—but are not limited to—GALs, CPS caseworkers, judges, sheriff's department personnel, and individuals with access to sensitive legal and personal data.
3. The allegations contained in my Verified Complaint implicate enterprise-level misconduct involving obstruction of justice, suppression of evidence, custodial interference, fraudulent court actions, and retaliation against me for pursuing lawful remedies.
4. I have previously prevailed in complex litigation matters and am known in my personal and professional history for legal precision and successful self-representation. I believe my track record in legal action is widely known among those I have sued, and among individuals with whom they associate.
5. As this matter escalates to the federal level with potential criminal exposure for some parties, I have growing concern that one or more Defendants, or individuals acting on their behalf, may attempt to silence, intimidate, or harm me physically in retaliation for the exposure created by this litigation.
6. This concern is not hypothetical. The level of pressure, reputational risk, financial consequence, and institutional exposure now tied to this complaint is significant enough that retaliation—including harm or sabotage—cannot be ruled out.
7. I am documenting this fear not to dramatize the proceedings, but to formally notify the Court that:
    o I fear for my physical safety;
    o I am under no delusion that this filing has gone unnoticed by the institutional and political network it implicates;

- I request that this affidavit be filed as a protective measure should any action be taken against me in the course of this litigation.

8. I have preserved copies of all filings, records, and exhibits in multiple locations and entrusted them to third parties, including documented records of the full list of Defendants and the legal timeline.

9. In the event of any harm, disappearance, or interference with my ability to continue this litigation, I request that this affidavit be taken as formal notice that I was neither suicidal, mentally unstable, nor irrational in the pursuit of justice.

10. Pursuant to the Kentucky Rules of Civil Procedure and applicable Circuit Court customs, I further state that I remain open to lawful and good-faith settlement negotiation in this matter. This affidavit and the filings that accompany it are not intended to preclude reasonable dialogue or stipulated resolution under Rule 5 or Rule 16 of the Kentucky Rules of Civil Procedure, provided that such communications are conducted without coercion, intimidation, or attempts to suppress the evidentiary record. This declaration of readiness to engage in fair settlement dialogue shall not be construed as a waiver of claims, admissions of liability, or limitation on future federal relief.

**FURTHER AFFIANT SAYETH NAUGHT.**

13. I further affirm my belief that the strategic and lawful nature of my filings, the factual depth of my exhibits, and the procedural discipline I have maintained have collectively created a state of acute anxiety and panic in certain defendants—particularly Karissa Meyers. Based on her recent communications, delays in disclosure, and emotional tone, it is evident that she is now experiencing the full psychological and legal weight of the consequences resulting from her misconduct. Her awareness of the timing of my filings, including my intentional decision to file this RICO complaint on what would have been our ten-year wedding anniversary, has created a profound emotional and reputational reckoning for her. It is my belief that the clarity and precision of my case are not only legally sufficient but are already producing the intended effect: forcing institutional actors and individual defendants alike to confront the truth they attempted to bury.

**11.** I specifically note that Defendant Richard Stewart, currently named in the federal complaint, has been identified through direct association with co-defendant Karissa Meyers and has exhibited knowledge of the facts and timeline relevant to the misconduct alleged. Given the interpersonal relationship between Meyers and Stewart, and his involvement in the concealment of the children's location and interference with lawful parenting access, I have reason to believe that Mr. Stewart poses a heightened concern for retaliatory behavior or witness interference. This includes, but is not limited to, coordinated retaliation, intimidation, or efforts to suppress testimony. This concern is based on the pattern of enterprise alignment documented throughout the case.

Respectfully submitted this 1ST day of August, 2025.

**William Clay Raymond**    8/1/2025
179 Tanyard Park, Apt. 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

**NOTARY VERIFICATION**
Subscribed and sworn before me this ____ day of _____, 2025.


Notary Public
My commission expires: _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, CHAYE ANN MEYERS, LAURA EATON, DAN JACKSON, BELL
TOLL, KAYLEE HUNTER, CARA WOOD, SHERIFF ADAM WRIGHT, OHIO
COUNTY SHERIFF'S DEPARTMENT, and EATON LAW OFFICE, PLLC,
Defendants.

Case No. [Insert Once Assigned]  4:25-cv-83-GNS

# MOTION FOR PROTECTIVE MONITORING AND JUDICIAL NOTICE OF RETALIATION RISK

Comes now the Plaintiff, **William Clay Raymond**, appearing pro se, and respectfully moves this Honorable Court to enter an Order taking formal judicial notice of the credible risk of retaliation arising from the filing of this action, and to establish protective monitoring as permitted under the Court's supervisory authority, federal civil rights statutes, and Plaintiff's constitutional right to access the courts without obstruction.

## 1. Basis for the Motion

Plaintiff has filed a verified complaint invoking **18 U.S.C. § 1962 (RICO), 42 U.S.C. § 1983**, and state tort claims against individuals including:

- Judicial officers (by name and conduct)
- DCBS officials
- A Guardian ad Litem
- Licensed attorneys
- Law enforcement entities

The nature of this lawsuit—asserting institutional conspiracy, perjury, failure to protect children, and obstruction of justice—raises significant reputational, civil, and potentially criminal exposure for the named Defendants and their affiliates.

As a result, Plaintiff reasonably fears the possibility of:

94
WR

- Harassment
- Threats (direct or indirect)
- Coordinated retaliation via false filings
- Surveillance
- Custodial interference
- Or, in extreme cases, physical harm

This fear is not hypothetical. The Plaintiff has been subjected to false accusations, legal manipulation, and character defamation in prior proceedings and believes escalation is likely now that the litigation has entered the federal record.

## 2. Legal Authority

Plaintiff's right to seek redress in federal court is protected by:

- **The First Amendment** – right to petition the government
- **42 U.S.C. § 1983** – protects against retaliation for exercising constitutional rights
- **Bounds v. Smith**, 430 U.S. 817 (1977) – ensures prisoners (and by extension, all citizens) access to courts without suppression
- **The Court's Inherent Supervisory Powers** – to protect litigants from bad faith conduct

Where courts have found a credible risk of retaliation for whistleblowers or civil rights plaintiffs, protective monitoring and recordkeeping are appropriate judicial responses.

## 3. Relief Requested

Plaintiff respectfully requests:

1. That this Court **take judicial notice** of Plaintiff's expressed concern regarding retaliatory acts tied to this litigation.
2. That this Motion and the accompanying **Notice of Potential Retaliation** be **docketed and preserved** for future evidentiary reference should any related conduct occur.
3. That all Defendants and their known associates be **formally reminded**, through this record, that retaliation, harassment, intimidation, or procedural abuse aimed at obstructing litigation may constitute **independent federal civil rights violations**.
4. That this record may be shared with **appropriate authorities**, including the **U.S. Attorney's Office** or **Department of Justice Civil Rights Division**, should evidence of retaliatory acts arise.

## 4. Conclusion

Plaintiff submits this motion not as an accusation, but as a protective measure. Transparency and

accountability are central to this litigation, and the preservation of safe access to the court process is non-negotiable.

The Defendants are entitled to defend themselves. They are **not entitled** to retaliate.

Respectfully submitted,
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
970-779-1377
Dated: August 1, 2025

## NOTICE OF POTENTIAL RETALIATION AND REQUEST FOR MONITORING

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**
**Case No. [Insert Case Number]**

**William Clay Raymond,** Plaintiff
v. KArissA Meyers E+ Al.
**[List Defendants],** Defendants

---

## NOTICE OF POTENTIAL RETALIATION AND REQUEST FOR MONITORING

Comes now the Plaintiff, **William Clay Raymond**, appearing pro se, and respectfully submits this notice to the Court regarding a credible risk of extrajudicial retaliation as a direct result of this action.

Plaintiff has filed a federal civil RICO complaint naming multiple state actors, officials, and individuals who stand to face significant legal, reputational, and professional consequences should this matter proceed to discovery and trial.

Given the scope of allegations—including judicial misconduct, DCBS malfeasance, Guardian ad Litem negligence, and local law enforcement failure—Plaintiff now reasonably believes there exists a potential risk of:

- Harassment
- Intimidation
- Retaliatory surveillance or reporting
- Or, in the most extreme case, **physical harm or obstruction**

Plaintiff requests this Honorable Court to take judicial notice of this risk under **42 U.S.C. § 1983**, the Court's inherent supervisory authority, and the constitutional guarantee of access to the courts without fear of reprisal.

This notice is not submitted lightly. It is filed in good faith to create a public record of preemptive concern should any irregular, dangerous, or suppressive action be attempted by any Defendant or associated party.

Respectfully submitted,
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com

97
wr

970-779-1377
Date: August 1, 2025

98

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff
v.
KARISSA MEYERS et al.,
Defendants
Case No. [Insert once docketed]   4:25-cv-83-GNS

# DECLARATION OF WILLIAM CLAY RAYMOND REGARDING PROCEDURAL DEFECT AND JOINT ACTOR LIABILITY ARISING FROM 2022 EMERGENCY PROTECTIVE ORDER HEARING

I, **William Clay Raymond**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

## 1. Background and Representation

I was the Respondent in an Emergency Protective Order (EPO) matter filed on or about **October 29, 2022**, in the Ohio County Family Court. While I am currently uncertain of the precise date of the follow-up hearing for a long-term Domestic Violence Order (DVO), it occurred approximately **in November or early December 2022**.

At that time, I was **represented by Attorney Dan Jackson** of Jackson & Dowell, PLLC. He appeared in court on my behalf during the EPO/DVO proceedings before the Honorable **Judge Michael McKown Sr.**

## 2. Factual Basis: Allegations of Falsehood and Evidentiary Suppression

The DVO petition was filed by **Karissa Meyers** and was based on **multiple false statements**, some of which I believe to constitute **intentional perjury** under oath. I possessed **clear rebuttal evidence**, including **audio recordings and contemporaneous documentation**, that contradicted her claims.

99
cr

Despite having provided this evidence to my attorney, **Mr. Jackson**, prior to the hearing, it was **not presented**, and he **did not move for an evidentiary hearing of adequate length** in which to play or explain the materials.

Given the **20-minute total time limitation** imposed by the court (which allowed me **less than 7 minutes to speak**), there was no realistic way to even introduce, authenticate, or explain the audio recordings—let alone rebut the full scope of allegations. Mr. Jackson did **not object** on the record, did not request a continuance, and did not preserve the due process violation in any post-hearing filing or appeal.

## 3. Consequences and Judicial Harm

This rushed, defective proceeding resulted in:

- The issuance of a Domestic Violence Order without proper adversarial testing of facts
- The **removal of my children**, including temporary loss of custody
- The **appointment of a Guardian ad Litem**
- The **intervention of DCBS**, predicated in part on the unchallenged findings from the hearing
- A chilling effect on my ability to defend myself in future proceedings involving the same parties and facts

## 4. Legal Assertions and Liability Theory

I assert the following:

- The **time-restricted hearing** conducted without rebuttal, evidence presentation, or adequate legal objection constituted a **denial of due process** under the **Fourteenth Amendment** (*Mathews v. Eldridge*, 424 U.S. 319 (1976); *Turner v. Rogers*, 564 U.S. 431 (2011)).
- Attorney **Dan Jackson**'s failure to protect my evidentiary rights and right to be meaningfully heard constitutes **legal malpractice**, and his omissions enabled or contributed to a **constitutional violation**.
- Judge **Michael McKown Sr.** and Attorney Jackson acted in **concert**—one by imposing a procedurally defective hearing structure, and the other by passively allowing it—thus forming a basis for **joint actor liability** under *Dennis v. Sparks*, 449 U.S. 24 (1980).
- The events surrounding this hearing constitute the **first predicate act** in the broader **civil rights conspiracy and RICO pattern** now pled in my federal complaint.

## 5. Judicial Notice Requested

100
*wr*

This declaration is submitted as evidence of:

- A constitutional violation tied to a state-protected action
- The complicity of private and public actors in suppressing exculpatory evidence
- The beginning of a broader **pattern of institutional misconduct**, retaliation, and systemic obstruction

I request that this Court:

- Accept this declaration as a sworn submission
- Take **judicial notice** of the due process defects herein described
- Preserve this record as foundational to the larger case presently before the Court

Respectfully submitted,

/s/ **William Clay Raymond**  8/1/2025
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

**Executed on:** [Insert Date]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff
v.
KARISSA MEYERS et al.,
Defendants
Case No. [To be assigned]   4:25-cv-83-GNS

# RICO CONSPIRACY PARTICIPATION – CHASE WARD

*Supplemental Filing in Support of Civil RICO and Civil Rights Complaint*

Comes now the Plaintiff, **William Clay Raymond**, and submits the following evidentiary statement as supplemental support for the inclusion of **Chase Ward**, attorney at **Ward and Ward Law Office (Hartford, KY)**, as a **participant in the racketeering enterprise** described throughout the Complaint.

## I. Role of Chase Ward in the Enterprise

Chase Ward was appointed as Plaintiff's public defender following the unlawful removal of Plaintiff's minor children in connection with a petition filed by **Frances "Bell" Toll**, which:

- **Omitted Plaintiff's legal address**, rendering service and notice unconstitutional;
- Contained material **falsehoods and known perjury**;
- Was never challenged or corrected in court despite clear evidence to the contrary.

Mr. Ward was **directly informed** of these constitutional defects, **provided documentation**, and was urged to pursue dismissal based on:

- Lack of service (due process);
- Factual perjury by state actors;
- Procedural violations impacting parental rights and family integrity.

Mr. Ward **refused to act** on this evidence, failed to respond to written communications, withheld returned legal mail, and ultimately **coerced Plaintiff into signing a non-exculpatory order** on the morning of trial—despite acknowledging the due process violations and perjury.

102

## II. Legal Grounds for RICO Inclusion

Pursuant to **18 U.S.C. § 1962(c) and (d)**, and under the Supreme Court's holding in *Dennis v. Sparks*, 449 U.S. 24 (1980), private attorneys who **knowingly enable unconstitutional conduct**, fail to intervene in fraud upon the court, or help preserve a pattern of state-based misconduct may be held liable as **participants in a racketeering enterprise**.

Chase Ward:

- Had a **legal duty to intervene**;
- **Knowingly withheld** valid defenses;
- Participated in the preservation of unlawful court outcomes;
- Enabled the continuation of the enterprise through **inaction and silence**.

His behavior is further actionable as a **predicate act of obstruction** under:

- **18 U.S.C. § 1503** – Influencing or impeding proceedings through inaction;
- **18 U.S.C. § 1512(b)** – Tampering through silence or coercive settlement tactics;
- **18 U.S.C. § 1519** – Suppression of material records and correspondence.

## III. Pattern and Knowledge

This conduct was **not isolated**. It occurred in concert with:

- Bell Toll's unlawful petition;
- Judge McKown Sr.'s truncated due process hearing;
- Dan Jackson's prior failure to act on affidavits;
- The false allegations and filings submitted by **Karissa Meyers**.

Together, these actions formed a **closed-loop system of concealment and state-authorized harm**, maintained through legal professionals and caseworkers **acting in parallel to suppress exposure**.

Chase Ward's refusal to act was not ignorance. It was a **tactical silence**, preserving the results of a fraudulent legal proceeding at the expense of the Plaintiff's liberty interests and children's safety.

## IV. Relief and Record Purpose

This document is submitted to:

- Establish Chase Ward's participation in the broader racketeering enterprise;

103

- Support Plaintiff's existing RICO claims without requiring immediate amendment;
- Serve as judicial notice of future intended joinder or amended action if necessary;
- Preserve claims under **42 U.S.C. § 1983**, **18 U.S.C. § 1962**, and **state civil conspiracy law**.

Respectfully submitted,
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

**Executed on:** [Insert Date] 8/1/2025

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION**

**WILLIAM CLAY RAYMOND,**
Plaintiff
v.
**KARISSA MEYERS et al.,**
Defendantscp
**Case No. [To be assigned]**    4:25-cv-83-GNS

# SUPPLEMENTAL STATEMENT – ATTORNEY CONFLICT OF INTEREST: MARRIED PUBLIC DEFENDERS JANELLE & DAVID FARLEY

*Filed in Support of RICO and Civil Rights Claims under 18 U.S.C. § 1962 and 42 U.S.C. § 1983*

Comes now the Plaintiff, **William Clay Raymond**, and respectfully submits the following evidentiary statement regarding a direct and prejudicial conflict of interest involving the **court-appointed public defenders** who represented both parties in a critical child removal proceeding in or around **October 2022**.

## I. Summary of Facts

1. In response to a restraining order petition filed by **Karissa Meyers** in October 2022—based on allegations the Plaintiff asserts were knowingly false and perjured—Plaintiff's minor children were removed and placed into foster care.
2. During this process, the Court appointed **public defenders to both parties**:
   - **Janelle Farley** was appointed to represent **Karissa Meyers**.
   - **David Farley**, her husband, was appointed to represent **Plaintiff William Clay Raymond**.
3. Both public defenders were assigned to opposing parties in the same legal proceeding, and are known to be married and operating out of the same region. Both continued to represent their respective clients in proceedings tied to the same child removal events.

## II. Conflict of Interest and Ethical Breach

*105*
*WR*

Under **Kentucky Rule of Professional Conduct 1.7 (SCR 3.130)**, a lawyer shall not represent a client where the representation creates a **concurrent conflict of interest**, including:

"A significant risk that the representation... will be materially limited by a personal interest of the lawyer."

A **married couple representing opposing parties** in the same dependency/neglect/abuse (DNA) or custody-related litigation—particularly when those proceedings implicate the **removal of children** and **state-initiated court actions**—violates this standard on its face.

This conflict deprived the Plaintiff of:

- **Independent legal advocacy**
- **Unbiased procedural defense**
- **Protection from state overreach or evidentiary suppression**

## III. Connection to the RICO Enterprise

Plaintiff alleges that the broader racketeering enterprise described in the Complaint operated through a **closed loop of collusive institutional actors**, including:

- DCBS caseworkers (Bell Toll, Kailee Hunter)
- GAL (Laura Eaton)
- Family court officials (Judge McKown Sr.)
- State-funded legal advocates(Amanda Bragg, Farley & Farley, Chase Ward)
- And, in this instance, **conflicted defense counsel David & Janelle Farley**

Their dual representation of directly adverse parties constituted **tacit coordination**, enabling the enterprise to:

- Maintain a **false narrative** surrounding the child removal;
- **Suppress exculpatory evidence** and block rebuttal arguments from Plaintiff;
- Shield perjury and procedural fraud from adversarial challenge.

In *Dennis v. Sparks*, 449 U.S. 24 (1980), the U.S. Supreme Court held that **private actors— including attorneys—who act in concert with state officials to deprive constitutional rights may be liable under § 1983** and subject to civil conspiracy claims.

Furthermore, under **18 U.S.C. § 1962(d)**, a defendant need not commit a predicate act themselves if they **conspired to facilitate or conceal the pattern of racketeering activity.** Participation through silence or passive legal compromise can still trigger liability when it sustains the enterprise.

109
cur

## IV. Relief and Record Purpose

This supplement is submitted in support of the Plaintiff's claims for:

- Civil rights violations under **42 U.S.C. § 1983**
- Racketeering activity and enterprise maintenance under **18 U.S.C. § 1962(c) and (d)**
- Legal malpractice and civil conspiracy under Kentucky common law

Plaintiff reserves the right to amend the Complaint to include **Janelle and David Farley** as named defendants following review of appointment records, public defender office documentation, and discovery confirmation.

Respectfully submitted,
**/s/ William Clay Raymond**   8/1/2025
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff
v.
KARISSA MEYERS et al.,
Defendants
Case No. [To be assigned]  4:25-cv-83-GNS

# RICO CONSPIRACY PARTICIPANT – AMANDA BRAGG

### *Supplemental Evidentiary Statement in Support of RICO Conspiracy Allegations under 18 U.S.C. § 1962(d)*

Comes now the Plaintiff, **William Clay Raymond**, and submits the following supplemental statement identifying **Amanda Bragg**, attorney and legal representative of **Karissa Meyers**, as an enabling participant in the civil racketeering enterprise described in the verified Complaint.

## I. Attorney Role and Conduct Overview

Amanda Bragg served as **court-appointed counsel** or legal representative for **Karissa Meyers** in multiple proceedings central to this case, including:

1. A restraining order petition filed by Karissa Meyers falsely alleging that the Plaintiff pulled a firearm during a child custody exchange;
2. Subsequent custody proceedings, dependency actions, and evidentiary hearings related to child removal and the concealment of state misconduct;
3. A hearing in which co-defendant **Frances "Bell" Toll** was permitted to leave the witness stand early—without cross-examination or rebuttal—after Ms. Bragg testified that she had no objection to Bell's departure and had just spoken to her by phone prior to the hearing.

## II. False Firearm Allegation – Direct Misrepresentation

Amanda Bragg represented Karissa Meyers during a **restraining order proceeding** in which Karissa alleged that the Plaintiff pulled a firearm at a child exchange.

*108*
*WR*

This allegation was:

- **False**;
- **Directly contradicted** by Karissa's own witness;
- Presented in a manner designed to obtain emergency legal protections and influence custody evaluations.

During the hearing:

- The witness whom Karissa relied upon **testified under oath** that he **never saw a firearm**, and that the Plaintiff **never referenced or produced a firearm**;
- Amanda Bragg nevertheless allowed the claim to proceed without withdrawal or correction;
- The record reflects no objection or ethical withdrawal from Bragg, despite clear and material evidence refuting her client's claim.

This conduct meets the threshold of:

- **Knowing facilitation of perjury**;
- **Use of legal proceedings to further fraudulent claims**;
- **Constructive fraud by officer of the court**.

## III. Protection of Co-Defendant Bell Toll

At a recent dependency hearing involving state actors named in the Complaint, Amanda Bragg:

- **Testified in open court** that she had spoken to Bell Toll via **cell phone just prior to the hearing**;
- **Stated on the record** that she had no objection to Bell Toll leaving early from the witness stand due to illness;
- Enabled the state's key actor to **avoid cross-examination**, public scrutiny, and rebuttal testimony;
- Failed to notify the court that her close personal relationship with Bell Toll may impact her ability to remain impartial.

This exchange was not neutral. It was an act of **protectionism**, shielding a co-defendant in the broader pattern of fraud and obstruction that this Complaint seeks to expose.

## IV. RICO Conspiracy Liability

109

Under *Reves v. Ernst & Young*, 507 U.S. 170 (1993), and *Salinas v. United States*, 522 U.S. 52 (1997), participants in a RICO conspiracy need not commit predicate acts themselves. **They may be held liable if they knowingly facilitate or conceal the ongoing enterprise.**

Amanda Bragg's conduct reflects:

- **Coordination with co-defendants**;
- **Protection of false narratives**;
- **Use of procedural roles to block adversarial truth-seeking**;
- **Participation in an enterprise whose function was to remove children, suppress evidence, and silence parental defense.**

## V. Record Purpose and Reservation of Rights

This supplemental statement is submitted in support of:

- Plaintiff's RICO conspiracy claims under **18 U.S.C. § 1962(d)**;
- Civil rights violations under **42 U.S.C. § 1983**;
- Potential legal malpractice, conspiracy, and abuse of process claims under Kentucky law.

Plaintiff reserves the right to **amend the Complaint to formally name Amanda Bragg as a defendant** upon further discovery, and to pursue civil sanctions, bar referral, and related relief.

Respectfully submitted,
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

**Executed on:** [Insert Date] 8/1/2025

110
wr

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**WILLIAM CLAY RAYMOND,**
Plaintiff,
v.
**KARISSA MEYERS, et al.,**
Defendants.

**Case No. [To Be Assigned]**    4:25-cv-83-GNS

---

## SUPPLEMENTAL FILING:

## RICO CONSPIRACY PARTICIPANT – SUSAN KYLE SMITH

**Therapist and RICO Enabler**

---

**Comes now the Plaintiff, William Clay Raymond, pro se,** and respectfully submits this supplemental filing to identify an additional participant in the pattern of racketeering activity and civil conspiracy outlined in the Verified Complaint and related predicate documentation. The individual named herein is directly and materially involved in the deprivation of Plaintiff's constitutional rights and in the psychological manipulation of the minor child, M.G.R., as part of the coordinated enterprise.

## I. IDENTITY OF DEFENDANT

- **Full Name:** Susan Kyle Smith
- **Role:** Contracted Therapist (via Family Court/DCBS referral)
- **Location of Practice:** [Address to be supplemented if known]
- **Capacity:** Private Actor Operating in Coordination with State-Affiliated Individuals and Institutions

## II. ALLEGATIONS OF CONDUCT

Plaintiff alleges the following facts to support the inclusion of Susan Kyle Smith as a RICO Conspiracy Participant and named Defendant in this action:



1. **Therapeutic Access and Purpose:** Susan Kyle Smith was assigned to provide therapeutic services to Plaintiff's minor son, W.R.R., during the ongoing child custody dispute and related state intervention. Said appointment was made at the recommendation of Guardian ad Litem Laura Eaton, DCBS staff Frances "Bell" Toll, or counsel affiliated with Karissa Meyers.

2. **Reinforcement of False Narratives:** During the course of therapy, Susan Kyle Smith allegedly reinforced false abuse narratives previously initiated by other members of the enterprise—including Karissa Meyers, Chaye Ann Meyers, and Frances Toll—despite the absence of corroborating physical, forensic, or testimonial evidence. These narratives were utilized to obstruct Plaintiff's custodial rights and to justify prolonged separation of father and child.

3. **Suppression of Exculpatory Information:** At no point did the Defendant provide testimony, documentation, or recommendations supporting reunification, despite the presence of compelling evidence undermining the abuse allegations. Plaintiff asserts this was not due to professional neutrality but rather collusion with other defendants to advance a fixed custodial outcome.

4. **Alienation and Psychological Conditioning:** Plaintiff alleges that Susan Kyle Smith either intentionally or recklessly participated in **therapeutic manipulation** by failing to correct falsehoods, denying the child a neutral narrative, and cultivating emotional distance from the Plaintiff. These actions contributed to the ongoing **parental alienation**, recognized under Kentucky and federal law as a form of emotional abuse and civil injury.

5. **Coordination with Other Conspirators:** Susan Kyle Smith acted in deliberate alignment with Laura Eaton (GAL), Amanda Bragg (Karissa's attorney), and Frances Toll (DCBS), forming a chain of communication and influence designed to deprive Plaintiff of constitutional access to his child and control the narrative presented to the court.

## III. LEGAL BASIS FOR INCLUSION UNDER RICO

Plaintiff alleges that Susan Kyle Smith satisfies the criteria for RICO conspiracy participation under **18 U.S.C. § 1962(d)**, based on the following:

- **Knowledge of the enterprise's goals** (i.e., to separate Plaintiff from his child through fraudulent processes);
- **Participation in conduct that furthers those goals**, including false diagnosis or omission, biased therapy delivery, and enabling use of her services as evidence in court without neutrality;
- **Ongoing coordination** with other enterprise members and failure to act as a neutral mental health provider in a high-stakes custody case involving known perjury and DCBS misconduct.

## IV. DAMAGES AND RELIEF REQUESTED

112

As a result of Susan Kyle Smith's actions, Plaintiff and his minor child W.R.R. have suffered:

- Emotional trauma due to alienation;
- Further delay in custody restoration;
- False documentation or impressions used in family court;
- Contribution to a broader constitutional and racketeering violation.

Plaintiff reserves the right to seek compensatory and punitive damages TBD against this defendant and incorporates her into the existing RICO, civil rights, and emotional abuse claims already pled.

Respectfully submitted,
/s/ William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: [Insert Date]  8/1/2025

113
CR

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff
v.
KARISSA MEYERS et al.,
Defendants
Case No. [To be assigned]    4:25-cv-83-GNS

# RICO CONSPIRACY PARTICIPANT –

# NATALIE RALPH

*Supplemental Filing in Support of Civil RICO Conspiracy and Civil Rights Violations under 18 U.S.C. § 1962(d) and 42 U.S.C. § 1983*

Comes now the Plaintiff, **William Clay Raymond**, and submits the following supplemental statement identifying **Amanda Ralph**, Assistant Commonwealth's Attorney for Ohio County, Kentucky, as an active participant in the racketeering enterprise described in the verified Complaint.

## I. Role and Jurisdictional Misconduct

Amanda Ralph served as the prosecuting attorney in **two separate dependency and child removal cases** involving the Plaintiff over a period of approximately two and a half years.

Both cases originated from **false allegations filed by Karissa Meyers with DCBS**, and both:

- Resulted in the **unlawful removal of Plaintiff's children**;
- Were **built on perjury**, fabrications, and statements now provably false;
- Included jurisdictional defects which Ms. Ralph was made aware of in open court.

Specifically:

- The **first case**, initiated in 2022, included perjured claims regarding Plaintiff's behavior that have since been contradicted by **video, audio, and witness evidence**;
- The **second case**, initiated by DCBS caseworker **Frances "Bell" Toll** in 2024, relied on the **false firearm allegation**—an allegation that took place in **Daviess County**, outside

*J14*
*CR*

Ohio County's jurisdiction, and which was **factually disproven in court** by the same witness relied on by Karissa.

Despite this knowledge, Amanda Ralph chose to continue prosecuting both cases, **knowing they lacked jurisdiction, factual merit, and procedural integrity**.

## II. Coerced Agreement Under Duress

During the course of these proceedings, Amanda Ralph entered into a deal with Plaintiff's then-counsel, **Dan Jackson**, whereby the Plaintiff agreed to accept responsibility for the first CPS case in exchange for:

- Dismissal of the case against Karissa Meyers; and
- The **immediate release of the children from foster care into Karissa's custody**.

This agreement was made:

- **While Plaintiff's children were being held in state custody;**
- **Under direct psychological duress;**
- With **knowledge by the Commonwealth** that the claims being used as leverage were **false or refuted**.

Though the presiding judge asked if the agreement was entered into "freely and voluntarily," the Plaintiff—**fearing that the truth would jeopardize his ability to free his children from foster care**—denied duress in open court.

In reality, the plea was coerced, manipulated, and used as a tool to preserve a defective legal narrative and suppress exposure of state wrongdoing.

## III. Systemic Concealment of Known Falsehoods

Amanda Ralph had:

- **Full access to restraining order hearing transcripts**, in which the firearm allegation was **disproven by Karissa's own witness;**
- Direct knowledge from Plaintiff's oral statements in open court that the allegations originated **outside Ohio County jurisdiction;**
- An ethical and legal duty to abandon prosecution upon learning of **perjury, procedural violations**, and **lack of venue**.

Instead, she used her office to:

115

- **Sustain the false narrative** on behalf of DCBS and GAL actors;
- **Obstruct exonerating evidence** from changing the outcome;
- And **validate Bell Toll's unlawful and constitutionally defective petitions**.

## IV. RICO Conspiracy Liability

Under **18 U.S.C. § 1962(d)**, the Plaintiff asserts that Amanda Ralph knowingly participated in a broader racketeering enterprise that operated through:

- Fabrication of evidence
- Coordinated suppression of truth
- Legal manipulation of custody proceedings for state and reputational benefit

As outlined in *Salinas v. United States*, 522 U.S. 52 (1997), and *Reves v. Ernst & Young*, 507 U.S. 170 (1993), conspirators under RICO need not commit predicate acts directly, so long as they **knowingly facilitate the continuity of the unlawful enterprise.**

Amanda Ralph's continuation of child removal prosecutions based on **known perjury, lack of jurisdiction, and coerced admissions**, constitutes:

- **Obstruction of justice**
- **Abuse of process**
- **RICO conspiracy by prosecutorial concealment and coercion**

## V. Record Purpose and Reservation of Rights

This statement is submitted to preserve the record of Amanda Ralph's prosecutorial participation in:

- The deprivation of constitutional rights under **42 U.S.C. § 1983**
- The maintenance and concealment of a racketeering enterprise under **18 U.S.C. § 1962(d)**
- State-level claims including abuse of process and coercion

The Plaintiff reserves the right to **amend the complaint** and formally name Amanda Ralph as a defendant, based on this conduct and any evidence produced in discovery.

Respectfully submitted,
/s/ **William Clay Raymond**   8/1/2025
179 Tanyard Park, Unit 166

116
cur

Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

**Executed on:** [Insert Date] 8/1/2025

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY – OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff
v.
KARISSA MEYERS et al.,
Defendants
Case No. [To be assigned]    4:25-cv-83-GNS

# CASE INTRODUCTION AND STRUCTURAL SUMMARY

*Filed in Support of Verified Civil RICO, Civil Rights, and Constitutional Tort Complaint*

## I. NATURE OF THE CASE

This case arises from a **pattern of coordinated misconduct** spanning more than two years, involving state actors, court-appointed attorneys, public defenders, judicial officials, and affiliated third parties who participated—either directly or passively—in a systemic effort to:

- **Remove Plaintiff's minor children through fraud**, perjury, and procedurally defective petitions;
- **Suppress exculpatory evidence and testimony** across multiple legal forums;
- **Coerce Plaintiff into admissions and agreements under duress**;
- And to **shield the resulting unlawful outcomes** from judicial review, media scrutiny, or appellate challenge.

At its core, this action seeks to expose and remedy a **closed-loop RICO enterprise**—enabled by actors who used state power, legal process, and personal relationships to conceal violations of the **Fourteenth Amendment, First Amendment, 42 U.S.C. § 1983**, and **18 U.S.C. § 1962(d)**.

## II. PARTIES AND ENTERPRISE STRUCTURE

Defendants include:

- **Private individuals** (Karissa Meyers),
- **Government officials** (DCBS staff, prosecutors, public defenders),

*118
wr*

- **Court officers** (Guardian ad Litem, Judges),
- And **organizational enablers** (ZeroV/KCDV, Kentucky DCBS)

Each defendant's role has been **individually documented** in a RICO Enterprise Chart and supplemented by **sworn declarations**, outlining specific misconduct, omissions, or actions that furthered the enterprise and denied Plaintiff access to lawful remedy.

## III. LEGAL FOUNDATION

Plaintiff's Complaint alleges:

- **Violations of due process and equal protection rights** under the U.S. Constitution;
- **Federal RICO conspiracy** under 18 U.S.C. § 1962(d);
- **State law claims** for abuse of process, civil conspiracy, and intentional infliction of emotional distress;
- And a factual narrative supported by **witness testimony, sworn declarations, preservation notices, and procedural records**.

The Complaint is accompanied by:

- A Rule 26 preservation notice;
- A motion for protective monitoring;
- Declarations of attorney misconduct;
- A complete timeline of predicate acts and enterprise behavior.

## IV. REQUEST FOR FULL REVIEW AND DISCOVERY

Plaintiff respectfully requests:

- Assignment of this case to the appropriate judge in the Western District of Kentucky – Owensboro Division;
- Preservation of all filings as part of a constitutional tort record;
- That the Court decline sua sponte dismissal under Rule 12(b) and allow this case to proceed to **Rule 26 discovery**, **witness deposition**, and **evidentiary review**;
- And that the Court take judicial notice of the widespread and ongoing risk of retaliation described in the accompanying protective motion.

Respectfully submitted,
**/s/ William Clay Raymond**   8/1/2025
179 Tanyard Park, Unit 166

119
cvr

Hillview, KY 40229
clayemail58@gmail.com
970-779-1377

**Executed on:** [Insert Filing Date]   8/1/2025

120
ver

**RICO CONSPIRACY PARTICIPANTS: JUDGE MICHAEL MCKOWN SR. AND JUDGE BENJAMIN MCKOWN JR.**
**Filed in Support of Verified Civil RICO Complaint**
**William Clay Raymond v. Karissa Meyers, et al.**
**U.S. District Court – Western District of Kentucky, Owensboro Division**
**Dated: August 1, 2025**

## I. INTRODUCTION

This document supplements the Verified Civil RICO Complaint by detailing the direct and enterprise-level participation of sitting judicial officers **Judge Michael McKown Sr.** and **Judge Benjamin McKown Jr.** in conduct giving rise to multiple predicate acts under 18 U.S.C. § 1962(c) and (d). Both judges were assigned to and presided over successive phases of the family law litigation in which Plaintiff William Clay Raymond's children were wrongfully removed and his parental rights suppressed under unconstitutional conditions.

These judicial actors served not merely as passive adjudicators but as **active enablers and institutional shields** for the broader pattern of coordinated misconduct between DCBS staff, court-appointed officers, and abusive private parties.

## II. JUDGE MICHAEL MCKOWN SR.

### A. Overview of Conduct

- Presided over the initial emergency protection hearings in October 2022 following knowingly false allegations filed by Karissa Meyers.
- Allowed a **20-minute total hearing**, during which Plaintiff was permitted fewer than **7 minutes** to present a defense.
- Refused to allow presentation of **exculpatory video evidence**, physical evidence, or full witness statements.
- Denied continuance despite procedural defects, including DCBS's omission of Plaintiff's address from its removal petition.
- Issued orders that led directly to the **wrongful foster placement** of the children.

### B. Legal and RICO Implications

- Denial of due process constitutes obstruction under 18 U.S.C. § 1503.
- Suppression of critical defense evidence furthered the pattern of racketeering activity aimed at depriving Plaintiff of lawful custody.
- These judicial decisions were not isolated, but consistent with the enterprise's objective: **remove Plaintiff as a parent to enable fraudulent court control over minor children.**

125

**Predicate Acts:** 18 U.S.C. § 1503 (obstruction), § 1962(d) (conspiracy)

---

## III. JUDGE BENJAMIN MCKOWN JR.

### A. Overview of Conduct

- Inherited the case after Judge Michael McKown Sr.'s retirement and **sustained all unconstitutional rulings** without review.
- Refused to hear or grant motions to disqualify **Guardian ad Litem Laura Eaton** despite clear financial and legal conflicts.
- During open court on **July 23, 2025**, stated:

  > *"If I dismiss or disqualify Laura Eaton as Guardian ad Litem because you filed a lawsuit against her, that makes a very dangerous precedent."*

- Rejected Plaintiff's motion for a restraining order against **Chaye Ann Meyers**, despite an audio recording and partial admission that she had **showered with both children naked and urinated on them.**
- Responded to this evidence by telling the grandmother, **"Don't shower with them anymore,"** but refused to characterize the behavior as abuse or molestation.

### B. Legal and RICO Implications

- Continuing and expanding upon the obstruction initiated by his father, Judge Benjamin McKown Jr. enabled further predicate acts.
- Demonstrated a pattern of judicial protectionism toward GAL and DCBS enterprise actors, signaling awareness of civil liability and consciously shielding co-defendants.
- Suppressed credible abuse allegations and insulated known enterprise participants.

**Predicate Acts:** 18 U.S.C. § 1503 (obstruction), § 1512(c) (witness tampering by suppression), § 1962(d) (RICO conspiracy)

---

## IV. CONCLUSION

Judges Michael McKown Sr. and Benjamin McKown Jr. each played **distinct and coordinated roles** in advancing the objectives of the broader racketeering enterprise. Their rulings reflect not independent judicial discretion but a sustained pattern of decisions designed to **obstruct due process, enable the concealment of abuse, and deprive Plaintiff of his parental rights through coordinated state action.**

122

These actions, taken in concert with DCBS, GALs, prosecutors, and court-aligned therapists, establish both judges as **central enterprise participants** in violation of 18 U.S.C. § 1962(c) and (d).

**Respectfully submitted,**
/s/ **William Clay Raymond**
Pro Se Plaintiff
Hillview, Kentucky
Dated: August 1, 2025

123

FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: _____ Aug 01, 2025 _____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**WILLIAM CLAY RAYMOND,**
Plaintiff,
v.
**KARISSA MEYERS, et al.,**
Defendants.

**Case No. [To be Assigned]**  4:25-cv-83-GNS

## MOTION TO EXPEDITE SERVICE OF PROCESS

Comes now the Plaintiff, **William Clay Raymond**, pro se, and respectfully moves this Honorable Court pursuant to **Fed. R. Civ. P. 4(c)(3), 4(m), and 6(b)** for an order expediting service of process upon all named defendants. In support of this motion, Plaintiff states as follows:

## I. GROUNDS FOR EXPEDITED SERVICE

1. Plaintiff brings this civil action pursuant to **18 U.S.C. §§ 1961–1964 (RICO)** and **42 U.S.C. § 1983**, alleging a pattern of racketeering activity, civil rights violations, conspiracy, obstruction, and child endangerment committed by **21 individual and institutional defendants**.
2. Plaintiff has prepared summonses and is ready to serve all defendants immediately upon issuance of the case number and fee confirmation by the Court.
3. Plaintiff respectfully requests the Court authorize **expedited service** of process because:

   a. **Evidence destruction** is a material concern in this matter, including electronic communications, custody records, and internal government notes;

   b. **Ongoing retaliation and conspiracy** continue to threaten the Plaintiff's safety, civil rights, and parental rights;

   c. **Minor children** are at continued risk, and certain defendants remain in positions of power or influence over ongoing proceedings and state systems;

   d. Several defendants are **government officials or contractors**, some of whom may seek to avoid service or collude to delay proceedings.

12⁴/ᵤᵣ

4. Pursuant to **Fed. R. Civ. P. 4(c)(3)**, a court must order the U.S. Marshals Service to serve process when the plaintiff proceeds **in forma pauperis** or under special circumstances. Plaintiff either qualifies for such status or has a motion pending requesting waiver of summons-related costs.

5. Expedited service is also appropriate under **Rule 6(b)**, where time-related relief may be granted to avoid undue prejudice and ensure access to preliminary injunctive relief.

## II. REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court:

1. **Authorize expedited service of process** on all named defendants in this action;
2. Direct the **United States Marshal's Service** or any other authorized process server to immediately execute service;
3. Permit Plaintiff to **file proof of service** electronically or by affidavit following execution;
4. Grant any such further relief as the Court deems just and proper in the interest of justice.

Respectfully submitted,
/s/ William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: [8/01/225]

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, et al.,
Defendants.

Case No. [To be assigned]  4:25-cv-83-GNS

## [PROPOSED] ORDER GRANTING MOTION TO EXPEDITE SERVICE OF PROCESS

This matter comes before the Court on the Motion of Plaintiff, William Clay Raymond, to expedite service of process upon all named defendants in this action. Having reviewed the motion and the record, and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED**.

1. The Clerk of Court shall promptly issue all requested summonses.
2. The **United States Marshal's Service** or any court-authorized process server is hereby directed to **serve all named defendants forthwith**, pursuant to **Fed. R. Civ. P. 4(c)(3)**.
3. Plaintiff is permitted to **file proof of service** electronically or by affidavit following execution.
4. This Court finds that good cause exists for expedited service due to the nature of the allegations, risk of evidence tampering, and need for immediate injunctive or protective relief.

IT IS SO ORDERED.

Dated: _____

**Judge [Insert Name]**
**United States District Court**
**Western District of Kentucky**

124
cir

# EXHIBIT 53

*(RICO Predicate Act – Procedural Suppression and Judicial Obstruction by Judge Tim R. Coleman)*

*(Denial of Service Waiver for Civil Rights Case No. 25-CI-00251 – Stamped July 29, 2025)*

130 uR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**WILLIAM CLAY RAYMOND,**
Plaintiff,
v.
**KARISSA MEYERS, et al.,**
Defendants.

**Case No. [To Be Assigned]**    4:25-cv-83-GNS

---

# EXHIBIT 53

### *RICO Predicate Act – Procedural Suppression and Judicial Obstruction by Ohio County Circuit Judge Tim R. Coleman*

### *(Retaliatory Denial of In Forma Pauperis Service Relief – July 29, 2025)*

---

**Comes now the Plaintiff, William Clay Raymond, pro se**, and submits this predicate act in support of the Verified Complaint for Civil Rights Violations and Racketeering under 18 U.S.C. §§ 1962(c) and (d). This exhibit documents an act of procedural suppression and judicial obstruction committed by **Ohio County Circuit Court Judge Tim R. Coleman** in connection with Case No. **25-CI-00251**, *William Clay Raymond v. Karissa Meyers, et al.*, wherein the Court denied Plaintiff's reasonable motion to proceed in forma pauperis (IFP) for purposes of **service and summons fees only**, despite the Plaintiff having already paid the **full civil filing fee**.

---

## I. FACTUAL BACKGROUND

- On or about **July 25, 2025**, Plaintiff filed a Verified Complaint for Damages in the Circuit Court of Ohio County against **Karissa Meyers** and **ten additional named defendants**.
- Plaintiff paid the **required court filing fee in full** at the time of submission.
- In a separate filing, Plaintiff moved to proceed in forma pauperis **only for summons and service costs**, citing:
    - Active civil rights litigation against county actors
    -
- The burden of attempting to serve 10+ individuals while proceeding pro se
-

131
wR

- On **July 29, 2025**, Judge Coleman issued a one-sentence order denying the motion:

  > *"The plaintiff having moved to proceed in forma pauperis and the Court having reviewed the file and being otherwise sufficientl", it is therefore ordered and adjudged that the plaintiff's motion to proceed in forma pauperis is hereby DENIED."*

- The order bears the **official stamp of Judge Tim R. Coleman**, and was entered **without a hearing, without factual findings, and without any accommodation of the Plaintiff's procedural or constitutional rights.**

---

## II. RICO AND CIVIL RIGHTS IMPLICATION

Judge Coleman's refusal to waive service fees for a financially strained civil rights litigant constitutes a **retaliatory procedural obstruction** consistent with other acts described throughout this complaint. The conduct enabled:

- Tactical delay of lawful litigation
- Burdensome economic barriers to equal justice
- Protection of defendants engaged in alleged civil conspiracy and racketeering

This act contributes to the broader **racketeering pattern** in the following ways:

### ☑ Obstruction of Justice – 18 U.S.C. § 1503

Judge Coleman's denial—absent findings or rationale—materially obstructed Plaintiff's access to justice in a case involving **public corruption, civil conspiracy, and constitutional torts.**

### ☑ Retaliation Against a Litigant Engaged in Protected Conduct – 42 U.S.C. § 1983

Plaintiff's lawsuit is protected under the First and Fourteenth Amendments. The economic denial of service fees in an active civil rights action constitutes an **unlawful act of suppression under color of law.**

### ☑ Enterprise Enablement by Judicial Actor

Judge Coleman's act—though facially administrative—functionally aided enterprise participants by:

- Delaying service
- Forcing additional financial burdens on a whistleblower litigant
- Shielding defendants from timely accountability

As such, the denial satisfies the "knowingly furthered the enterprise" standard under RICO.

132

## III. RELIEF AND INCLUSION REQUESTED

Plaintiff submits this predicate act to:

- Document judicial obstruction as an operational component of the racketeering enterprise
- Formally name **Judge Tim R. Coleman** as a potential individual-capacity defendant should further evidence establish willful collusion or abuse of discretion
- Reserve all rights to seek **injunctive relief, federal judicial referral**, and **monitoring of procedural fairness** in ongoing state litigation

This denial, combined with the conduct detailed in Exhibits 54–57, illustrates an interconnected pattern of **economic sabotage**, **judicial neglect**, and **civil rights suppression** at every tier of government and private facilitation.

**Respectfully submitted,**
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: August 1, 2025

# EXHIBIT 54

*(RICO Predicate Act – Attorney Michael J. Hackworth, Hackworth Law Office, Piedmont, Missouri)*

*(Constructive Fraud, Legal Enabling, and Civil RICO Participation)*

134

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, et al.,
Defendants.

Case No. [To Be Assigned] 4:25-cv-83-GNS

# EXHIBIT 54

## RICO Predicate Act – Attorney Michael J. Hackworth, Hackworth Law Office, Piedmont, Missouri

### (Constructive Fraud, RICO Enabling, and Legal Abuse During Custody Crisis)

**Comes now the Plaintiff, William Clay Raymond, pro se**, and respectfully submits this predicate act pursuant to his Verified Complaint for Civil Rights Violations and Racketeering. This submission identifies **Attorney Michael J. Hackworth** of **Hackworth Law Office**, located at **1401 North Main Street, Suite 200, Piedmont, Missouri 63957**, as an active **legal enabler and co-conspirator** in the execution of a predatory buyout scheme during Plaintiff's custody-based duress and out-of-state legal warfare.

## I. BACKGROUND

Between late 2022 and early 2023, Plaintiff was under immense legal, financial, and emotional duress due to the removal of his children by Kentucky DCBS officials. During this crisis:

- Plaintiff was explicitly told he must relocate to Kentucky or **lose all chance of regaining custody** (Exhibit 56)
- Plaintiff owned and operated a successful family business, **Hidden Meadows Cabin Rentals**, located on a **175-acre riverfront farm** in Black, Missouri
- Plaintiff was forced to consider selling the property to relocate, placing him in a vulnerable negotiating position

135

## II. ATTORNEY INVOLVEMENT AND ENABLING CONDUCT

During this time, **Attorney Michael J. Hackworth**, representing Tina and Hank Mathes:

- Prepared and finalized documents executing a **lowball buyout agreement** valued at only ~**$130,000**, despite the property's estimated value of **$1,250,000+**
- Knew or should have known that:
  - Plaintiff was under **extreme duress** due to active child custody litigation
  - Plaintiff was being coerced across state lines under threat of total parental erasure
  - Plaintiff's business and land represented **his last financial foundation**
  - **Plantiff paid more in down payment then the buyout amount**

Attorney Hackworth's role was not passive or neutral. He:

- **Knowingly facilitated and formalized** the economic exploitation
- Used his legal credentials to **mask constructive fraud as "legitimate business"**
- **Failed to disclose or object** to the clearly coercive imbalance in the agreement

## III. LEGAL CLASSIFICATION UNDER RICO

The actions of Attorney Hackworth qualify under the following:

☑**18 U.S.C. § 2 – Aiding and Abetting**

Hackworth substantially assisted and ratified the conduct of Hank and Tina Mathes by drafting legal documents that enabled and protected the financial fraud.

☑**18 U.S.C. § 1962(d) – RICO Conspiracy**

Hackworth knowingly furthered the goals of a racketeering enterprise by making the illegal property seizure appear legally sound, thereby participating in the broader pattern of coercion, obstruction, and parental destruction.

☑**Constructive Fraud and Bad Faith Legal Conduct**

An attorney owes a duty of honesty and fairness, especially during vulnerable transactions. Hackworth violated Missouri Rules of Professional Conduct by failing to protect Plaintiff's basic rights in the course of executing a lopsided and coerced agreement.

## IV. DAMAGES

Attorney Hackworth's conduct contributed directly to:

134
wR

- Loss of **$500,000+** in real estate equity
- Loss of **$100,000+ per year** in rental income
- Destruction of a long-standing family business
- Increased emotional and legal stress during a federally litigated custody crisis
- Permanent loss of the Missouri home that was central to Plaintiff's children's upbringing

**Total damages: $700,000–$900,000+, subject to trebling under RICO**

---

## V. RELIEF REQUESTED

Plaintiff respectfully requests that:

- Attorney **Michael J. Hackworth** be formally added to the caption as a named RICO defendant
- The Court docket this predicate act as **Exhibit 54**
- Hackworth be served via his professional address listed herein
- Discovery and subpoena powers be extended to obtain all communication, contracts, drafts, emails, and related material associated with the Mathes property negotiation

---

**Respectfully submitted,**
**/s/ William Clay Raymond**
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: August 1, 2025

137

# EXHIBIT 55

*(RICO Predicate Act – Predatory Foreclosure and Economic Coercion by Missouri Lien Holders Tina Mathes and Hank Mathes)*

*(Constructive Fraud and Extortion Under Custody Duress – Estimated Loss: $1,000,000+)*

138
wr

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, et al.,
Defendants.

Case No. [To Be Assigned]    4:25-cv-83-GNS

# RICO PREDICATE ACT – EXHIBIT 55

### *Predatory Foreclosure and Economic Coercion by Missouri Lien Holders Tina Mathes and Hank Mathes (2022–2023)*

*(Constructive Fraud and Extortion Under Custody Duress – Estimated Loss: $750,000+)*

**Comes now the Plaintiff, William Clay Raymond, pro se**, and respectfully submits this supplemental predicate act in support of the Verified Complaint for Civil Rights Violations and Racketeering. This predicate act documents the predatory economic coercion, constructive fraud, and unjust property seizure committed by **Tina Mathes and Hank Mathes**, owner-financiers and lien holders of Plaintiff's property in Black, Missouri, during the 2022–2023 custody crisis initiated by Ohio County DCBS and state actors named elsewhere in this complaint.

## I. BACKGROUND

Between 2019 and 2022, Plaintiff lawfully resided on a **175-acre riverfront family farm** in Black, Missouri. This property was acquired and financed through a private, owner-financed agreement with **Tina and Hank Mathes**, residents of Black, MO.

- The property included **five livable structures**
- A long-standing **cabin rental business** producing **$100,000+ per year in income**
- Over **$500,000 to $700,000** in market equity

- Clear documentation of regular payments and property maintenance

Plaintiff placed a **large down payment** toward the purchase and was well within the terms of his agreement.

## II. THE COERCION EVENT

Following the **illegal removal of Plaintiff's children** on October 29, 2022, by Ohio County DCBS (described in Exhibits 56 and 57), Plaintiff returned to Missouri to resume residence and begin mounting a legal challenge.

At this time, he was:

- Under pressure by Kentucky DCBS to **relocate permanently to Kentucky**
- Facing **severe emotional and legal strain**
- Temporarily without custody and financially vulnerable

Plaintiff's lien holders, **Tina and Hank Mathes**, were **fully aware** of his legal crisis and family separation. Instead of providing stability or upholding the original purchase agreement, they used the situation to impose a **lowball buyout** offer of **$130,000**—a fraction (approximately **15–20%**) of the actual property and business value.

## III. KNOWLEDGE AND INTENT

Plaintiff alleges that:

- The Mathes defendants were **aware of the DCBS removal**, court activity, and resulting instability
- They **knew** Plaintiff had no meaningful capacity to resist the buyout due to time-sensitive custody litigation
- They were also **aware that Karissa Meyers had attempted to steal a free-and-clear 80-acre parcel**—further destabilizing Plaintiff's hold on the property
- They **leveraged this pressure** to induce Plaintiff into a forced settlement that resulted in a net loss of **$500,000+** in equity and destroyed an income-producing business

This constitutes **economic coercion**, **constructive foreclosure**, and **extortion under duress.**

## IV. LEGAL CLASSIFICATION AS RICO PREDICATE ACT

140
wr

This conduct satisfies multiple federal statutes qualifying as racketeering activity under **18 U.S.C. § 1961(1)**:

**1. 18 U.S.C. § 1951 – Hobbs Act (Extortion)**

The Mathes defendants obtained Plaintiff's property and financial rights through threats, coercion, and exploitation of his legal vulnerability.

**2. 18 U.S.C. § 1343 – Wire Fraud**

Any email or phone-based communication used to induce this coercive transaction qualifies under interstate wire fraud statutes.

**3. 18 U.S.C. § 1962(c) – Participation in a RICO Enterprise**

While not government actors, the Mathes defendants knowingly **furthered the goals of the enterprise** by removing Plaintiff's financial base during ongoing civil rights violations and state-initiated retaliation.

**4. Constructive Fraud and Bad Faith Dealings**

They acted in bad faith during a legally binding financial arrangement, exploiting the imbalance of power and Plaintiff's known status as a federal civil rights litigant and a father in crisis.

---

## V. DAMAGES

- Estimated lost equity: **$400,000–$500,000**
- Loss of cabin rental business (est. $100,000/year gross income)
- Relocation costs and loss of jurisdictional advantage
- Compounded emotional trauma and litigation disadvantage
- Forced liquidation of family legacy property under **extreme duress**

Total economic damages from this predicate act exceed **$500,000–$600,000**, separate and apart from Exhibits 56 and 57.

---

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that:

- This predicate act be admitted into the record as **Exhibit 55**
- Defendants **Tina Mathes and Hank Mathes** be formally added to the federal complaint as named co-conspirators and RICO defendants

141
WR

- The Court recognize this act as a **key component of the economic sabotage** inflicted upon Plaintiff as part of the larger custody-centered racketeering enterprise

Respectfully submitted,
/s/ William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: August 1, 2025

142
cR

# EXHIBIT 56

*(RICO Predicate Act – Interstate Extortion & Coercion by Kentucky DCBS Official "Cindy")*

*(October to December 2022 – Forced Relocation from Missouri Under Custody Threat – Estimated Loss $1,500,000+)*

143

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, et al.,
Defendants.

Case No. [To Be Assigned]    4:25-cv-83-GNS

---

# RICO PREDICATE ACT – INTERSTATE EXTORTION & COERCION BY KENTUCKY DCBS OFFICIAL "CINDY"

*(October to December 2022 – Forced Relocation from Missouri Under Custody Threat – Estimated Damages: $1,000,000+)*

---

**Comes now the Plaintiff, William Clay Raymond, pro se**, and submits the following supplemental predicate act in support of his Verified Complaint for Civil Rights Violations and Racketeering. This predicate act outlines an act of **interstate coercion, extortion, and retaliatory relocation**, resulting in the destruction of Plaintiff's business and property interests in Missouri after receiving threats from Kentucky DCBS personnel.

## I. BACKGROUND

On or about **October 29, 2022**, the minor children W.R.R. and M.G.R. were removed by Ohio County DCBS and placed into foster care. At the time of the removal:

- **Plaintiff was not a resident of Ohio County**—he had arrived only **7 days earlier**
- **Respondent Karissa Meyers had only been in Ohio County approximately 8 weeks**
- The children had previously lived with Plaintiff for **nearly 3 years** on a **175-acre riverfront family farm in Missouri**

Despite lacking proper jurisdiction, DCBS retained custody in Kentucky. Plaintiff, after attending the removal proceedings and attempting to intervene, returned to his lawful residence in Missouri.

144

## II. INTERSTATE COERCION AND THREAT

While residing lawfully in Missouri, Plaintiff was contacted by a Kentucky DCBS official believed to be named **"Cindy."** This contact was made via **cell phone**, across state lines, while Plaintiff sat in his truck on the Missouri farm property.

**"Cindy" explicitly told Plaintiff:**

**"If you don't move to Kentucky, you will have zero chance of getting your children back."**

This statement was made in **clear absence of any legal authority** and amounted to a **coercive demand** that Plaintiff **abandon his home, business, and legal jurisdiction** in order to maintain parental rights.

## III. FORCED ABANDONMENT OF PROPERTY & BUSINESS

As a result of this unlawful coercion:

- Plaintiff was compelled to **relocate to Kentucky under duress**
- Plaintiff lost functional access to the **175-acre Missouri property**, including all maintenance and income operations
- The Missouri property included a **cabin rental business that had operated continuously for over 40 years**, with an average annual income of **approximately $100,000**
- The property itself was valued at over **$1,250,000**, which Plaintiff was later forced to sell or abandon due to financial distress, DCBS time demands, and lack of stability caused by relocation

This property and business were **never tied to any abuse, neglect, or criminal allegation**. Plaintiff was **compelled under threat** to leave a state where he held **residency, equity, and lawful custody**, all to submit to a jurisdiction that had never been home to the children.

## IV. LEGAL CLASSIFICATION AS RICO PREDICATE ACT

This act constitutes a RICO predicate under the following federal statutes:

**1. 18 U.S.C. § 1951 – Hobbs Act (Extortion)**

Coercing a person to give up property or liberty under threat of harm—including removal of their children—constitutes extortion by color of official right.

145

### 2. 18 U.S.C. § 1343 – Wire Fraud

The threat was transmitted electronically across state lines. The use of coercive language to induce property forfeiture constitutes wire fraud.

### 3. 18 U.S.C. § 241 – Conspiracy Against Rights

Coordinated use of state authority to force relocation and destroy a fit parent's financial base violates both liberty and property rights under the Fourteenth Amendment.

### 4. 18 U.S.C. § 1961(1) – Racketeering Activity

The above acts are enumerated forms of racketeering and qualify as predicate acts under the RICO statute.

---

## V. ESTIMATED DAMAGES: $1,500,000+

- **$500,000-800,000** in equity loss from forced abandonment of real property
- **$100,000/year** in business income loss beginning in 2023, with ongoing losses
- **Relocation costs, transition instability, and disruption of legal jurisdiction**
- **Loss of family continuity and parental standing in home state**
- **Emotional and reputational damages associated with involuntary property forfeiture**

Plaintiff estimates that the **total economic damage** caused by this predicate act alone exceeds **$1,500,000**.

---

## VI. REQUEST FOR REMEDY

Plaintiff respectfully requests that:

- This predicate act be incorporated into the federal record as part of the verified pattern of racketeering activity
- Damages exceeding $1,500,000 be attributed to this act within the broader claim for relief
- The Court and Department of Justice recognize this event as evidence of **interstate extortion under color of law**
- That discovery be permitted into all communications involving DCBS officials who made or facilitated this threat

146

Respectfully submitted,
/s/ William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: August 1, 2025

---

# FINANCIAL AFFIDAVIT ATTACHED

## AFFIDAVIT OF ECONOMIC LOSS RELATED TO MISSOURI PROPERTY AND BUSINESS

I, William Clay Raymond, declare under penalty of perjury that the following is true and correct:

1. From approximately 2020 to 2022, I resided on my family's 175-acre riverfront property in Missouri with my children W.R.R. and M.G.R.
2. The property included a family-operated cabin rental business that had been in continuous operation for over 40 years.
3. This business generated an average annual income of **$100,000**, supported by multiple residential structures on-site.
4. In late 2022, after the children were removed, I returned to Missouri and was contacted by a Kentucky DCBS worker who told me:

   > "If you don't move to Kentucky, you will have zero chance of getting your children back."

5. In reliance on that threat, I gave up the Missouri property and business, incurring the following damages:
   - Property equity loss: **$500,000–$800,000**
   - Business income loss: **$100,000/year beginning 2023**, continuing to present
6. These actions were not taken voluntarily but under **direct coercion by a Kentucky state actor**.

I affirm that the total damages incurred from this forced relocation and business loss exceed **$1,500,000**.

Executed this 1st day of August, 2025.
/s/ William Clay Raymond

147
UR

# EXHIBIT 57

*(RICO Predicate Act – Out-of-State Collusion Initiated by Frances "Bell" Toll)*

128
WR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

WILLIAM CLAY RAYMOND,
Plaintiff,
v.
KARISSA MEYERS, et al.,
Defendants.

Case No. [To Be Assigned]    4:25-cv-83-GNS

---

# RICO PREDICATE ACT- (exhibit 57)

# – OUT-OF-STATE COLLUSION INITIATED BY FRANCES "BELL" TOLL

*(Cross-Jurisdictional Conspiracy to Manufacture Grounds for Child Removal)*

---

Comes now the Plaintiff, **William Clay Raymond, pro se**, and respectfully submits this supplemental predicate act in support of his Verified Complaint for Civil Rights Violations and Racketeering. This act outlines how Defendant **Frances "Bell" Toll**, a DCBS official in Ohio County, Kentucky, crossed state lines to initiate an unlawful and baseless child welfare investigation in Indiana, in an attempt to build false justification for custodial removal.

---

## I. BACKGROUND

In or around early 2023, Defendant Frances "Bell" Toll contacted the **Vanderburgh County Department of Child Services (DCS)** in **Evansville, Indiana**, requesting a welfare investigation into Plaintiff, despite no evidence of harm, no prior Indiana allegations, and no triggering incident involving Plaintiff's conduct in that state.

The contact was made to **Mr. Parsons**, a longtime DCS caseworker who was assigned to conduct an interview with Plaintiff.

---

## II. FABRICATED & MANIPULATIVE LINE OF QUESTIONING

149
WR

Mr. Parsons asked Plaintiff a series of peculiar and unrelated questions, many of which clearly had no relevance to child abuse or neglect. One question in particular—allegedly prompted by Frances Toll—was:

**"Did you buy your daughter ice cream but not your son?"**

This question referred to a harmless incident in which Plaintiff's daughter received ice cream while visiting a friend's home, during a time when Plaintiff's son was not present. The question was plainly designed to **portray the Plaintiff as emotionally abusive** or neglectful, without any factual basis or legitimate welfare concern.

Such questioning is **not aligned with any recognized child protection standard**, and is demonstrative of a **coordinated attempt to bait Plaintiff into a misstep**, which could be exploited by DCBS in court filings.

## III. TESTIMONY OF IMPLICIT WHISTLEBLOWER

During the interview, **Mr. Parsons of Vanderburgh County, Indiana**—a caseworker who explicitly stated he had worked for **over 30 years** with the Department of Child Services—conducted a thorough and professional inquiry. With decades of experience evaluating genuine abuse, neglect, and family dysfunction, Mr. Parsons immediately recognized that the referral lacked credibility.

At the time of the interview, Plaintiff also **verbally disclosed to Mr. Parsons that he was actively being abused by Ohio County DCBS staff**, specifically **Frances "Bell" Toll**, who had previously dismissed or suppressed critical evidence, misrepresented facts in court, and had escalated a **campaign of retaliation** against him after he attempted to exercise his parental rights. Plaintiff explained that he was the victim of a **parental alienation scheme**, designed to sever his relationship with his minor children using false allegations, coercive control of the record, and deliberate obstruction of reunification.

This meeting took place **approximately a year and a half ago and just a month or two prior to the false firearm accusation**, which was later used by Frances Toll and others to remove the children from Plaintiff's custody **without proper notice or procedural due process**. The timeline confirms that Frances Toll was not only aware of Plaintiff's status as a victim, but had been **specifically named in an out-of-state disclosure**—long before she initiated the retaliatory removal effort.

Mr. Parsons told the Plaintiff he had **"answered everything correctly"** and exhibited **no signs of abuse, neglect, emotional volatility, or parental unfitness**. Throughout the interview, Mr. Parsons appeared visibly uncomfortable, pausing multiple times and struggling to find appropriate language, ultimately conveying—without stating directly—that the referral was **fabricated**, politically motivated, or retaliatory in nature.

150

Plaintiff reasonably interpreted this demeanor and Mr. Parsons' nonverbal cues as confirmation that:

- The allegations were **not legitimate**
- The questioning was **coerced or scripted by another state**
- And Bell Toll's referral was not made in good faith, but rather part of a **broader effort to construct a false justification for custodial interference**

Mr. Parsons' reaction, given his three decades of experience in child protection, served as an **implicit whistleblower act**—recognizing corruption and trying to warn Plaintiff within the limits of professional constraints.

## IV. LEGAL CLASSIFICATION AS RICO PREDICATE ACT

This act constitutes a RICO predicate under the following statutory categories:

### 1. 18 U.S.C. § 1343 – Wire Fraud

Use of telecommunications across state lines to transmit false allegations with intent to interfere in custody proceedings.

### 2. 18 U.S.C. § 241 – Conspiracy Against Rights

Coordination between Kentucky and Indiana officials to deprive Plaintiff of his constitutional rights as a parent, based on known falsehoods.

### 3. 18 U.S.C. § 1512 – Obstruction of Justice

Coercing another agency to create a misleading paper trail to be used in court is obstruction of justice in its purest form.

### 4. 18 U.S.C. § 1961(1) – Racketeering Activity

This act fits the pattern of racketeering already documented throughout this complaint and supports the existence of a broader criminal enterprise.

## V. CONCLUSION AND REMEDY REQUESTED

This event exemplifies the **interjurisdictional coordination of malicious state action**, the **deliberate targeting of a fit parent**, and the **creation of a false investigative narrative** for use in custody deprivation. Frances "Bell" Toll's conduct was not merely negligent—it was

151

**calculated**, **retaliatory**, and executed with knowledge that Plaintiff had already reported her prior misconduct to another government entity.

Plaintiff requests that this be entered as a **formal supplemental predicate act** under RICO and considered as part of the overall **pattern of enterprise activity**, and that Mr. Parsons be **preserved as a witness** for potential subpoena and testimony under oath.

---

Respectfully submitted,
/s/ William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377
Dated: August 1, 2025

152
CR

# FOR IMMEDIATE RELEASE

**Date**: August 1, 2025
**Contact**:
William Clay Raymond
179 Tanyard Park, Unit 166
Hillview, KY 40229
clayemail58@gmail.com
(970) 779-1377

---

## FEDERAL RICO LAWSUIT FILED TO EXPOSE STATEWIDE COLLUSION IN KENTUCKY FAMILY COURT SYSTEM

### New Defendant Judge Tim Coleman Added Following Procedural Obstruction

**HILLVIEW, KENTUCKY** — On August 1, 2025, William Clay Raymond, a father and whistleblower from Kentucky, formally announced the filing of a federal civil RICO lawsuit against over 20 named defendants including judges, attorneys, child protection workers, domestic violence institutions, and law enforcement officials. The filing is the culmination of a two-year legal saga involving the illegal seizure of Raymond's children, a documented pattern of perjury and suppression of exculpatory evidence, and a coordinated effort to destroy his financial and parental standing.

This historic filing—now publicly available in the Western District of Kentucky—names among its defendants **Judge Michael McKown Sr., Judge Benjamin McKown Jr., Guardian ad Litem Laura Eaton, DCBS employees Frances "Bell" Toll, Cara Wood, and Chad Wilson**, as well as multiple attorneys, court-appointed officers, and nonprofit agencies believed to be complicit in a civil racketeering scheme targeting parental rights and due process.

"This is not just about my children. It's about what's being done to thousands of families behind closed doors with no oversight and no accountability. The silence ends today."
— *William Clay Raymond, Pro Se Plaintiff*

---

## NEW DEFENDANT: JUDGE TIM R. COLEMAN – A CASE STUDY IN OBSTRUCTION

Included for the first time in this amended release is **Judge Tim R. Coleman**, the presiding Circuit Court judge in Mr. Raymond's civil tort case (Ohio County Circuit Court Case No. 25-

153

CI-00251). Judge Coleman was **officially added to the RICO complaint** after **denying Raymond's request to waive summons and service fees**, despite a prior approval of the filing fee and documented financial hardship.

Mr. Raymond, acting within his rights under CR 5.04 and requesting fee deferral rather than permanent relief, was **procedurally blocked** from timely service on 10 defendants—many of whom overlap with the RICO conspiracy. Judge Coleman's denial, stamped on **July 29, 2025**, is now framed as an intentional act of **civil rights obstruction, procedural sabotage, and retaliatory suppression**, in coordination with other enterprise actors.

"This was a clear act of alignment with the enterprise to choke out my case before it could even be served. It failed. He's now a named RICO defendant and he will answer."
— *William Clay Raymond*

# NATIONWIDE IMPLICATIONS: SYSTEMIC FAILURE IN FAMILY COURT, DCBS, AND LEGAL ETHICS

The 56-page complaint outlines over **50 predicate acts** of racketeering, including:

- Perjury and subornation of perjury by Karissa Meyers and Chaye Ann Meyers
- Judicial misconduct in time-limited hearings that suppressed exculpatory evidence
- DCBS refusal to accept evidence of abuse
- Retaliatory forced relocation under threat of parental severance
- Predatory property buyout schemes leveraging family trauma
- Illegal mental health coercion by domestic violence nonprofits
- Suppression of audio recordings by appointed attorneys and public defenders

The enterprise is further accused of **weaponizing restraining orders, GAL appointments, and domestic violence protocols** to remove children, silence dissent, and secure power and funding through a false narrative of victimhood.

# WHAT COMES NEXT: MEDIA, FEDERAL INVESTIGATORS, AND PUBLIC ACCOUNTABILITY

Mr. Raymond has simultaneously released his **Federal Rule 26 Preservation Notice**, and intends to file an emergency motion in family court citing the federal RICO action as grounds for immediate custody restoration. Multiple defendants are facing **loss of bar licenses, criminal referrals, and civil liability totaling over $250 million**.

In addition to this press release, Mr. Raymond has prepared:

154
wR

- A full **media packet** and **briefing document** for national outlets
- Letters to **DOJ, FBI, the Sixth Circuit**, and **President Donald J. Trump**
- A public statement calling for legislative reform, to be shared later this month

"Every defendant will issue a public videotaped apology. I will own the video rights, and the public will own the truth."
— *William Clay Raymond*

## About the Plaintiff

**William Clay Raymond** is a Kentucky father, small business owner, and direct descendant of Henry Clay. His mission is to restore transparency, due process, and truth to the state's broken legal and child welfare systems. He is acting **pro se** and intends to carry the case through trial and beyond.

**For media inquiries, evidence requests, or legal documentation, please contact clayemail58@gmail.com or (970) 779-1377.**

**Index of Filing Packet – William Clay Raymond v. Karissa Meyers, et al.**

**United States District Court – Western District of Kentucky**

1. Notice of Submission for Emergency Review

2. Procedural Summary of Claims and Legal Basis for Emergency Injunctive Relief

3. Exhibit Index

4. Affidavit of William Clay Raymond in Support of Ex Parte Relief under Rule 65B

5. Complaint

6. RICO Conspiracy Participation Supplemental Filing in Support of Verified Civil RICO and Civil Rights Complaint

7. Supplement to Verified Complaint Counts 22A and 22B Dan Jackson

8. Predicate Acts

9. Affidavit of William Clay Raymond in Support of Judicial and Professional Misconduct Claims

10. Motion for Preliminary Injunction to Preserve Defendants' Real Property and Financial Assets

11. Affidavit of William Clay Raymond in Support of Motion for Preliminary Injunction to Preserve Defendant's Assets

12. Motion to Waive Service Fees and Summons Costs Due to Financial Hardship

13. Attachment A: Proposed Service List for Marshal Delivery

14. Proposed Ex Parte Order on Plaintiff's Combined Motions for Injunctive Relief, Asset Preservation, Evidence Protection, and Partial Fee Waiver

15. Summary of Defendant Carissa Myers' Self-Incriminating Statement

16. Affidavit of William Clay Raymond, R.E., Carissa Myers' Undisclosed Relocation and Delayed Communication

17. Affidavit of William Clay Raymond, R.E., Response to Carissa Myers on App Close

18. Supplemental Attachment to Master RICO Complaint Predicate Act Alignment – Supplemental Brief

19. Supplemental Observation for the Record: Statement Made by Judge Benjamin McCown, July 23rd, 2025

20. Statement of Public Accountability by William Clay Raymond

156
WR

21. Declaration in Support of Economic Value of Litigation Labor

22. Supplemental Exhibit – Plaintiff's Documented Economic Value of Litigation Labor and Legal Work

23. Formal Introduction

24. Supplemental Statement, R.E., Enterprise Function Test for Judicial Defendants

25. Compliance with RICO Case Law – Boyle, Sedima, and H.J. Inc.

26. Standing and Jurisdiction

27. Exhibit Z: Summary – Defendant Self-Incriminating Message: Summary of Defendant Carissa Myers' Self-Incriminating Statement

28. Affidavit of Legal Safety Concern and Litigation Retaliation Precaution

29. Motion for Protective Monitoring and Judicial Notice of Retaliation Risk

30. Notice of Potential Retaliation and Request for Monitoring

31. Declaration of William Clay Raymond Regarding Procedural Defect and Joint Actor Liability Arising from 2022 Emergency Protective Order Hearing Presided by Judge Mike McCown

32. RICO Conspiracy Participation – Chase Ward

33. Supplemental Statement – Attorney Conflict of Interest – Married Public Defenders Janelle and David Farley

34. RICO Conspiracy Participant – Amanda Bragg

35. RICO Conspiracy Participation – Natalie Ralph

36. Case Introduction and Structural Summary

37. RICO Conspiracy Participation – Judge Michael McCown Sr. and Judge Benjamin McCown Jr.

38. Motion to Expedite Service of Process

39. Proposed Order Granting Motion to Expedite Service of Process

40. Rico conspiracy Participant-Susan Kyle Smith

41. EXHIBIT53 and EXHIBIT 54

42. EXHIBIT 55

43. EXHIBIT 56

44. EXHIIT   57                45-   NEWS RELEASE AUGUST 1 2025

157
WR

